## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ROVI CORPORATION, ROVI GUIDES, INC. (f/k/a GEMSTAR-TV GUIDE INTERNATIONAL INC.), UNITED VIDEO PROPERTIES, INC., TV GUIDE ONLINE, LLC, and TV GUIDE ONLINE, INC. | |
| Plaintiffs, | C. A. No. 11-003-RGA |
| v. | **JURY TRIAL DEMANDED** |
| AMAZON.COM, INC. and IMDB.COM, INC., | |
| Defendants. | |

## PLAINTIFFS' OPENING CLAIM CONSTRUCTION BRIEF

OF COUNSEL:

Daralyn J. Durie
Ragesh K. Tangri
Clement S. Roberts
Jesse Geraci
Eugene Novikov
DURIE TANGRI LLP
217 Leidesdorff Street
San Francisco, CA  94111-3007
(415) 362-6666
ddurie@durietangri.com
rtangri@durietangri.com
croberts@durietangri.com
jgeraci@durietangri.com
enovikov@durietangri.com

Dated:  March 19, 2012

Frederick L. Cottrell, III (#2555)
Anne Shea Gaza (#4093)
Jason J. Rawnsley (#5379)
RICHARDS, LAYTON & FINGER, PA
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
(302) 651-7700
cottrell@rlf.com
gaza@rlf.com
rawnsley@rlf.com

*Attorneys for Plaintiffs Rovi Corp., Rovi Guides, Inc. (f/k/a Gemstar-TV Guide Int'l Inc.), United Video Props., Inc., TV Guide Online, LLC, and TV Guide Online, Inc.*

## Table of Contents

| | | Page |
|---|---|---|

Table of Authorities ........................................................................................................... iii

Index of Exhibits ................................................................................................................. v

I.      INTRODUCTION ......................................................................................... 1

II.     LEGAL BACKGROUND ........................................................................... 1

III.    UNITED STATES PATENT NUMBER 6,275,268 ................................... 3

    A.    "displaying" / "displaying . . . with" [the electronic television program guide]............. 4

    B.    "electronic television program guide" ........................................................ 5

    C.    "standardized product" .................................................................................. 7

    D.    "time and date stamping an order placed by the user with the electronic television program guide" ......................................................................... 7

IV.    UNITED STATES PATENT NUMBER 6,769,128 ................................... 9

    A.    "multimedia informational system" ........................................................ 11

    B.    "data feed" ................................................................................................... 12

    C.    "video display generator" ......................................................................... 13

    D.    "a receiver" ................................................................................................. 14

    E.    "program schedule information" ............................................................. 15

    F.    "program listings" ..................................................................................... 16

V.     UNITED STATES PATENT NUMBER 7,603,690 ................................. 17

    A.    "interactive program guide" ..................................................................... 17

    B.    "package" ..................................................................................................... 19

**Table of Contents (Cont'd)**

|  |  | Page |
|---|---|---|

C.   "determine whether the selected program is part of a package" ................................... 20

D.   ". . . claim 19, further comprising providing the user with an opportunity to impulse purchase the package through the interactive program guide." ........................ 20

VI.   UNITED STATES PATENT NUMBER 7,493,643 ..................................................... 21

A.   "viewer television equipment" ........................................................................... 22

B.   "program guide display" ..................................................................................... 23

C.   "video-on-demand program listing" .................................................................. 24

D.   "means for indicating that a video clip preview is available for a video-on-demand program that is associated with a video-on-demand program listing wherein the indication is provided with the . . . listing" ................................................................. 25

A.   "means for displaying the video clip preview on the viewer television equipment" ..... 26

B.   "means for displaying an ordering display screen after the video clip preview of the video-on-demand program is displayed, wherein the ordering display screen provides the viewer with the opportunity to select an ordering option to order the video-on-demand program" ................................................................................ 27

VII.   UNITED STATES PATENT NUMBER 5,988,078 ................................................. 28

A.   "viewing location" ............................................................................................. 29

B.   "modem" ............................................................................................................. 29

VIII.   CONCLUSION ............................................................................................................ 30

## Table of Authorities

**Page(s)**

**Cases**

*Abbott Labs. v. Lupin Ltd.,*
  753 F. Supp. 2d 382 (D. Del. 2010)...................................................................... 2, 10, 11

*Applera Corp. v. Micromass UK Ltd.,*
  186 F. Supp. 2d 487 (D. Del. 2002)............................................................................. 2

*Applied Med. Res. Corp. v. U.S. Surgical Corp.,*
  448 F.3d 1324 (Fed. Cir. 2006) ................................................................................. 5

*Aristocrat Techs. Australia Pty Ltd. v. Int'l Game Tech.,*
  521 F.3d 1328 (Fed. Cir. 2008) ................................................................................. 3

*Arlington Indus., Inc. v. Bridgeport Fittings, Inc.,*
  632 F.3d 1246 (Fed. Cir. 2011) ........................................................................ 5, 6, 14

*Boehringer Ingelheim Vetmedica, Inc. v. Schering-Plough Corp.,*
  320 F.3d 1339 (Fed. Cir. 2003) ............................................................................... 11

*Budde v. Harley–Davidson, Inc.,*
  250 F.3d 1369 (Fed. Cir. 2001) ................................................................................. 3

*Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc.,*
  289 F.3d 801 (Fed. Cir. 2002) ............................................................................. 7, 12

*Curtiss-Wright Flow Control Corp. v. Velan, Inc.,*
  438 F.3d 1374 (Fed. Cir. 2006) ................................................................................. 3

*Energizer Holdings, Inc. v. Int'l Trade Comm'n,*
  435 F.3d 1366 (Fed. Cir. 2006) ............................................................................... 20

*Exxon Research & Eng'g Co. v. United States,*
  265 F.3d 1371 (Fed. Cir. 2001) ................................................................................. 7

*Finisar Corp. v. DirecTV Grp., Inc.,*
  523 F.3d 1323 (Fed. Cir. 2008) ................................................................................. 3

*HTC Corp. v. IPCom GmbH & Co., KG,*
  667 F.3d 1270 (Fed. Cir. 2012) ................................................................................. 8

*In re Donaldson Co.,*
  16 F.3d 1189 (Fed. Cir. 1994) ................................................................................... 3

<u>**Table of Authorities (Cont'd)**</u>

**Page(s)**

*In re Skvorecz,*
    580 F.3d 1262 (Fed. Cir. 2009) ........................................................................ 21

*Leggett & Platt, Inc. v. Hickory Springs Mfg. Co.,*
    285 F.3d 1353 (Fed. Cir. 2002) .......................................................................... 2

*Liebel-Flarsheim Co. v. Medrad, Inc.,*
    358 F.3d 898 (Fed. Cir. 2004) ............................................................... 3, 15, 24

*Lifestream Diagnostics, Inc. v. Polymer Technology Systems Inc.,*
    109 F. App'x 411 (Fed. Cir. 2004) ................................................................. 2, 3

*Lockheed Martin Corp. v. Space Systems/Loral, Inc.,*
    324 F.3d 1308 (Fed. Cir. 2003) ........................................................................ 26

*NCR Corp. v. Palm, Inc.,*
    217 F. Supp. 2d 491 (D. Del. 2002), *aff'd,* 120 F. App'x 328 (Fed. Cir. 2005) ........................ 2

*Research Plastics, Inc. v. Fed. Packaging Corp.,*
    421 F.3d 1290 (Fed. Cir. 2005) ........................................................................ 19

*Serrano v. Telular Corp.,*
    111 F.3d 1578 (Fed. Cir. 1997) .......................................................................... 3

*Slimfold Mfg. Co. v. Kinkead Indus., Inc.,*
    810 F.2d 1113 (Fed. Cir. 1987) ........................................................................ 21

*Typhoon Touch Techs., Inc. v. Dell, Inc.,*
    659 F.3d 1376 (Fed. Cir. 2011) ................................................................. 27, 28

*Vitronics Corp. v. Conceptronic, Inc.,*
    90 F.3d 1576 (Fed. Cir. 1996) ............................................................ 2, 18, 25, 29

**Statutes**

35 U.S.C. § 112 ............................................................................................. 7, 20

## Index of Exhibits

EXHIBIT A.          "IBM Dictionary of Computing" (10th ed. 1993)

EXHIBIT B.          "Webster's Ninth New Collegiate Dictionary" (9th ed. 1991)

EXHIBIT C.          "The Elements of Style" (3d ed. 1979)

EXHIBIT D.          "Chambers Science & Technology Dictionary" (1988)

EXHIBIT E.          "American Heritage College Dictionary" (3d ed. 2000)

EXHIBIT F.          "The New IEEE Standard Dictionary of Electrical and Electronics Terms"
                    (5th ed. 1993)

EXHIBIT G.          "IBM Dictionary of Computing" (9th ed. 1991)

RLF1 5911935v. 1

## I.   INTRODUCTION

Rovi Corporation ("Rovi") is a leader in digital home entertainment technology.  Rovi makes and sells a wide variety of products and services, including the Rovi TotalGuide (an electronic programming guide used by many cable television providers) and Rovi Data Service (which powers the video storefronts of well-known brands such as BestBuy's CinemaNow). And these are just a fraction of Rovi's offerings, which are both diverse and widely adopted because Rovi is a true pioneer in the digital space.  Rovi's predecessor companies include some of the biggest and earliest names in digital media, including Gemstar-TV Guide, Macrovision, United Video, Starsight Telecast, Sonic Solutions and Roxio.

Rovi, through its predecessor companies, is responsible for the development of the electronic program guide, from the very first "scrolling screen" television guides to the complex, interactive and search-capable program guides in use today.  As a result of its innovations, Rovi has over five thousand patents, a substantial fraction of which cover technologies related to electronic program guides.  Corporations like Apple have paid substantial amounts to license Rovi's portfolio to gain coverage for their internet-based video-on-demand product offerings.

Amazon has taken a different path.  Although it employs program guides to allow users to find and purchase video programming, it contends that its business has nothing to do with the foundational technology Rovi developed.  To this end, Amazon has come up with a set of proposed constructions that try to exclude its business from the scope of Rovi's patents.  Indeed, Amazon goes so far as to claim that Rovi patents that *explicitly claim* sending internet data cannot be read to cover systems that make use of the internet.  If that sounds implausible, it's because it is.  Amazon cannot avoid Rovi's patents by artificially narrowing their scope.

## II.   LEGAL BACKGROUND

In construing the claims of a patent, a court "should look first to the intrinsic evidence of

record, *i.e.*, the patent itself, including the claims, the specification and, if in evidence, the prosecution history." *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996). Within that intrinsic record, claim construction begins with the language of the claims. Generally, claim terms are to be accorded their "plain, ordinary, and accepted meaning within the community of those of ordinary skill in the relevant art," unless a patentee clearly sets forth a different definition in the specification or prosecution history. *Leggett & Platt, Inc. v. Hickory Springs Mfg. Co.*, 285 F.3d 1353, 1357 (Fed. Cir. 2002) (citation omitted).

"In using the specification to aid in the construction of claim terms . . . the court should take heed not to import claim limitations from the specification into the claims." *NCR Corp. v. Palm, Inc.*, 217 F. Supp. 2d 491, 502 (D. Del. 2002), *aff'd*, 120 F. App'x 328 (Fed. Cir. 2005). *See also Applera Corp. v. Micromass UK Ltd.*, 186 F. Supp. 2d 487, 508 (D. Del. 2002) (refusing to construe "rod set" to require four rods even though "the patent specification repeatedly refers to the arrangement of rods as a quadrupole in the preferred embodiment" because it "is well-established that limitations not existing in the claims cannot be imported from specification").

Similarly, a party seeking to import a restriction from the file history "must demonstrate an 'unambiguous' disclaimer, based on 'clear and unmistakable evidence' that some of the scope that would otherwise be captured by the claim was relinquished during prosecution." *Abbott Labs. v. Lupin Ltd.*, 753 F. Supp. 2d 382, 398 (D. Del. 2010) (citation omitted). For example, in *Lifestream Diagnostics, Inc. v. Polymer Technology Systems Inc.*, 109 F. App'x 411, 418 (Fed. Cir. 2004) the Federal Circuit rejected a construction of "microporous plasma separation membrane" that limited the claim scope to membranes that receive blood from below:

> Although the specification and file history appear to speak only of placing the physical transport medium under the separation medium, **none of the statements contain 'words or expressions of manifest exclusion or restriction, representing clear**

disavowal of claim scope.'

*Id.* (emphasis added; citations omitted).

Claim differentiation is relevant to a number of terms discussed below.  The Federal Circuit "has characterized claim differentiation . . . as the 'presumption that each claim in a patent has a different scope.'"  *Curtiss-Wright Flow Control Corp. v. Velan, Inc.*, 438 F.3d 1374, 1380 (Fed. Cir. 2006) (citation omitted).  The doctrine "is at its strongest" where a party attempts to import into an independent claim a limitation that is already present in a dependent claim.  *See Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 910 (Fed. Cir. 2004).

The parties also dispute a number of means plus function claim terms.  "[I]f one employs means-plus-function language in a claim, one must set forth in the specification an adequate disclosure showing what is meant by that language."  *In re Donaldson Co.*, 16 F.3d 1189, 1195 (Fed. Cir. 1994) (en banc).  "The specification must be read as a whole to determine the structure capable of performing the claimed function."  *Budde v. Harley–Davidson, Inc.*, 250 F.3d 1369, 1379 (Fed. Cir. 2001); *see also Serrano v. Telular Corp.*, 111 F.3d 1578, 1583 (Fed. Cir. 1997) (corresponding structure includes "any alternative structures identified").

Insofar as the corresponding structure is a general purpose computer, the specification must disclose an algorithm to perform that function.  *See Aristocrat Techs. Australia Pty Ltd. v. Int'l Game Tech.*, 521 F.3d 1328, 1331-32 (Fed. Cir. 2008).  That algorithm need not be highly detailed and can be expressed in any form.  *See Aristocrat*, 521 F.3d at 1338; *Finisar Corp. v. DirecTV Grp., Inc.*, 523 F.3d 1323, 1340 (Fed. Cir. 2008) (stating that an algorithm may be "express[ed] . . . in any understandable terms including as a mathematical formula, in prose, or as a flow chart, or in any other manner that provides sufficient structure.") (citation omitted).

## III.    UNITED STATES PATENT NUMBER 6,275,268

The '268 patent is directed to methods for allowing a user to order products related to

television programming through an electronic television program guide so that programming

providers can promote and sell those products alongside related program listings.  (D.I. 68, Ex. 3

(hereinafter '268).)  Thus, for example, using the patented invention, a user can browse available

electronic video programming and, when he finds a movie of interest, he can choose to watch

that movie immediately and/or to order a related item (such as a DVD) to be shipped to him.

### A.   "displaying" / "displaying . . . with" [the electronic television program guide]

| Plaintiffs' Construction | Defendants' Construction |
|---|---|
| presenting visual information | "using the electronic television program guide to visually overlay on a screen . . ." |

The claims of the '268 patent use the term displaying in multiple contexts.  For example,

Claim 1 calls for both "displaying *program listings* with the electronic television program guide"

and "displaying *information* with the electronic television program guide *indicating that a*

*product . . . is available for purchase*."  Displaying means "presenting visual information."  *See*

*IBM Dictionary of Computing* 206 (10th ed. 1993) (Ex. A to Geraci Decl.) (defining "display" as

"[a] visual presentation of data" or "[t]o present data visually").  Amazon is trying to read the

limitation to require (1) that the program guide itself perform the act of displaying, and (2) that it

use a particular display *format*—namely a visual overlay.  Both of these restrictions are wrong.

First, the claims call for the program listings and the information to be displayed *with* the

electronic program guide, not *using* the program guide.  The electronic program guide is

something that is itself displayed to the user, and information can be displayed together with it.

Amazon's proposal effectively rewrites the claims by changing the word "with" (which

indicates that information is displayed along with the program guide) to "using" (which requires

the program guide to perform the act of displaying that information).  But the claims use the

word "using" when they call for an action to be performed *using* the electronic program guide.

Thus, for example, while Claim 1 requires "displaying program listings *with* the electronic

program guide" it also requires "allowing the user to order the product . . . *using* the electronic program guide." Different words in the same claim should be given different meanings, and "with" and "using" mean different things in this context. *See Applied Med. Res. Corp. v. U.S. Surgical Corp.*, 448 F.3d 1324, 1333 n.3 (Fed. Cir. 2006) ("[T]he use of two terms in a claim requires that they connote different meanings....").

Amazon's proposal is also wrong insofar as it requires a "visual overlay." "Display" has an ordinary meaning, and that ordinary meaning has nothing to do with a visual overlay. The specification notes that "[i]t is another object of the present invention to provide the user with the ability to select from among a plurality of display formats for the program schedule information." '268 at 4:35-37. The fact that it is an object of the invention to allow for *multiple* display formats undermines Amazon's assertion that the claims should be read only to encompass the *single* visual overlay format. *See Arlington Indus., Inc. v. Bridgeport Fittings, Inc.*, 632 F.3d 1246, 1254 (Fed. Cir. 2011) ("claims will not be read restrictively unless the patentee has demonstrated a clear intention to limit the claim scope using words of expressions of manifest exclusion or restriction") (citation omitted).

**B.**     **"electronic television program guide"[1]**

| Plaintiffs' Construction | Defendants' Construction |
|---|---|
| an electronic application that provides information to allow users to find television programming | an application that provides program schedule and channel information for a television receiver. |
| | When used in the '268 patent claims, also "the electronic television program guide" is "executed on a user-controlled data processor." |

All asserted claims of the '268 patent, and a number of dependent claims in the '128

---

[1] This term appears in both the '268 and '128 patents. The parties agree that it should be given the same construction in both patents. We address both patents together.

patent, call for an "electronic television program guide." An electronic television program guide is an electronic application that provides various types of information concerning television programming. Indeed, Amazon does not really dispute this point, but instead seeks to read in the additional requirements: (1) that the guide provide schedule and channel information; (2) that the information is provided "for a television receiver" and (3) that the program guide "is executed on a user-controlled data processor." The Court should reject all three.

First, the ordinary meaning does not require that the guide provide schedule and channel information. An electronic television program guide is a guide that is electronic and that relates to television programming. And a guide is simply something that provides information to allow users to find something (here, television programming). *Webster's Ninth New Collegiate Dictionary* 541 (9th ed. 1991) (Ex. B) (defining "guide" as "something that provides a person with guiding information"); *see also* '268 at Figs. 6-17, 15-17, 22, 27-35 (showing sample screens from the program guide that include no schedule or channel information).

The specification is consistent with this ordinary meaning. It suggests that the program guide may provide a wide range of functions and information, such as "video promotion of television programs and services," parental controls, and acting as a gateway to "certain interactive and/or other types of information services." '268 at 4:63-67, 21:6-31, 29:66-30:13. Where, as here, the specification indicates that the guide may provide a wide variety of information, there is no justification for picking two pieces of information from among the many possibilities and turning them into requirements. *See Arlington Indus.*, 632 F.3d at 1254.

Second, Amazon's proposal is wrong insofar as it suggests that the information must be provided "for a television receiver." Nothing about the phrase to be construed suggests that limitation. Moreover, as discussed below, the '128 patent is directed to a system that provides

internet data and notes that the invention can be implemented on "an IBM personal computer" rather than a television receiver.  (D.I. 68, Ex. 4 (hereinafter '128) at 11:64-12:5.)

Finally, the '268 patent does not require the guide to be executed on a user-controlled data processor.  Amazon's argument to the contrary is an attempt to have the Court construe the preamble of claim 1, which calls for "a method . . . implemented using a data processor controlled by the user." The preamble is not limiting: it merely provides an instrumentality for implementing the claimed method, and does not recite *essential* structure. *See Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc.*, 289 F.3d 801, 808 (Fed. Cir. 2002); *see also* '268 at 8:28-31 (the invention can be implemented using "a distributed application in a broadband network").

## C.    "standardized product"

| Plaintiffs' Construction | Defendants' Construction |
| --- | --- |
| a product type associated with various programs | indefinite under 35 U.S.C. § 112 ¶ 2. |

Claim 34 depends on Claim 1, and requires "allowing the user to order a standardized product from the electronic television program guide."  The meaning of "standardized product" is not mysterious:  it means "a product type associated with various programs."  This is clear from the specification, which describes a mechanism by which the demands on system memory can be reduced by standardizing the types of non-electronic-video products that are available. *See* '268 at 36:28-35.  Thus, a system has "standardized products" where it lists generic product types (such as DVDs, t-shirts, or videos) that are associated with, and can be purchased for, multiple video programs.  Because the term is capable of construction, it is not indefinite. *See Exxon Research & Eng'g Co. v. United States*, 265 F.3d 1371, 1375 (Fed. Cir. 2001).

## D.    "time and date stamping an order placed by the user with the electronic television program guide"

| Plaintiffs' Construction | Defendants' Construction |
| --- | --- |

| the order placed by the user with the electronic television program guide is time and date stamped. | recording, with the electronic television program guide executed on the user-controlled data processor, the time and date of the order as reflected on the user's guide application |
| --- | --- |

Claim 51 calls for the method of claim 1 "further comprising time and date stamping an order placed by the user with the electronic television program guide." The principal dispute stems from Amazon's attempt to read in limitations requiring (1) the time and date stamping to be done by the electronic program guide, (2) the program guide to reside solely on the user's computer, and (3) the stamping to be done with the time and date reflected on the user's application. The Court should reject all three additional limitations.

First, the phrase "time and date stamping" describes an action performed on "an order placed by the user with the electronic program guide." This is made clear by the grammar of the claim, because the prepositional phrase "with the electronic television program guide" properly should be read as modifying the *nearest* antecedent (the noun "order"). *See* William Strunk, Jr. & E.B. White, *The Elements of Style* 30 (3d ed. 1979) (Ex. C). For example, in *HTC Corp. v. IPCom GmbH & Co., KG,* 667 F.3d 1270, 1274 (Fed. Cir. 2012) the Federal Circuit construed the phrase "[a] mobile station for use with a network including a first base station and a second base station that achieves a handover ...." The court found that the district court had erred in finding that the phrase beginning with "including" modified the "mobile station" rather than the "network" because "[m]odifiers should be placed next to the words they modify .... A reader, therefore, may assume that the phrase beginning with 'including' and the clause beginning with 'that achieves' modify 'network.'" *Id.* at 1274-75.

Second, nothing in this term calls for an electronic program guide to be executed solely on the user's computer. And the specification makes clear that the "components of the electronic program schedule system" can be implemented in a variety of ways including "as a distributed

application in a broadband network architecture." *See* '268 at 8:23-31.

Third, for this same reason, the Court should reject Amazon's attempt to require the time and date with which the request is stamped to be the time and date "reflected on the user's guide application." The claims simply do not speak to *which* time and date is used in the stamping, and the specification describes an embodiment in which the stamping information is extracted from information *from the server*. *See id.* at 38:5-8.

## IV.     UNITED STATES PATENT NUMBER 6,769,128

The '128 patent is directed to a system and method for combining Internet data with program schedule information for delivery to a user. The principal dispute is whether (as Amazon contends) the Court should restrict the claims to cover only the transmission of television programs, over television signals, to a television receiver for display on a television or whether (as Rovi contends) the claims do not specify those requirements.

The specification of the '128 patent is *explicit* that the invention can be implemented on a personal computer or over a wide area network. For example, the specification states explicitly that the "system components . . . can be . . . included as part of a . . . ***personal computer***, or multimedia player, ***or reside as a distributed application in a broadband network architecture***." '128 at 9:51-57 (emphasis added); *see also* 11:64-12:11 (system components "can all be implemented in a preferred platform by, for example, ***an IBM personal computer***") (emphasis added). And the specification notes that "those of skill in the art will appreciate that the particular details of the hardware component and data storage are a function of the particular implementation of the system and are not the subject of the present invention." *Id.* at 12:8-11. Thus, the specification does not *restrict* the invention to any particular form of transmission or to any particular hardware or display technology.

Amazon's contrary argument is predicated on misreading the file history. As initially

submitted, the claims of the '128 patent called for a system and method in which program schedule information was simultaneously displayed to a user with "internet delivered data." (D.I. 68, Ex. 8.19 at 2.) The examiner rejected those claims for lack of written description on the ground that the specification did not explicitly disclose delivering information to the user over the Internet. (D.I. 68, Ex. 8.20 at 2.) In response, Rovi amended the claims (a) to include a "remote facility" that received data over the Internet and combined it with program schedule information into a data feed; and (b) to eliminate any specific requirement as to how that data feed was delivered to the user:

> A method for displaying program schedule information and Internet ~~delivered~~ data for use in a multimedia informational system, the method comprising:
>
> > receiving at a remote facility Internet data from the Internet;
> > populating a data feed with the Internet data at the remote facility;
> > receiving the data feed with user equipment;
> > receiving program schedule information with the user equipment; and
> > ~~receiving internet delivered data; and~~
> > simultaneously displaying the program schedule information ~~with~~ and the internet ~~delivered~~ data with the user equipment, wherein at least a portion of the displayed program schedule information is interactive.

(D.I. 68, Ex. 8.21 at 2.) In making this amendment, Rovi explained that it was no longer claiming the specific mechanism by which the data feed is delivered to the user. As Rovi put it, the "independent claims have been further amended to define that 'user equipment' receives the data feed . . . . As described above, amended independent claims 2, 14, 22, 34, 42 and 54 *do not require* that Internet data is delivered to user equipment via the Internet." (D.I. 68, Ex. 8.21 at 27-28 (emphasis added).) The fact that the claims do not *require* that data be delivered over the Internet, however, does not mean that they affirmatively *exclude* that possibility.

The same issue was presented in *Abbott Laboratories*, 753 F. Supp. 2d at 398-99. In

*Abbott* the court was asked to construe a number of terms including "oral solid dosage form" and "sustained release composition." The defendant argued that each of the terms should be construed to include the negative limitation "not containing an internal hydrophobic component" based on the file history. The court disagreed:

> A careful review of the file histories shows that the patentee consistently told the PTO only that his invention did not ***require*** a hydrophobic component; the patentee never stated that a hydrophobic component was ***excluded*** from the scope of the claims.

*Id.* (emphasis in original). The same thing is true here. Rovi did not amend the claims to preclude the possibility of delivering data via the Internet, merely to eliminate that as a requirement. Rovi accurately characterized its amendment, and the examiner accepted it. The Court should therefore decline to "import" a "television-only" restriction into the claims.

### A.  "multimedia informational system"

| Plaintiffs' Construction | Defendants' Construction |
| --- | --- |
| *The preamble is not limiting, and the phrase does not require construction.  To the extent the Court believes that a construction would be helpful the phrase should be construed as:* a system for providing multimedia information. | *The preamble is limiting:* an electronic television program guide system that includes at least program schedule information, television program signals, program ordering, and access to data feeds |

The preamble of Claim 1 calls for "A method for displaying program schedule information and Internet data *for use in a multimedia informational system*, the method comprising . . . ." This phrase does not form the antecedent basis for any of the subsequent terms in the claim, and the bolded phrase is a reference to an intended *use* for the claimed method rather than the essence of the method itself. *See Boehringer Ingelheim Vetmedica, Inc. v. Schering-Plough Corp.*, 320 F.3d 1339, 1345 (Fed. Cir. 2003) ("An intended use or purpose usually will not limit the scope of the claim because such statements usually do no more than define a context in which the invention operates" and will only "limit the claim if it recites not

merely a context in which the invention may be used, but the essence of the invention."). Stated differently, there is nothing about the phrase "for use in a multimedia informational system" that gives "life, meaning, and vitality" to the subsequent claim or that provides any essential structure because the claim stands on its own without reference to the preamble. *See Catalina Mktg.*, 289 F.3d at 808 ("[A] preamble limits the invention if it recites essential structure or steps, or if it is 'necessary to give life, meaning, and vitality' to the claim. Conversely, a preamble is not limiting 'where a patentee defines a structurally complete invention in the claim body and uses the preamble only to state a purpose or intended use for the invention.'") (citation omitted).

Even if the preamble were limiting, Amazon's proposed construction would be improper as it would read limitations into a term (multimedia informational system) that otherwise has a broad and straightforward meaning—a system for providing multimedia information.

### B.   "data feed"

| Plaintiffs' Construction | Defendants' Construction |
|---|---|
| an updatable transmission of data from one place to the other. | an updateable transmission of data sent by a television programming provider over television signals (not over the Internet) |

The parties agree that a data feed is an "updatable transmission of data." However, Amazon asks the Court to further require the data to be "sent by a television programming provider" and to be sent "over television signals (not over the Internet)."

The term "data feed," however, does not on its own contain any implied limitation on *who* is sending it or *over what* it is transmitted. *See Chambers Science & Technology Dictionary* 333 (1988) (Ex. D) (defining "feed" in the telecommunications context as "[t]o offer a programme or signal at some point in a communication network"). Nor does the specification impose any such restriction. For example, the specification does not limit the term "data feed" to broadcast transmission, but instead explains that the data feeds are "selectable for display by the

user *on an on-demand basis*." '128 at 6:39-43 (emphasis added). Indeed, the specification states that the invention can be implemented through a "distributed application in a broadband network architecture." *Id.* at 9:51-57. And, the specification explains that the data feed need not be transmitted by "a *television programming* provider" but can instead be transmitted by (for example) a provider of electronic programming guides. *See id.* at 45:47-52.

As explained above, Amazon's attempt to *exclude* the Internet from the scope of this term is based on a misreading of the file history. Rovi added limitations specifying that the data feed was sent from a "remote facility" to "user equipment" and *eliminated* language specifying how the data was delivered. (D.I. 68, Ex. 8.21 at 27-28) (noting that "'[t]hose of skill in the art will understand that numerous other transmission schemes can be used to transmit the data stream' to user equipment"). There is, however, nothing about the ordinary meaning of "remote facility" or "user equipment" that requires a *specific kind* of remote facility, or a *specific kind* of user equipment. The Court should, therefore, reject Amazon's proposal.

C.    **"video display generator"**

| Plaintiffs' Construction | Defendants' Construction |
|---|---|
| a component that generates a video display | A component that combines two or more input signals into one output television signal for display, where the information from the input signals is overlaid in the one output television signal. |

The term "video display generator" hardly needs construction. To the extent the Court thinks a construction would be helpful, however, the Court could explain to the jury that a video display generator is just what it sounds like—*i.e.*, a component that generates a video display.

Amazon's proposed construction attempts to read in a set of restrictions on: (1) the number and type of signals it accepts, (2) how those signals are processed, and (3) the format in which they are output. These restrictions are found nowhere in the term itself, the claim or in the

specification.  Amazon's attempt to argue to the contrary is based on a passage that describes a preferred embodiment of the video display generator.  *See* '128 at 6:15-21.  But this passage is *not* a definition of the term "video display generator" whereby the patentee is acting as his own lexicographer.  To the contrary, the passage is explicit that the implementation details it describes relate to just "*one* mode of operation" of the *television program guide*.  *Id.*

In *Arlington Industries, Inc. v. Bridgeport Fittings, Inc.*, the Federal Circuit found that "importing a split limitation improperly discounts substantive differences between the claims" because "Claim 1 recites a 'spring metal adaptor being less than a complete circle,' while claim 8 omits the less than a complete circle modifier."  632 F.3d at 1254.  The same thing is true with respect to the '128 patent and the limitations Amazon would have this Court import.  Amazon asks the Court to limit the "video display generator" to a component that outputs "television signals" despite the fact that Claim 37 contains no such limitation.  However, Claim 41 additionally calls for the "video display generator to display . . . television program signals." Thus, as in *Arlington*, it would be improper to "import" a requirement that the "video display generator" output television signals because doing so would ignore the fact that some, but not all, of the claims call for the generator to perform that function.

**D.    "a receiver"**

| Plaintiffs' Construction | Defendants' Construction |
|---|---|
| The portion of the user equipment responsible for accepting data sent from a data provider | a device which can receive television signals, including data transmitted over those signals. |

Amazon is attempting to limit the claims to systems and methods that involve television signals.  As discussed above, Amazon's effort to restrict the claims to a *particular* method of transmission to the user is based on misreading the file history.  Indeed, the file history is facially inconsistent with Amazon's attempt to read "a receiver" as meaning a television receiver.  Rovi

told the examiner that the term "receiver" included the 75.0 Mhz Receiver shown as item 12 in Figure 1.  (D.I. 68, Ex. 8.19 at 22-23.)  *See also* '128 at 10:15-16 (referring to "the receiver 12"). Figure 1, however, contains a separate box labeled "TV Receiver" as item 27.  Thus, it is clear that the "receiver" can be something *other than* a television receiver.

Moreover, reading the term as Amazon suggests would violate the principle of claim differentiation.  Claim 37 calls for "a receiver" but does not mention television signals, while its dependent Claim 41 requires that "the receiver is further configured to receive television program signals."  The fact that the *dependent* claim adds the receipt of television signals as a *further* function of "the receiver" means that "the receipt of television signals" is not a function of "the receiver" when that term is used on its own.  *See Liebel-Flarsheim*, 358 F.3d at 910.

E.     **"program schedule information"**

| Plaintiffs' Construction | Defendants' Construction |
| --- | --- |
| information about the scheduling of one or more programs | information that includes the current and future air times of programs on television channels |

The parties agree that "program schedule information" requires information about the scheduling of programs.  But Amazon also asks the Court to read in limitations requiring (1) the programs to be "on television channels" and (2) current and future air times.

The Court should reject both restrictions.  First, Amazon's attempt to read "television channels" into this term is (as discussed previously) based on a misreading of the file history.

Second, Amazon ignores the fact that the disputed term is not a "program schedule," but rather "program schedule *information*."  The fact that "program schedule" is an adjectival phrase modifying "information" indicates that the claim calls for *information* on program scheduling, not *a* program schedule.  Thus, the term "program schedule information" does not require *all* of the information in a program schedule (whatever that might be), just *some* information from it.

Third, Amazon's assertion that schedules only cover current and future time periods is wrong. Schedule is not a term that requires construction. *Webster's Ninth New Collegiate Dictionary* 1050 (9th ed. 1991) (Ex. B) (defining "schedule" as "a procedural plan that indicates the time and sequence of each operation," giving the example that a show "finished on" schedule). Nor do schedules require information about the present and the future: the "television schedule" in Monday's newspaper does not cease to be a schedule at the stroke of midnight.

Finally, the specification does not link program schedule information *only* to current and future time periods, nor does it contain words of *express exclusion* with respect to past time periods. *See* '128 at 2:14-17 (referring to "schedule information for a time period roughly corresponding to the time period during which the general program being promoted is shown"); 44:58-61 (explaining that "the database may include the entire season schedule" while saying nothing about *deleting* that data as the season progresses).

**F.    "program listings"**

| Plaintiffs' Construction | Defendants' Construction |
|---|---|
| entries that provide information about particular programs. | entries that provide information about television programs, including current and future air times. |

Many of the claims of the '268 and '128 patent call for "program listings." For example, Claim 1 of the '268 patent calls for "displaying program listings" while Claim 2 of the '128 patent calls for "program schedule information compris[ing] program listings." The parties agree that the term "program listings" should have the same construction in both patents.

Rovi's proposed construction is consistent with the specification of both patents, which indicate that program listings are both part of the EPG and provide data about particular programs. *See* '128 at 4:59-60 ("program listings included in the EPG"); '268 at 4:25-27 (same); '128 at 38:15-20 ("program listings data for each of the programs."); '268 at 35:16-19 (same).

Amazon, on the other hand, asks the Court to read in two further limitations: (1) that the program listings *necessarily* include current and future air times and (2) that program listings relate to *television* programs.  The Court should reject both.

First, there is nothing about the ordinary language of the term "program listings" that *requires* them to contain any particular types of information about the listed programs.  *See American Heritage College Dictionary* 791 (3d ed. 2000) (Ex. E) (defining "listing" as "an entry in a list or directory").  Indeed, for the '643 patent, Amazon has proposed a construction of "video-on-demand program listing" that does *not* require air times.  *See* Section VI.C, *infra*.  If (as Amazon concedes) at least *some kinds* of program listings do not require air times, the broader category of "program listings" must not require them either.

Amazon is also wrong when it attempts to read the word "television" into the term "program listings."  As discussed above, the '128 patent is not limited to televisions.  Moreover, both the '128 and the '268 patents are explicit that the term "program listings" can apply to movies.  *See* '268 at 18:32-35 ("[an] icon appears at a number of occasions *in connection with certain program listings, such as movies*") (emphasis added); '128 at 19:60-63 (same).

## V.  UNITED STATES PATENT NUMBER 7,603,690

The '690 patent is directed to systems and methods for offering users the opportunity to order individually-purchasable programs in packages.  (D.I. 68, Ex. 6 (hereinafter '690).)  When a user selects an individually-purchasable program that is also part of an available package (such as an entire season of a show) the system gives the user the option to buy the entire package.

### A.  "interactive program guide"

| Plaintiffs' Construction | Defendants' Construction |
|---|---|
| an interactive electronic application that provides information to allow users to find television programming | an application that produces interactive display screens with program schedules and channel information (among other things) for a |

|  | television receiver.  The 'interactive program guide' in Claims 1, 9, 10, and 14 is executed on user equipment. |
|---|---|

The parties agree that the "interactive program guide" is an interactive application.  As explained above, the distinguishing feature of a program guide is that it *allows users to find* programs.  Amazon again asks the Court to read in requirements that the guide: (1) include "program schedules and channel information," (2) deliver content to a "television receiver," and (3) be executed on user equipment.  The Court should reject all three additional restrictions.

First, as discussed previously in connection with the term "electronic television program guide" in the '268 and '128 patents, the concept of a "program guide" does not *require* any particular kinds of information.  That is especially true with respect to the independent claims of the '690 patent which are directed towards determining whether an individual program is part of a package, *not* informing the user about a program schedule.

The drawings also show that Amazon's construction cannot be correct.  Those drawings are directed to the claimed subject matter of the '690 patent—the sale of packages of individual programs—and depict interactive program guide screens that contain neither a "schedule" nor "channel information."  *See, e.g.*, '690 at Figs. 7, 8.  A construction that excludes a preferred embodiment from the scope of the claims, as Amazon seeks to do here, is rarely if ever correct. *See Vitronics*, 90 F.3d at 1583.

Second, Amazon's attempt to read a "television receiver" into the '690 claims should be rejected.  The '690 patent does not even contain the terms "television receiver" or "receiver," much less incorporate such a structure into the claims. Nor does the concept of an "interactive program guide" inherently require that the programs be received by any particular piece of equipment—much less one Amazon conjures from *outside* the four corners of the patent.

Third, Amazon's attempt to read in a "user-equipment" limitation for *some* (but not all)

instances where the term "interactive program guide" appears should be rejected.  Amazon only

argues that the "interactive program guide" in claims 1, 9, 10, and 14 is executed on user

equipment but does not argue the same for the "interactive program guide" in claim 27.  It is

axiomatic that "claim terms are presumed to be used consistently throughout the patent."

*Research Plastics, Inc. v. Fed. Packaging Corp.*, 421 F.3d 1290, 1295 (Fed. Cir. 2005).

Amazon's attempt to read the term differently in different contexts is presumptively wrong.

**B.    "package"**

| Plaintiffs' Construction | Defendants' Construction |
|---|---|
| a set of more than one program | a collection of scheduled programs bundled for sale as a single unit |

The claims of the '690 patent call for determining whether a selected program "is part of

a package" and, if it is, presenting "an opportunity to purchase the package of which the selected

program is a part."  Thus, the language of the claims indicates that a "package" is (as Rovi's

construction suggests) a set of programs.  Indeed, Amazon's proposal does not dispute this fact

but seeks to read in two further limitations by requiring that the programs in the package be (1)

"scheduled," and (2) "bundled for sale as a single unit."  Neither limitation is warranted.

First, nothing about the ordinary meaning of the word "package" inherently requires the

programs that comprise it to be *scheduled* programs (rather than say, programs available on

demand).  *See Webster's Ninth New Collegiate Dictionary* 845 (9th ed. 1991) (Ex. B) (defining a

"package" as "a collection of related items to be considered or acted on together," and giving as

an example, "a radio or television series offered for sale at a lump sum").  There is also nothing

in the claims that would otherwise require the programs to be "scheduled."  Claim 1, for

example, does not contain any words which relate to or include the concept of a schedule.

Second, the Court should reject Amazon's attempt to import a requirement that the

programs be "bundled for sale as a single unit." Insofar as this is intended to imply that the user

is able to purchase the package itself (rather than the individual constitutive programs), the

limitation would be redundant because the claims already require the system to "present the user

with an opportunity to purchase the package of which the selected program is a part." On the

other hand, insofar as this language is intended to imply, for example, that the user cannot *also*

be offered the other programs in the package individually, the restriction finds no support in the

claims. In either event, it should be rejected.

**C.     "determine whether the selected program is part of a package"**

| Plaintiffs' Construction | Defendants' Construction |
|---|---|
| *The phrase does not require construction because its meaning is clear. To the extent the Court believes that a construction would be helpful to the jury, however, the phrase should be construed as:* the interactive program guide determines whether the selected program is part of a package. | the interactive program guide on the user equipment determines whether the selected program is part of a package |

This phrase does not require construction—there is nothing about the phrase "determine

whether the selected program is part of a package" that is unclear. Indeed, Amazon only

proposes to construe it so that it can attempt to add a requirement that the determination is

performed "on the user equipment." There is, however, nothing in this phrase that speaks to the

*location* where the determination is made. Indeed, some claims that include this limitation (such

as Claim 19) do not even *mention* user equipment—much less require it to perform this step.

**D.     ". . . claim 19, further comprising providing the user with an opportunity to impulse purchase the package through the interactive program guide."**

| Plaintiffs' Construction | Defendants' Construction |
|---|---|
|  | The claim is indefinite under 35 U.S.C. § 112 ¶ 2; there is no antecedent basis to the interactive program guide limitation. |

Amazon argues that Claim 27 is indefinite because there is no antecedent basis for the

term "the interactive program guide." Amazon is correct that the term 'interactive program guide" does not explicitly appear in parent Claim 19, but Claim 27 is not thereby rendered indefinite because it still has a "reasonably ascertainable meaning." *See Energizer Holdings, Inc. v. Int'l Trade Comm'n*, 435 F.3d 1366, 1370-71 (Fed. Cir. 2006) (dependent claim containing "said zinc anode" not indefinite despite the fact "zinc anode" did not appear in the parent claim because the claim scope was "reasonably ascertainable by those skilled in the art"); *Slimfold Mfg. Co. v. Kinkead Indus., Inc.*, 810 F.2d 1113, 1117 (Fed. Cir. 1987) ("[T]he missing antecedent clause, the absence of which was not observed either by the examiner of the original patent or by [the accused infringer] in its reissue protest documents, did not fail to 'inform the public during the life of the . . . patent of the limits of monopoly asserted.'") (citation omitted).

The meaning of Claim 27 is clear notwithstanding the missing antecedent. The claims and specification are all directed to systems and methods involving interactive program guides. Indeed, the summary of the invention explains that the invention is: "A system is provided that allows a user to select a pay program for purchase from a program guide." A person of ordinary skill in the art would not be confused by the fact that Claim 19 refers to "the" interactive program guide rather than to "an" interactive program guide. Instead, she would understand that the claim calls for providing the user with the opportunity to purchase a program through the interactive program guide recited in the claims and extensively described in the specification. Thus, as in *In re Skvorecz*, 580 F.3d 1262, 1268-69 (Fed. Cir. 2009), the term "does not require further antecedent basis [in the independent claim], for a person skilled in the field of the invention would understand the claim when viewed in the context of the specification."

## VI.   UNITED STATES PATENT NUMBER 7,493,643

The '643 patent describes new features for an interactive video-on-demand program guide. (D.I. 68, Ex. 5 (hereinafter '643).)  One of those features provides a user with the ability

to identify and request an available preview clip for a video-on-demand program, and purchase the program after watching it. *See id.* at 9:48-64 (describing this feature). This feature is commercially valuable because it drives demand for video-on-demand programming. The claims are broad because, at the time of filing, in 1998, this represented a new way of using the interactive features of digital media.

### A.     "viewer television equipment"

| Plaintiffs' Construction | Defendants' Construction |
|---|---|
| user-controlled equipment capable of displaying remotely provided audio-visual programming | viewer equipment for viewing television programs that includes a television and either a set-top box or circuitry similar to a set-top box |

Rovi's construction is consistent with the '643 patent specification and the plain meaning of the words in the claims. Because the term is "*viewer* television equipment," Rovi's construction refers to the equipment as "user-controlled." (This makes clear the distinction between watching television and going to the movies.) In addition, because the term calls for "*television equipment*," Rovi's construction calls for "displaying remotely provided audio-visual programming." This flows from the ordinary meaning of television. *See The New IEEE Standard Dictionary of Electrical and Electronics Terms* 1346 (5th ed. 1993) (Ex. F) ("[t]he electric transmission and reception of transient visual images"); *Webster's Ninth New Collegiate Dictionary* 1213 (9th ed. 1991) (Ex. B) ("an electronic system of transmitting transient images . . . together with sound over a wire or through space by apparatus that converts light and sound into electrical waves and reconverts them into visible light rays and audible sound").

Amazon's proposal seeks to read in requirements that the equipment (1) can only be used to watch television programs, and (2) that it must include specific hardware components.

First, there is nothing about the term "viewer television equipment" that limits the *kind* of programming it can display. Even 1920s era televisions could display movies, sporting events,

live video and test patterns in addition to programs produced explicitly for television. And the '643 specification describes ordering movies with the viewer television equipment in the preferred embodiment. *See* '643 at 4:3-7 (giving "X-Files The Movie" as an example of "a particular video-on-demand program 9 shown on program guide display 7").

Second, the specification does not indicate any intent to restrict the type of hardware that can constitute viewer television equipment. *See id.* at 2:21-23 ("A viewer may direct the program guide to present a program guide display on viewer television equipment."); 5:40-46 ("regional television distribution facility 26 may distribute television programming . . . to viewer television equipment 30 via communications paths 32"); 6:37-42 ("Viewer television equipment 30 may also be any suitable equipment into which circuitry similar to set-top box circuitry has been integrated, such as an advanced television receiver (such as HDTV), a personal computer television (PC/TV), or any other suitable television equipment."). For this reason, "viewer television equipment" should not be limited to specific types of hardware.

### B. "program guide display"

| Plaintiffs' Construction | Defendants' Construction |
|---|---|
| a display of an application that provides information to allow users to find programming | a display of an application, on a portion of a screen used by a current channel, of program information for one and only one category of video-on-demand programs |

Rovi's construction is consistent with the ordinary meaning of this term. As explained previously, the key feature of a program guide is that it allows users to find programming. *See* Section B, *supra.* Rovi's construction is also consistent with the specification, which explains that the "[p]rogram guide display 70 preferably contains information about a particular video-on-demand program." '643 at 8:25-26; *see also* 11:12-13.

Amazon, on the other hand, seeks to add the requirements that the program guide display

(1) reside on "a portion of a screen used by a current channel," and (2) display information for "one and only one" category of programs. The Court should reject both additional limitations.

First, as discussed previously, nothing about the term "program guide display" requires a particular display *format*. Indeed, the '643 specification is explicit that the invention is *not* restricted to any particular display format. *See* '643 at 8:5-15 (the program guide display can be displayed on the "main display screen" or "*may also* be superimposed on top of a portion of the current program") (emphasis added); *see also Liebel-Flarsheim Co.*, 358 F.3d at 906 ("Even when the specification describes only a single embodiment, the claims of the patent will not be read restrictively unless the patentee has demonstrated a clear intention to limit the claim scope using 'words or expressions of manifest exclusion or restriction.'") (citation omitted).

Second, nothing about the word "program guide display" limits the guide to a single category of programming. Amazon's argument to the contrary is an attempt to read in a limitation from a preferred embodiment. Although the specification describes an embodiment where the guide "contains information about a particular video-on-demand program," the next sentence explains that "*[i]f desired*, such video-on-demand programs *may be* organized according to certain categories such as 'recent releases,' 'sitcoms' . . . etc." '643 at 8:26-28 (emphasis added).

## C.     "video-on-demand program listing"

| Plaintiffs' Construction | Defendants' Construction |
|---|---|
| An entry that provides information about a particular video-on-demand program. | *video-on-demand program listing [in a program guide display]*:  A selectable entry of information for a video-on-demand program; information presented on a separate display screen after the entry is selected about the video-on-demand program is not a program listing. |

The parties agree that a "video-on-demand program listing is an "entry" that provides

information about a video-on-demand program. However, Amazon seeks to read in the additional requirements (1) that the entry is selectable, and (2) that any information displayed about the video-on-demand program after that selection is not part of the listing. Both are wrong.

First, there is nothing about the term "program listing" that requires the listing to be selectable. Indeed, in connection with the '128 patent, Amazon did not suggest that a "program listing" had to be selectable, but instead proposed that program listings are "entries that provide information about television programs, including current and future air times." *See* Section F, *supra*. It is hard to understand why a *video-on-demand* program listing would require selectability when Amazon concedes that "program listings" in general do not. Indeed, there is nothing about the fact that a listing contains information about a *video-on-demand* program (rather than some other program) that requires the listing *itself* to be selectable. Certainly the fact that the video is available "on demand" does not so require—for one can imagine many ways (such as a separate button) that a video-on-demand system could handle ordering that would not involve selecting the program listing. Indeed, the specification for the '643 patent describes just such a button. *See* '643 at 4:3-7; *see also Vitronics*, 90 F.3d at 1583.

Second, the Court should reject Amazon's attempt to read in a negative limitation *excluding* from the scope of claims "information presented on a separate display screen after the entry is selected." The specification of the '643 is explicit about the fact that a viewer "may direct the program guide to display additional screens with detailed information about [a particular] program." '643 at 4:37-47. The specification, therefore, expressly *includes* video-on-demand program listings on additional screens with information beyond the first one.

**D.     "means for indicating that a video clip preview is available for a video-on-demand program that is associated with a video-on-demand program listing**

**wherein the indication is provided with the . . . listing"**

| Plaintiffs' Construction | Defendants' Construction |
|---|---|
| Function: Indicating that a video clip preview is available for a video-on demand program that is associated with a video-on-demand program listing.<br><br>Structure:  An icon or its equivalents as described in, for example, col. 8, lines 32-39, col. 9, lines 48-51, and/or Figures 6A, 6B and related text from the specification. | Function (Construction): an indication that a video clip preview is available for a video-on-demand program must appear with the video-on-demand program listing for that program<br><br>Structure:  Includes an icon on a display and a set-top box with a processor; but the patent does not disclose the computer algorithm needed to instruct the processor to perform the claimed function.. |

The parties dispute both the function and the sufficiency of the disclosed structure in

relation to this means-plus-function limitation.  First, Amazon appends the subsequent "wherein"

clause to the function.  This is improper.  The wherein clause does not modify the function;

rather, it states a separate limitation that acts on the result: the indication.  *See Lockheed Martin*

*Corp. v. Space Systems/Loral, Inc.*, 324 F.3d 1308, 1319 (Fed. Cir. 2003) ("The function is

properly identified as the language after the 'means for' clause and before the 'whereby' clause,

because a whereby clause that merely states the result of the limitations in the claim adds nothing

to the substance of the claim.").  Amazon's "construed" version of the function exposes the

problem in its approach—it does not even read as a function anymore.

The parties also dispute the sufficiency of the disclosed structure.  Amazon identifies the

structure as an icon or its equivalents, which belies the notion that the claim is indefinite.  And

Amazon is right.  The specification explains: "Certain video on demand programs may have

video clip previews associated with them. As shown in FIG. 6a, program guide display 70 may

include a video clip icon 79 to indicate that the listed program has an associated video clip

preview." '643 at 9:48-51.  Accordingly, the icon structure is clearly linked to the function, as

confirmed by dependent claim 2, which teaches that "the indicating means is an icon."

**E.**      **"means for displaying the video clip preview on the viewer television**

equipment"

| Plaintiffs' Construction | Defendants' Construction |
|---|---|
| Function: displaying the video clip preview on the viewer television equipment | Function: displaying the video clip preview on the viewer television equipment |
| Structure: a processor that executes any of the software to display the video clip preview on the viewer television equipment as described in, for example, col. 3, lines 29-34, col. 5, lines 10-25, col. 7, lines 6-40, col. 9, line 48 – col. 10, line 7, col. 10, line 59 – col. 11, line 52; and/or Figures 2, 3, 6B and/or 9 and related text from the specification, or any equivalents thereof. | Structure: None. |

The parties agree about the function, but disagree about whether there is corresponding structure. The specification discloses a processor ('643 at 7:6-17) that is programmed to (1) receive and process a request for a video clip preview (10:19-22); (2) interface with a database of video-on-demand programs and video-clip previews (5:10-13 and Fig 3); (3) retrieve a video-clip preview from any suitable digital, analog, or mixed digital and analog storage and retrieval system (5:13-17); and (4) provide the viewer television equipment with a video signal which causes it to display the requested video-clip preview (5:13-17). Thus, it discloses an algorithm to respond to a user request by retrieving and then displaying a requested video. *See Typhoon Touch Techs., Inc. v. Dell, Inc.*, 659 F.3d 1376, 1386 (Fed. Cir. 2011) (a textual algorithm is sufficient where it is "not disputed that the steps are carried out by known computer-implement operations, and are readily implemented by persons of skill in computer programming").

F.  **"means for displaying an ordering display screen after the video clip preview of the video-on-demand program is displayed, wherein the ordering display screen provides the viewer with the opportunity to select an ordering option to order the video-on-demand program"**

| Plaintiffs' Construction | Defendants' Construction |
|---|---|
| Function: *The function does not require construction because its meaning is clear.* Structure: a processor that executes any of the software to display an ordering display screen | Function (Construction): following the display of the video clip preview, an option to order the video-on-demand program is presented on a new display screen |

| as described in, for example, 3:40-41, 4:52-57, 5:10-25, 7:6-40, 10:8-50, 10:59 -11:52; and/or Figures 2, 3, 8 and/or 9 and related text from the specification, or any equivalents thereof. | Structure: None. |
|---|---|

Rovi believes that there is nothing about the ordinary meaning of "displaying an ordering display screen" that would be brought into sharper focus by replacing those words with any others. Amazon's construction, on the other hand, asks the Court to *rewrite* the function so as to include a requirement that the "video-on-demand program is presented on a *new* display screen." Nothing about the recited function requires the "ordering display screen" to be a new screen.

Rovi has also correctly identified the corresponding structure. The specification discloses a processor that is programmed to display a screen where a user can request to order a video-on-demand program. Such screens are illustrated in Figures 6 and 8 and described in the related text. For example, the specification describes the steps of the user "pressing any appropriate key on remote 50 such as buy key 56," ('643 at 10:19-20), and the viewer "activat[ing] the on-screen button" in order to "direct the program guide to request that program from the video server" (10:20-22). As a result "one or more configuration and control screens may appear" (10:24-25). Those screens contain "a series of data fields for viewer input" (10:25) which the "viewer may navigate through . . . using cursor keys" (10:33-34) in order to select a "start program now field" (10:31) or a "program start time" from a "pull-down menu that presents a list of start times" (10:37). The user can also use this same mechanism to complete the "purchase confirmation" (10:44-46) such that "the ordering process is complete" (10:48-50). Thus, the specification contains a textual algorithm explaining the steps involved in displaying an ordering screen that "provides the viewer with the opportunity to select an ordering option to order the video-on-demand program." This is ample structure. *See Typhoon Touch Techs.*, 659 F.3d at 1386.

## VII.   UNITED STATES PATENT NUMBER 5,988,078

The '078 patent allows a viewer to access listings available at his or her location using a computer. (D.I. 68, Ex. 2 (hereinafter '078).) The invention grew out of the problem created by the growing number of providers and the difficulty in providing accurate information for all viewing locations. The '078 solves this problem by letting users submit a geographic identifier, such as a ZIP code, to request current program information from a service provider.

### A.   "viewing location"

| Plaintiffs' Construction | Defendants' Construction |
| --- | --- |
| residence or other building at which a television signal can be received | residence or other building where a television signal is received from a programming source |

The only dispute between the parties is whether a "viewing location" is a place where a television signal *can be* received or a place where a television signal *is* received. The specification, however, is clear that the computer (at the "viewing location") does not need to be in the same place as the television signal that is actually received. In particular, the specification discloses an embodiment where "the personal computer and video recorder are located remotely from one another and the output signals from the personal computer are transmitted by radio to an infrared transmitter for control of the video recorder." '078 at 2:58-62. The VCR, which receives the television signal, can be located "a large distance" from the computer that receives the schedule information. *Id.* at 6:13-15. Thus, the computer does not need to be in the same building as the VCR that receives the television signal. Amazon's construction would exclude a preferred embodiment and for that reason is disfavored. *See Vitronics*, 90 F.3d at 1583.

### B.   "modem"

| Plaintiffs' Construction | Defendants' Construction |
| --- | --- |
| a device that converts (modulates and demodulates) a data signal for receipt and transmission over a communication network such as a public switched telephone network, a wireless or cellular network, or a cable network | hardware that translates audio signals transmitted over a telephone line into digital information for a computer and vice versa |

Rovi's construction of "modem" is consistent with the ordinary meaning of the term to a person of ordinary skill in the art. The word "modem" is a technical term derived from a "contraction of MOdulator [and] DEModulator" and which refers to any "equipment that connects data terminal equipment to a communication line." *The New IEEE Standard Dictionary of Electrical and Electronics Terms* 815(5th ed. 1993) (Ex. F); *see also IBM Dictionary of Computing* 366 (9th ed. 1991) (Ex. G) ("A device that converts digital data from a computer to an analog signal that can be transmitted on a telecommunication line, and converts the analog signal received to data for the computer.").

Amazon tries to read in limitations that would limit a "modem" to a device that converts "audio signals" transmitted over telephone lines into "digital information." The specification provides no support for that restriction. Indeed, the specification does not even *contain* those terms. Moreover, the '078 patent expressly discloses methods of communication—cablecast or broadcast—other than dial-up telephone lines to which Amazon would have the Court limit the terms. '078 at 3:65-67. The Court should therefore give modem its ordinary meaning, which includes cable modems and DSL modems.

## VIII.   CONCLUSION

For the foregoing reasons, the Court should adopt Rovi's proposed constructions as set forth herein.

OF COUNSEL:                                    /s/ Jason J. Rawnsley
                                               Frederick L. Cottrell, III (#2555)
Daralyn J. Durie                               Anne Shea Gaza (#4093)
Ragesh K. Tangri                               Jason J. Rawnsley (#5379)
Clement S. Roberts                             RICHARDS, LAYTON & FINGER, PA
Jesse Geraci                                   One Rodney Square
Eugene Novikov                                 920 North King Street
DURIE TANGRI LLP                               Wilmington, Delaware 19801
217 Leidesdorff Street                         (302) 651-7700
San Francisco, CA  94111-3007                  cottrell@rlf.com
(415) 362-6666                                 gaza@rlf.com
ddurie@durietangri.com                         rawnsley@rlf.com
rtangri@durietangri.com
croberts@durietangri.com
jgeraci@durietangri.com                        *Attorneys for Plaintiffs Rovi Corp., Rovi Guides,*
enovikov@ durietangri.com                      *Inc. (f/k/a Gemstar-TV Guide Int'l Inc.), United*
                                               *Video Props., Inc., TV Guide Online, LLC, and*
                                               *TV Guide Online, Inc.*

Dated:  March 19, 2012

## CERTIFICATE OF SERVICE

I hereby certify that on March 19, 2012, I caused to be served by **electronic mail** copies of the foregoing document and electronically filed the same with the Clerk of Court using CM/ECF which will send notification of such filing to the following:

Karen Jacobs Louden, Esquire
Michael J. Flynn, Esquire
Morris, Nichols, Arsht & Tunnell LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
klouden@mnat.com
mflynn@mnat.com

I further certify that on March 19, 2012, I caused to be served by **electronic mail** copies of the foregoing document upon the following counsel of record:

Scott E. Gant, Esquire
D. Michael Underhill, Esquire
Neal Hannan, Esquire
Evan A. Parke, Esquire
Joshua Mayer, Esquire
Boies, Schiller & Flexner LLP
5301 Wisconsin Avenue, N.W.
Washington, D.C. 20015
sgant@bsfllp.com
munderhill@bsfllp.com
nhannan@bsfllp.com
eparke@bsfllp.com
jmayer@bsfllp.com

Eric J. Maurer, Esquire
Maurer PLLC
5335 Wisconsin Avenue, NW
Suite 440 PMB#: 4154
Washington, DC 20015
(202) 417-3804
emaurer@maurerpllc.com

*/s/ Jason J. Rawnsley*
Jason J. Rawnsley (#5379)
rawnsley@rlf.com