IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ROVI CORPORATION, ROVI GUIDES, INC. (f/k/a GEMSTAR-TV GUIDE INTERNATIONAL INC.), UNITED VIDEO PROPERTIES, INC., TV GUIDE ONLINE, LLC, and TV GUIDE ONLINE, INC., | ) ) ) ) ) | |
| | ) | |
| Plaintiffs, | ) | C.A. No. 11-003 (RGA) |
| | ) | |
| v. | ) | |
| | ) | |
| AMAZON.COM, INC., and IMDB.COM, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## OPENING CLAIM CONSTRUCTION BRIEF
## OF DEFENDANTS AMAZON AND IMDB

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

OF COUNSEL:

Scott E. Gant
D. Michael Underhill
Neal Hannan
BOIES, SCHILLER & FLEXNER LLP
5301 Wisconsin Avenue, NW
Washington, DC 20015
(202) 237-2727

Eric J. Maurer
MAURER PLLC
5335 Wisconsin Avenue, NW
Suite 440 PMB #: 4154
Washington, DC 20015
(202) 417-3804

March 19, 2012

Karen Jacobs Louden (#2881)
Michael Flynn (#5333)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
klouden@mnat.com
mflynn@mnat.com

*Attorneys for Defendants Amazon.com, Inc.
and IMDb.com, Inc.*

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................... 1

LEGAL FRAMEWORK .............................................................................................. 2

BACKGROUND ........................................................................................................... 3

ARGUMENT ................................................................................................................. 5

    I.    '268 and '128 Patents............................................................................................ 5

        A.    "electronic television program guide" [Claims 1, 25, 26, 27, 34-36, 51] ................................................................................................................ 6

        B.    Terms Related to Scheduling Information .................................................. 8

            1.    "program listings" ['128 and '268 Patents] ....................................8

            2.    "program schedule information" ['128 and '268 Patent] ...............9

        C.    The Display Functionality Terms ['128 and '268 Patents]...................... 10

            1.    "video display generator" ['128 Claims 37-39]............................10

            2.    "displaying" ['268 Claims 1-5, 7, 9, 11, 36] and "displaying … with the electronic television program guide" ['268 Claims 1, 36] ........................................................................................................11

        D.    Product Ordering Terms ........................................................................... 12

            1.    "standardized product" [Claim 34] ............................................12

            2.    "time and date stamping an order placed by the user with the electronic television program guide" ['268 Claim 51] .................13

        E.    Terms Unique to the '128 Specification .................................................. 14

            1.    "Multimedia informational system" ['128 Patent] ......................14

            2.    "data feed" ['128 Patent] ............................................................15

        F.    "a receiver" [Claim 37]............................................................................ 16

    II.    '690 Patent .......................................................................................................... 17

        A.    "interactive program guide" [Claims 1, 9, 10, 14]................................... 17

        B.    "package" [Claims 1, 9, 10, 19, 27, and 28] ........................................... 18

i

C.     "determine whether the selected program is part of a package" [Claim 1] ......................................................................................... 19

D.     "The method defined in Claim 19, further comprising providing the user with an opportunity to impulse purchase the package through the interactive program guide." [Claim 27]................................. 20

III.    '643 Patent ................................................................................................. 20

A.     "program guide display" [Claims 1, 5, 7, 11, 13, and 17] ....................... 20

B.     "video-on-demand program listing [in a program guide display]" [Claims 1, 7, and 13]................................................................................ 21

C.     "viewer television equipment" [Claims 1, 7, 13]..................................... 23

D.     The Three "Means-Plus-Function" Limitations Recited in Claim 1 Do Not Have Corresponding Structure and Are Invalid [Terms 17 - 19] ......................................................................................................... 23

        1.    Identification and Interpretation of the Claimed Functions...........24

            a.    Identifying the Functions ................................................... 24

            b.    Interpreting the Recited Functions..................................... 25

        2.    The '643 Patent Does Not Disclose "Corresponding Structure" for These Three Limitations..........................................................27

IV.    '078 Patent ................................................................................................. 29

A.     "viewing location" [Claims 1-7].............................................................. 29

B.     "modem" [Claims 1, 6, 8] ........................................................................ 30

CONCLUSION.................................................................................................................... 30

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Am. Piledriving Equip., Inc. v. Geoquip, Inc.*,
    637 F.3d 1324 (Fed. Cir. 2011) ................................................................................ 3

*Application of Bulloch*,
    604 F.2d 1362 (C.C.P.A. 1979) .............................................................................. 14

*Aristocrat Techs. Australia Pty Ltd. v. International Game Tech.*,
    521 F.3d 1328 (Fed. Cir. 2008) .............................................................................. 24

*Astrazeneca AB v. Mutual Pharmaceutical Co.*,
    384 F.3d 1333 (Fed. Cir. 2004) ................................................................................ 3

*Atmel Corp. v. Info. Storage Devices, Inc.*,
    198 F.3d 1374 (Fed. Cir. 1999) .............................................................................. 12

*Bicon, Inc. v. Straumann Co.*,
    441 F.3d 945 (Fed. Cir. 2006) ................................................................................ 18

*Bio Tech. Gen. Corp. v. Duramed Pharmaceuticals, Inc.*,
    325 F.3d 1356 (Fed. Cir. 2003) .............................................................................. 14

*C.R. Bard, Inc. v. U.S. Surgical Corp.*,
    388 F.3d 858 (Fed. Cir. 2004) .................................................................................. 3

*Computer Docking Station Corp. v. Dell, Inc.*,
    519 F.3d 1366, 1375 (Fed. Cir. 2008) ................................................................... 14

*Cordis Corp. v. Boston Sci. Corp.*,
    561 F.3d 1319 (Fed. Cir. 2009) .............................................................................. 12

*Corning Glass Works v. Sumitomo Elec. U.S.A., Inc.*,
    868 F.2d 1251 (Fed. Cir. 1989) .............................................................................. 14

*Energizer Holdings, Inc. v. Int'l Trade Comm'n*,
    435 F.3d 1366 (Fed. Cir. 2006) .............................................................................. 20

*Honeywell Int'l, Inc. v. ITT Indus., Inc.*,
    452 F.3d 1312 (Fed. Cir. 2006) ................................................................................ 3

*HTC Corp. v. IPCom GmbH & Co.*, No. 2011-1004,
    2012 WL 254804 (Fed. Cir. Jan. 30, 2012) .......................................................... 28

*IPXL Holdings, L.L.C. v. Amazon.com, Inc.*,
    333 F. Supp.2d 513 (E.D. Va. 2004) ..................................................................... 14

*IPXL Holdings, L.L.C. v. Amazon.com, Inc.*,
    430 F.3d 1377 (Fed. Cir. 2005) ........................................................................ 14

*Lockheed Martin v. Space Systems/Loral Inc.*,
    324 F.3d 1308 (Fed. Cir. 2003) ........................................................................ 24

*Loctite Corp. v. Ultraseal Ltd.*,
    781 F.2d 861 (Fed. Cir. 1985) .......................................................................... 14

*Massachusetts Inst. of Tech. & Electronics For Imaging, Inc. v. Abacus Software,*
    462 F.3d 1344 (Fed. Cir. 2006) ........................................................................ 30

*Medtronic, Inc. v. Advanced Cardiovascular Sys., Inc.*,
    248 F.3d 1303 (Fed. Cir. 2001) ........................................................................ 24

*Medtronic, Inc. v. Boston Scientific Corp.*,
    777 F. Supp.2d 750 (D. Del. 2011) ................................................................... 14

*Mettler-Toledo, Inc. v. B-Tek Scales, LLC*,
    Nos. 2011-1173, -1200, 2012 WL 386355 (Fed. Cir. Feb. 8, 2012) ...................... 24

*Microprocessor Enhancement Corp. v. Texas Instruments Inc.*,
    520 F.3d 1367 (Fed. Cir. 2008) .......................................................................... 8

*Microsoft Corp. v. Multi-Tech Systems, Inc.*,
    357 F.3d 1340 (Fed. Cir. 2004) .......................................................................... 3

*Modine Mfg. Co. v. Int'l Trade Comm'n*,
    75 F.3d 1545 (Fed. Cir. 1996) ........................................................................... 3

*NTP, Inc. v. Research In Motion, Ltd.*,
    418 F.3d 1282, 1293 (Fed. Cir. 2005) ................................................................ 5

*Personalized Media Commc'ns, LLC v. Int'l Trade Comm'n*,
    161 F.3d 696 (Fed. Cir. 1998) .......................................................................... 12

*Phillips v. AWH Corp.*,
    415 F.3d 1303 (Fed. Cir. 2005) (*en banc*) .......................................................... 2

*SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.*,
    242 F.3d 1337 (Fed. Cir. 2001). ........................................................................ 2

*Seachange Int'l, Inc. v. C-COR, Inc.*,
    413 F.3d 1361 (Fed. Cir. 2005) .......................................................................... 8

*TiVo, Inc. v. EchoStar Communications Corp.*
    516 F.3d 1290 (Fed. Cir. 2008) ..................................................................... 3, 12

*Verizon Servs. Corp. v. Vonage Holdings Corp.*,
    503 F.3d 1295 (Fed. Cir. 2007) ................................................................. 3

*Wang Labs., Inc. v. America Online, Inc.*,
    197 F.3d 1377 (Fed. Cir. 1999) .............................................................. 12

*Wilson Sporting Goods Co. v. Hillerich & Bradsby Co.*,
    442 F.3d 1322 (Fed. Cir. 2006). ............................................................... 3

**Statutes**

35 U.S.C. § 112.................................................................................................. 12, 23

**Other Authorities**

DICTIONARY OF VIDEO AND TELEVISION TECHNOLOGY
    (Keith Jack and Vladimir Tsatsulin eds., Newnes 2002)...................................... 7, 30

Dictionary.com., *Dictionary.com Unabridged.*, Random House, Inc.
    http://dictionary.reference.com/ (last visited March 19, 2012). .................................... 9, 11, 19

MICROSOFT PRESS COMPUTER DICTIONARY: THE COMPREHENSIVE STANDARD
    FOR BUSINESS, SCHOOL, LIBRARY, AND HOME (Microsoft Press 2d ed. 1994) .......................... 30

NEWTON'S TELECOM DICTIONARY (Harry Newton ed., Flatiron 9th ed. 1995) ........................... 30

RANDOM HOUSE PERSONAL COMPUTER DICTIONARY
    (Philip E. Margolis ed., Random House 2d ed. 1996). ............................................. 30

THE AMERICAN HERITAGE COLLEGE DICTIONARY (4th ed. 2007). .................................... 9, 11, 19

WEBSTER'S NEW WORLD DICTIONARY OF MEDIA AND COMMUNICATIONS
    (Richard Weiner ed., 2nd ed. 1996)..................................................................... 7, 30

## TABLE OF ABBREVIATIONS

| Abbreviation | Description |
|---|---|
| '078 | U.S. Pat. No. 5,988,078, submitted as Ex. 2 to the parties' 2/17/2012 Joint Claim Construction Chart (D.I. 68) |
| '128 | U.S. Pat. No. 6,769,128, submitted as Ex. 4 to the parties' 2/17/2012 Joint Claim Construction Chart (D.I. 68) |
| '268 | U.S. Pat. No. 6,275,268, submitted as Ex. 3 to the parties' 2/17/2012 Joint Claim Construction Chart (D.I. 68) |
| '643 | U.S. Pat. No. 7,493,643, submitted as Ex. 5 to the parties' 2/17/2012 Joint Claim Construction Chart (D.I. 68) |
| '690 | U.S. Pat. No. 7,603,690, submitted as Ex. 6 to the parties' 2/17/2012 Joint Claim Construction Chart (D.I. 68) |
| D.I. 68, Ex. __ | Exhibit submitted with the parties' 2/17/2012 Joint Claim Construction Chart (D.I. 68) |
| Ex. __ | Exhibits attached to the Declaration of Michael Flynn, filed at the same time as this brief |
| Term __ | The Supplemental Joint Claim Construction Chart submitted on 3/19/2012 (D.I. 83 Ex. 1) assigns numbers to each disputed limitation.  This abbreviation refers to each numbered term. |

## <u>INTRODUCTION</u>

This is a classic case of patent owners relying on hindsight in an effort to broaden patent claims so that they cover products and processes that the named inventors did not present to the Patent Office.  The patent applications at issue were filed in the 1990s, when it was already common for electronic or interactive program guides to provide television viewers with schedule information, such as television program dates, times and channels.  Companies in the television industry, including the original owners of the patents-in-suit, at best added narrow features that could be used with what was already known and used by the public.  Four asserted patents—the '128, '268, '643, and '690—are directed at certain of these narrow features.  ('268 at 1:12-19; '128 at 1:11-21; '643 at 1:12-17; and '690 at 1:14-17.)  The fifth, the '078 Patent, is directed at providing scheduling information to be used in programming a VCR.  ('078 at 1:16-22.)

Properly construed, none of these patents encompasses Amazon's or IMDb's services offerings, including the Internet "streaming" video services that are offered on Defendants' web pages.  These services permit a user to consult an online menu of movies or other videos and make a selection for viewing on his home computer or other video equipment.  Significantly, the on-line movie menus provide no schedules, channel information, or connection to broadcast or cablecast television, let alone the particular guide systems and other features described in the patents.

Plaintiffs' infringement case depends on using the claim construction process to redefine the patent claims to cover the accused product offerings.  To that end, Plaintiffs proffer impermissibly broad claim constructions that are divorced from the patent specifications.  In contrast, Amazon's and IMDb's proposed constructions faithfully adhere to the patents' descriptions of "the invention," the representations made to the Patent Office to obtain the

patents, and the meaning of the claim terms at the time of the patent applications.[1]

## **LEGAL FRAMEWORK**

A controlling claim interpretation case is *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) (*en banc*). It enunciates two key principles. First, claims must be construed as of "the time of the invention, *i.e.*, as of the effective filing date of the patent application." *Id.* at 1313. The construction of a claim is fixed in time, even if the meaning of a term later evolves.

Second, the "intrinsic evidence" (the patent and its file history, and in particular the specification) is crucial to claim construction. The specification, which includes the claims, "is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term." *Id.* at 1315 (citation omitted). The intrinsic evidence is used to construe claims in the following ways:

- *Context*: Claim terms generally are given their ordinary and customary meaning. *Id.* at 1312. But "[p]roperly viewed, the 'ordinary meaning' of a claim term is its meaning to the ordinary artisan *after reading the entire patent*." *Id.* at 1321 (emphasis added). Thus, the intrinsic evidence provides context to the commonly held understanding of the meaning of a term. *Id.* at 1313-16.

- *Special Definition*: The patentee can be his own lexicographer and explicitly or implicitly define claim terms (such as by implicitly limiting the scope of terms) in the specification. *Id.* at 1316 & 1321.

- *Disclaimer*: "[T]he specification may reveal an intentional disclaimer, or disavowal, of claim scope by the inventor." *Id.* at 1316; *see SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.*, 242 F.3d 1337, 1343-44 (Fed. Cir. 2001).

When analyzing the intrinsic evidence, care must be taken to construe terms and not to import limitations improperly. *Phillips*, 415 F.3d at 1323. But statements in the patent that

---

[1] Plaintiffs assert the '128, '268, '643, and '690 patents against Amazon, and the '078, '128, and '268 patents against IMDb. Plaintiffs assert a total of 62 patent claims. Consistent with the Court's ruling at the March 6, 2012 teleconference, (D.I. 79 at 17:18-24), the parties initially identified 24 terms for briefing at this time. They then agreed on a construction for one term. The remaining 23 claim terms are separately numbered on Exhibit 1 to D.I. 83, which also sets forth the parties' proposed constructions.

characterize "the invention," as opposed to "embodiments" of the invention, are definitional.[2]

Such statements are frequently in the "Summary of the Invention." *C.R. Bard*, 388 F.3d at 864.

## BACKGROUND

The '268, '128, '643, and '690 Patents state that the "invention[s]" relate to electronic or

interactive television "program guides." ('268 at 1:12-19; '128 at 1:11-21; '643 at 1:12-17; and

'690 at 1:14-17.)[3] Electronic or Interactive Program Guides ("EPGs" and "IPGs") were

electronic versions of printed program guides, such as TV Guide Magazine, that television

viewers had historically consulted for broadcast times and channels. (*See, e.g.*, '643 at 1:41-47.)

The core function of EPGs and IPGs was to allow a viewer to find schedules for programming

appearing on televisions channels. (*See, e.g.*, '268 at 5:26-34; '128 Patent at 6:1-9; *see also* Ex.

A at pp. 64-65 (1990 Popular Science article cited in '268 and '128 Patents).) EPGs could

display the schedule information in various formats, such as in lists or grids, and by genre or

channel. (*See, e.g.*, '268 Figs. 5, 18-21, 25.)

---

[2] *See, e.g.*, *Am. Piledriving Equip., Inc. v. Geoquip, Inc.*, 637 F.3d 1324, 1334 (Fed. Cir. 2011) ("This court has indicated that a statement in a specification that describes the invention as a whole can support a limiting construction of a claim term."); *TiVo, Inc. v. EchoStar Communications Corp.* 516 F.3d 1290, 1300 (Fed. Cir. 2008) ("[w]hen a patent thus describes the features of the 'present invention' as a whole, this description limits the scope of the invention.") (quoting *Verizon Servs. Corp. v. Vonage Holdings Corp.*, 503 F.3d 1295, 1308 (Fed. Cir. 2007)); *Honeywell Int'l, Inc. v. ITT Indus., Inc.*, 452 F.3d 1312, 1318 (Fed. Cir. 2006) (construing "fuel injection system component" as "fuel filter" because written description referred to "fuel filter" when describing  the "invention."); *C.R. Bard, Inc. v. U.S. Surgical Corp.*, 388 F.3d 858, 864 (Fed. Cir. 2004) ("Summary of Invention's" and "Abstract's" descriptions of the implantable plug as including/having "a pleated surface" limits the claimed plug to those having pleated surfaces.); *Astrazeneca AB v. Mutual Pharmaceutical Co.*, 384 F.3d 1333, 1339-40 (Fed. Cir. 2004) (The specification's statement that particular types of "solubilizers" were "suitable . . . according to the invention" was a "strong signal of lexicography" that "works [as] an implicit disavowal" of all but a certain type of solubilizers.); *Microsoft Corp. v. Multi-Tech Systems, Inc.*, 357 F.3d 1340 (Fed. Cir. 2004) (limiting claims to telephone communications because the "Summary of the Invention" describes the "present system" as including that feature); *Modine Mfg. Co. v. Int'l Trade Comm'n*, 75 F.3d 1545 (Fed. Cir. 1996) ("[W]hen the preferred embodiment is described in the specification as the invention itself, the claims are not necessarily entitled to a scope broader than that embodiment.").

[3] The '078 patent relates to controlling a video recorder to allow the unattended recording of future occurring programs" using "a display of a schedule of future programming available to the recorder on [a] personal computer."  ('078 at 1:17-22.)

The patents describe ways to enhance existing EPGs and IPGs.  The '128 merely describes providing up-to-date information, such as sports scores, along with the related program listings.  The '268, '643, and '690 incorporate well-known sales techniques into EPGs/IPGs:

- Offering companion products: permitting the user to purchase a product "related to television programming" listed in the guide (the '268 Patent);

- Providing free samples: permitting a user to view a preview of program and then displaying an ordering screen offering the program for sale (the '643 Patent); and

- Upselling: 'upselling' a viewer who purchases a single pay-per-view program by offering her an option to buy a package of programs that includes the one she selected (the '690 Patent).

Plaintiffs' infringement case is directed primarily to Amazon's menus for its online Instant Video service, which streams video to home computers and other devices.[4]  Many of the video offerings are either television programs that have already aired or previously-released movies.  Plaintiffs contend that Amazon's Instant Video menus (illustrated below right) are "electronic" and "interactive" "program guides."  Unlike the guides that are described in the patents (see below left), Amazon's pages do not include schedule or channel listings.



| '268 Patent, Fig. 18 | Amazon Instant Video Website |

Hence, a claim construction issue that is important to the infringement analysis is whether the

---

[4] Knowledge of the infringement issues provides a useful context to the claim construction. *Wilson Sporting Goods Co. v. Hillerich & Bradsby Co.*, 442 F.3d 1322, 1331 (Fed. Cir. 2006).

claimed "guides" must include schedule information for television channels.  A second important issue is whether some asserted claims require the use of a television or television receiver.  The reason is because Amazon's videos can be viewed on home computers, which are distinct from televisions.  (*See* D.I. 68 Ex. 8.19 at 17,28; Ex. 8.21 at 34.)

## ARGUMENT

### I.      '268 and '128 Patents

The '268 and '128 Patents share much of the same specification and resulted from the same original patent application.[5]  Their common claim terms should be construed consistently, when possible.  *NTP, Inc. v. Research In Motion, Ltd.*, 418 F.3d 1282, 1293 (Fed. Cir. 2005).

Plaintiffs claim invention dates for the '268 and '128 Patents of September 9, 1993, and June 7, 1995, respectively.  Both patents are directed at providing television scheduling information.  The '268 Patent, entitled "Electronic Television Program Guide With Remote Product Ordering," and the '128 Patent, entitled "Electronic Television Program Guide Schedule System And Method With Data Feed Access," describe an "electronic program schedule system" for "a television receiver."  ('268 at 1:12-15; '128 at 1:11-14.)  During prosecution of the '128 Patent, the applicants confirmed that the patents relate to televisions, stating that prior art references relying on computer displays were inapposite because "it would be counterintuitive to display television programs as part [of the prior art patent's] . . . display because [it lacked the] functionality of allowing a user to change television channels that is inherently associated with displaying television programs . . . ."  (D.I. 68 - Ex. 8.21 at 34.)

---

[5] One difference between the two patents is that the '268 patent claims using a guide to order a product related to a scheduled program, while the '128 patent describes "data feeds" that supplement scheduling information with "up-to-the-minute information, including sports scores, stock market quotations, general news, etc." ('128, Summary of the Invention at 6:43-45.)

### A. "electronic television program guide" [Claims 1, 25, 26, 27, 34-36, 51]

| Amazon and IMDb | Plaintiffs |
|---|---|
| an application that provides program schedule and channel information for a television receiver<br><br>* When used in the '268 Patent claims, also "the electronic television program guide" is "executed on a user-controlled data processor." | an electronic application that provides information to allow users to find television programming |

The parties agree that an "electronic television program guide" is a software application. One of ordinary skill in the art would have understood that this software application provides program schedule information for television channels. Indeed, the "Background of the Invention" states that "*[t]his invention* relates to an electronic program *schedule* system, which provides a user with schedule information for *broadcast or cablecast programs* viewed by the user on a *television receiver*." ('268 at 1:13-16 (emphasis added); *see also* '128 at 1:11-15. The next sentence explains, "*[m]ore particularly*, it relates to an electronic program guide . . . ." ('268 at 1:16-17 (emphasis added); '128 at 1:15-16.) Thus, an "electronic program guide" is a *type* of electronic program schedule system described in the previous sentence—*i.e.*, at a minimum, it must include schedule information for programs viewed on a television receiver (which are necessarily displayed on television channels, D.I. 68 at 8.21 at 34.)

The patents' descriptions of prior art "electronic program guides" ("EPGs") further support this conclusion. The prior art EPGs all included schedule information for television "channels." ('268 at 1:22-33; '128 at 1:23-34.) But they allegedly had shortcomings in handling and presenting schedule information for television channels. ('268 at 1:45-48; 2:16-20; 2:22-24; 2:49-53; 2:66-67; 3:5-7; 3:13-15; 3:27-29; 3:51-59; '128 at 1:47-51; 2:18-22; 2:50-52; 3:1-2; 3:14-16; 3:29-31; 4:17-25.) The patents purported to address these problems by introducing an improved EPG that, like the prior art, still included schedule information for television channels:

> [The] objects of *the invention* are achieved by an electronic program *schedule* system which includes a receiver for receiving broadcast, satellite or cablecast television programs for a plurality of television channels and a tuner for tuning a television receiver to a selected one of the plurality of the television channels.  A data processor receives and stores in a memory *television program schedule information* for a plurality of television programs to appear on the plurality of *television channels*.  A *television receiver* is used to display the television programs *and television program schedule* and other information.

('268 at 5:27-41; '128 at 6:1-15 (emphasis added).)  All examples of EPGs in the patents include schedule information for television channels.

Amazon and IMDb's proposed construction is also supported by the common understanding of those skilled in the art at the time of the patent application.  In the television industry, the phrase "electronic [television] program guide" meant a system that included scheduling information for television channels.  As reflected in dictionaries from 1996 and thereafter,  EPG was widely understood to be "[a] schedule of forthcoming programs, shown on the TV screen for the viewer," with one dictionary also stating that the schedule is shown on the screen "generally by a cable system."  (Ex. B at 206; Ex. C at 106.)

Plaintiffs ask the Court to ignore both this common understanding and the patent's definition of EPG.   Plaintiffs' construction of "electronic television program guide"—an application that provides "information to allow users to find television programming"— is impermissibly broad.  It would, for example, encompass Google's search engine because Googling "American Idol" yields search results that include where and when that show will air.

Finally, Amazon and IMDb's construction of "electronic television program guide" for the '268 reflects that the guide is executed on a user-controlled processor.  This requirement is found in the preamble of Claim 1, from which all the claims depend.  The preamble states that the guide is "implemented using a data processor controlled by the user."   Where the preamble of a method claim describes an apparatus on which a method is performed, the method must be

practiced on that apparatus for there to be infringement.  *Microprocessor Enhancement Corp. v. Texas Instruments Inc.*, 520 F.3d 1367, 1375 (Fed. Cir. 2008) ("[I]nfringement … is clearly limited *to practicing the* claimed method in [the apparatus in the preamble] possessing the requisite structure.") (emphasis in original).  In addition, where (like here) the preamble "provides the only antecedent basis, and thus the context essential to understanding the meaning" of a disputed term, it "limits the scope of the claimed invention."  *Seachange Int'l, Inc. v. C-COR, Inc.*, 413 F.3d 1361, 1376 (Fed. Cir. 2005).

### B.    Terms Related to Scheduling Information

### 1.    "program listings" ['128 and '268]

| Amazon and IMDb | Plaintiffs |
|---|---|
| entries that provide information about television programs, including current and future air times | entries that provide information about particular programs. |

"Program Listings" are entries of schedule and other information about television programs.  The "invention[s]" in the '268 and '128 Patents "provide[] a user with *schedule information* for . . . programs viewed by the user on a *television receiver*."  ('268 at 1:12-15; '128 at 1:11-14.)  Claim 1 of the '268 Patent recites that the program listings are for the electronic "television" program guide.  ('268 at 38:26-27.)  Plaintiffs' construction, which does not require the listing to include schedule information or to be about a television program, runs afoul of Federal Circuit precedent requiring courts to give effect to the patentee's representations about the scope of its "invention." *See* supra note 2.

The remainder of the patent specification is consistent with the patentee's characterization of the "invention" as relating to schedule information for television programs.  For example, Figures 18-20 illustrate different program listing displays; each shows a time and title of a program airing.  (*See also* FIGS. 25, 38B, 43A.)  And the patents explain that program listings are the listings used by the EPG, which by definition includes television scheduling

information.  ('268 at 38:26-27, 3:34-35; '128 at 3:35-37.)  Moreover, the specification describes

the "data" for the "program listings" as including "program schedule times."  ('268 at 31:38-43;

'128 at 34:38-43.)  Finally, dependent Claim 16 adds to Claim 1 a step of "displaying the

program listings as part of a *by time* screen."  ('268 at 39:23-24.)  This addition would make no

sense if "program listings" did not necessarily include schedule information—it is only *because*

the program listings include schedule data that they can be displayed as part of that screen.

### 2.    "program schedule information" ['128 and '268]

| Amazon and IMDb | Plaintiffs |
|---|---|
| information that includes the current and future air times of programs on television channels | information about the scheduling of one or more programs |

"Program schedule information" in electronic program guides had a plain meaning when

the patent applications were filed: when, and on what channel, television programs would air.

For example, the patent  describes the "invention" as using "television program schedule

information for a plurality of television programs to appear on the plurality of television

channels."  ('128 at 6:7-9; '268 at 5:32-34; *see also* '128 at 14:16-21; 15:2-7; 15:19-23; 15:34-41;

15:48-51 ("the user can scan *program schedule information for all channels*"); 16:30-34; 18:14-

17 (and FIG 18); 19:48-53 ("… schedule information for the newly selected *channel …*"); 29:31-

36 ("…displaying schedule information for all available channels."); FIG. 51; 44:41-44 ("…

program schedule information for real channels.").)  In addition, dictionary definitions confirm

that the word "schedule" in this context refers to "events *to occur* at or during a particular time or

period."  (Ex. D; Ex. E at 1240.)

C.      **The Display Functionality Terms ['128 and '268 Patents]**

1.      **"video display generator" ['128 Claims 37-39]**

| Amazon and IMDb | Plaintiffs |
|---|---|
| A component that combines two or more input signals into one output television signal for display, where the information from the input signals is overlayed in the one output television signal. | a component that generates a video display |

Amazon's construction is grounded in the '128 and '268 Patents' explicit definition in the "Background of the Invention":

> A video display generator receives *video control commands* from the data processor and *program schedule information* from the memory and *displays a portion of the program schedule information in overlaying relationship with a television program appearing on a television channel* in at least one mode of operation of the television programming guide. The data processor controls the video display generator with video control commands … to display program schedule information for any chosen one of the plurality of television programs in overlaying relationship with at least one television program then appearing on any chosen one of the plurality of channels on the television receiver.

('128 at 6:15-28; '268 at 5:40-54 (emphasis added).)  The "Detailed Description of the Preferred Embodiment" includes a similar definitional description.  ('128 at 11:39-56 (referencing FIG. 1); FIG 47 at 23 and 25; FIG 2.)  In short, the patent discloses that the video display generator overlays information—whether it is "schedule information,"

information from "data feeds," ('128 (Abstract), 46:59-62), or other

information (*see* '128 FIG 13 and description at 16:44-50)—over the

viewer's current channel.  (*See, e.g.*, '128 FIG. 52 (showing schedule



FIG.52

information and information from the "data feed" (score) overlayed over the viewer's current

channel).)

10

**2.     "displaying" ['268 Claims 1-5, 7, 9, 11, 36] and "displaying …
with the electronic television program guide" ['268 Claims 1,
36]**

| "displaying" [Claims 1-5, 7, 9, 11, 36] | |
|---|---|
| Amazon and IMDb | Plaintiffs |
| *This term should be construed in the context in which it is used in the claims.* | presenting visual information |
| "displaying… with the electronic television program guide" [Claims, 1, 36] | |
| Amazon and IMDb | Plaintiffs |
| using the electronic television program guide to visually overlay on a screen . . . | [not construed] |

Like other terms, "displaying" must be interpreted in the context of the claim, not in

isolation.  *On Demand Machine Corp. v. Ingram Indus.*, 442 F.3d 1331, 1344 (Fed. Cir. 2006)

("Care must be taken lest word-by-word definition, removed from the context of the invention,

leads to an overall result that departs significantly from the patented invention.").  The parties

agree that an "electronic television guide" is a software application.  Therefore, "displaying …

*with* the electronic television program guide" requires that the electronic television program

guide be *used* to perform the displaying.  This construction is consistent with the dictionary

definition of "with," which means:  "(of means or instrument) by the use of; using:" such as "*to

line a coat with silk; to cut with a knife.*" (Ex. F; *see also* Ex. E at 1574.)  A software application

necessarily informs *how* the information will be displayed.  Here, displaying schedule and guide

information *with* an electronic television program guide requires *overlaying* information on a

television screen.

In every instance in which the patent describes an EPG's information "display," the

information is in an overlaying relationship with a television program appearing on a television

channel.   This is true in the summary of *the invention* (*id.*), as well as in the detailed description.

('268 at 5:41-47, 5:47-53, 10:22-38.)  The term should be interpreted in the same way it is

described throughout the specification, *see Wang Labs., Inc. v. America Online, Inc.*, 197 F.3d

1377, 1382 (Fed. Cir. 1999) (construing the term, "frame," narrowly where the "only system that is described and enabled" used a specific type of "frame"), as well as how it is used in the patent's description of "the invention."  *TiVo*, 516 F.3d at 1300 ("[w]hen a patent thus describes the features of the 'present invention' as a whole, this description limits the scope of the invention."); *see also* supra n. 2.

### D.     Product Ordering Terms

### 1.     "standardized product" [Claim 34]

| Amazon and IMDb | Plaintiffs |
|---|---|
| indefinite under 35 U.S.C. § 112 ¶ 2. | a product type associated with various programs |

A person of ordinary skill in the art would not know what a "standardized product" is, as the phrase is used in the Patent, nor could he determine its meaning from the specification.[6]  The term is therefore indefinite under 35 U.S.C. § 112 ¶ 2.  The specification includes the following discussion about "standardiz[ing] a product or service":

> In one embodiment, *the database of program schedule information stored at each user location* may include all the information for each product and service—a description of the product(s) or service(s), price, and any other information required. *The disadvantage of this method, however, is that if a large number of programs include products and services available for ordering, the demands on the system memory are great. Another method is to standardize the products and services* available so as to include in *the database* only a minimal amount of information necessary to identify the type of product or service. For example, if only videocassettes and transcripts are available, the database need only include a flag for each listing indicating whether a videocassette, transcript, or both are available. Further simplification is possible if all transcripts and all videocassettes are priced the same. The screens illustrated in FIGS. 43-46 may then be standardized screens for all products so as to conserve memory space.

('268 at 36:19-38 (emphasis added).)  This passage describes only *how* to "standardize" products

---

[6] "A determination of claim indefiniteness is a legal conclusion that is drawn from the court's performance of its duty as the construer of patent claims." *Personalized Media Commc'ns, LLC v. Int'l Trade Comm'n*, 161 F.3d 696, 705 (Fed. Cir. 1998); *see also Cordis Corp. v. Boston Sci. Corp.*, 561 F.3d 1319, 1331 (Fed. Cir. 2009) ("Indefiniteness under 35 U.S.C. § 112 is an issue of claim construction. . . ."); *Atmel Corp. v. Info. Storage Devices, Inc.*, 198 F.3d 1374, 1379 (Fed. Cir. 1999) (indefiniteness analysis "is inextricably intertwined with claim construction").

and services "in the database of program schedule information stored at each user location." It

does not explain *what* a "standardized" product is.

Plaintiffs offer a definition that would include *any* product associated with programs. But

this definition is inconsistent with specification; the italicized language above demonstrates that

*not* all products associated with programs are "standardized." (*Id.* at 36:25-28.) The patent

never informs the public which ones are not. A claim term that requires the public to divine

what does and does not infringe is by definition indefinite.

### 2. "time and date stamping an order placed by the user with the electronic television program guide" ['268 Claim 51]

| Amazon and IMDb | Plaintiffs |
|---|---|
| recording, with the electronic television program guide executed on the user-controlled data processor, the time and date of the order as reflected on the user's guide application | the order placed by the user with the electronic television program guide is time and date stamped. |

Amazon and IMDb's construction is based on a plain reading of the claims and the

specification. The claim recites that the stamping is performed by the "electronic television

program guide," which both parties agree is a software application. And the preamble of Claim

1 of the '268 Patent, from which Claim 51 depends, makes clear that *the* "electronic television

program guide" is implemented on a "data processor controlled by the user." The patent

specification teaches that time stamping at the user's equipment is important because it permits

less "sophisticated" user equipment, which cannot handle complex processing, to keep track of

orders. ('268 at 37:62-38:12; *see also* at 5:59-61.) Plaintiffs' construction departs from these

teachings and would permit any unspecified apparatus to perform the stamping.

E.    **Terms Unique to the '128 Specification**

1.    **"Multimedia informational system" ['128 Patent]**

| Amazon and IMDb | Plaintiffs |
|---|---|
| *The preamble is limiting.* | *The preamble is not limiting, Moreover, the phrase does not require construction because its meaning is clear.* |
| an electronic television program guide system that includes at least program schedule information, television program signals, program ordering, and access to data feeds | *To the extent the Court believes that a construction would be helpful to the jury, however, the phrase should be construed as:* |
| | a system for providing multimedia information. |

The preamble of Claim 37 describes the system on which the claimed subject matter must operate: a "multimedia informational system." The Federal Circuit has construed similarly structured preambles to limit the scope of the claim. *Computer Docking Station Corp. v. Dell, Inc.*, 519 F.3d 1366, 1375 (Fed. Cir. 2008) (finding "portable computer" and "portable computer microprocessing system" to limit the scope of the asserted claims); *Bio Tech. Gen. Corp. v. Duramed Pharmaceuticals, Inc.*, 325 F.3d 1356, 1362 (Fed. Cir. 2003) (construing "drug delivery system" as it appeared in the preamble.); *IPXL Holdings, L.L.C. v. Amazon.com, Inc.*, 333 F. Supp.2d 513, 529-31, 536-37 (E.D. Va. 2004) (defining "electronic financial transaction" where that term only preceded the word "system" in claim's preamble) *aff'd*, *IPXL Holdings, L.L.C. v. Amazon.com, Inc.*, 430 F.3d 1377 (Fed. Cir. 2005).[7]

"Multimedia informational system" did not have a plain meaning as of the Patent's

---

[7] *See also Application of Bulloch*, 604 F.2d 1362, 1365 (C.C.P.A. 1979) (finding introductory claim language "'stable color developer concentrate' is more than a mere statement of purpose; and that language is essential to particularly point out the invention defined by the claims."); *Corning Glass Works v. Sumitomo Elec. U.S.A., Inc.*, 868 F.2d 1251, 1257 (Fed. Cir. 1989) (reading preamble "An optical waveguide comprising" to limit the claim in addition to the elements listed in the claim body); *Loctite Corp. v. Ultraseal Ltd.*, 781 F.2d 861, 866 (Fed. Cir. 1985), overruled on other grounds, (finding the "term 'anaerobic' breathes life and meaning into the claims" for "An anaerobic curing sealant composition …"); *Medtronic, Inc. v. Boston Scientific Corp.*, 777 F. Supp.2d 750, 764 (D. Del. 2011) (finding that "the preamble of claim 25 contains a structural limitation that is not present in the body of the claim and concludes that the preamble … constitutes a limitation").

alleged priority date of June 7, 1995.  It is a term, therefore, that must be defined by its usage in

the patent specification:

> The addition of data feeds to the [electronic program guide] of the present
> invention greatly increases the value of the television as an information source
> because it permits users to obtain on-demand access to selected categories of
> updated information. *The data feed information may also be combined with
> program schedule information, television program signals, and remote product
> ordering capability to provide a multimedia informational* and merchandising
> *system*.

('268 at 41:16-24 (emphasis added).)  A multimedia informational system therefore must, at a

minimum, have data feeds combined with an EPG, program schedule information, and television

program signals.

### 2.      "data feed" ['128 Patent]

| Amazon and IMDb | Plaintiffs |
| --- | --- |
| an updateable transmission of data sent by a television programming provider over television signals (not over the Internet) | an updatable transmission of data from one place to the other |

The prosecution history of the '128 Patent is key to understanding the meaning of "data

feed."  During the application process, the applicants sought claims directed in part to receiving

"Internet-delivered" data.  The Patent Office rejected those claims because the "Internet-

delivered data" limitation "is not part of the applicants' original disclosure":

> The applicants . . . don't prove that the "Internet delivered data" is actually
> delivered to the users via Internet as now claimed by the applicants.  In fact, in
> page 63, lines 15-24 of the specification, applicants clearly state that the data feed
> is a dedicated channel at the cable head-ends and DBS providers, which is *not
> considered an Internet service*, for providing additional information to the user
> ends.  The information is gathered at the head-ends or DBS providers from
> different sources such as SportsTicker, The Sports Network, Stats Inc., or Internet
> before being provided to the user.  In page 63, lines 25-32, applicants further
> show that the gathered information is interpreted and formatted into data streams.
> In page 64, lines 5-17, applicants state that the data streams might be transmitted
> via the vertical blanking interval (VBI) of a television channel or the in-band or
> out-band of a digital channel.  However, *nowhere in the specification mentions or
> hints that the information is delivered to the users via Internet*."

(D.I. 68 Ex. 8.20 at 7-8 (emphasis added).)  Each of the above-referenced methods involves

transmitting data streams to end-users over a television distribution channel controlled by the television provider.

In response to the Patent Office's rejection, the applicants amended *all* claims to (1) remove any claim to "Internet delivered data," and (2) add limitations reciting that Internet data is received by a remote facility and then it populates a "data feed."  Although the remote facility can *receive* Internet data, the applicants unequivocally disclaimed *delivery* of the data over the Internet as being outside the scope of their invention.  Therefore, the claimed "data feed" cannot be transmitted over the Internet.

### F.    "a receiver" [Claim 37]

| Amazon and IMDb | Plaintiffs |
|---|---|
| a device which can receive television signals, including data transmitted over those signals. | The portion of the user equipment responsible for accepting data sent from a data provider |

The claimed "receiver" limitation must be interpreted in accordance with the '128 specification, which describes the receiver as being capable of receiving television signals.  The "receivers" disclosed in the patent, including in the "Background of the Invention," receive television signals. ('128 at 1:11-14, 6:1-4.)  Similarly, the Patent describes FIG. 1 as follows:

> An input signal **11** is connected *to a receiver* **12**, which *receives a transmitted data stream from a data provider.*  ... The input signal **11** can originate, for example, as part of a standard broadcast, cablecast or satellite transmission, or other form of data transmission, such as video dial tone.

('128 at FIG. 1, 9:58-65.)



FIG. 1

16

In FIG. 1, the *same* signal is routed to both the "75.0 MHz" receiver **12**, as well as to the Tuner **28**, with the signal fed to the tuner eventually routed to the RGB Video Gen. **24**, processed through the Video Overlay Device **25**, and output to the "TV Receiver" **27** either via modulator **26** or directly over Video Display Generator (23)'s output **25a**.

Both the "75.0 MHz receiver" (which receives data) and the "TV Receiver" (which displays programs and information) receive a *television signal* as an input.  Although there are "numerous ways in which data feeds may be provided" to users, each of those ways is over a television provider's signal.  (*See*, *e.g.*, '128 at 46:5-24.)  The receiver must, at a minimum, receive television signals.

## II.     '690 Patent

The '690 Patent is directed to the age-old sales technique of offering a customer interested in a particular product a "package" deal that includes other products as well.  Claim 1 provides that an "interactive program guide" "implemented" on "user equipment" is configured to perform this function when a user tries to buy a pay-per-view program.

### A.     "interactive program guide" [Claims 1, 9, 10, 14]

| Amazon | Plaintiffs |
|---|---|
| an application that produces interactive display screens with program schedules and channel information (among other things) for a television receiver<br><br>* The 'interactive program guide' in Claims 1, 9, 10, and 14 is executed on user equipment. | an interactive electronic application that provides information to allow users to find television programming |

An "interactive program guide" is an electronic program guide (defined above) that is interactive.  (Ex. G ¶ 9 (Gemstar expert declaration from a prior litigation).)

Once again, Plaintiffs' proposed construction ignores the core function of all "interactive program guide[s]" of the early and mid-1990s: to list and find television program times.  *See* I.A (discussing "electronic television program guide").  The '690 Patent does not purport to change

the meaning of an "interactive program guide": the "Background of the Invention" describes an "interactive program guide" as including data that allows the display of broadcast times for televisions, ('690 at 1:19-35), and the "Summary of the Invention" provides that the invention's "guide" uses schedule information," (*Id.* at 2:7-2:27).  Indeed, the patent uses this schedule information to perform various functions: *e.g.*, to notify the viewer "just before the scheduled broadcast time of each program in the package", and to monitor whether the user has watched a purchased package.  ('690 at 2:7-2:33.)

The correct claim construction should also specify that the IPG is executed on user equipment, as required by the preamble: the claimed invention is a system "*comprising* user equipment on which an interactive program guide is implemented . . . ." (emphasis added.)  Because the preamble provides the "only antecedent basis and thus the context essential to understand" the meaning of 'the interactive program guide' (that is configured to perform functions in Claims 1, 9, 10, and 14), it "limits the scope of the claimed invention."  *Seachange Int'l,* 413 F.3d at 1376.  The preamble is also limiting because it recites the essential structure of the claimed apparatus.  *Bicon, Inc. v. Straumann Co.*, 441 F.3d 945, 952-53 (Fed. Cir. 2006) (holding that preamble is limiting because "it recites essential structure that is important to the invention or necessary to give meaning to the claim").

**B.**    **"package" [Claims 1, 9, 10, 19, 27, and 28]**

| Amazon | Plaintiffs |
|---|---|
| a collection of scheduled programs bundled for sale as a single unit | a set of more than one program |

The parties disagree about whether a "package" consists of multiple "*scheduled programs*" (Amazon's construction) or instead merely consists of "more than one program" (Plaintiffs' construction).  Because a "package" of programs consists of programs having assigned schedule times, the word "schedule" should be included in the construction. One

"package of programs" contemplated by the invention is a "pay-per-day movie package in which the *same movie* is *repeatedly* broadcast over a 24 hour period.  The user may watch the movie during any of its broadcasts during the 24 hour period." ('690 at 1:39, 8:11-17 (emphasis added).)  The patent characterizes these identical movies as separate "programs" because they appear at different scheduled times. Other portions of the specification support the inclusion of the word "schedule."  For example, programs in a package are *scheduled* for future periods. ('690 at Abstract, 1:36-48 (Background of the Invention), 2:7-16, 2:27-34, FIGS. 6-9; *see also* '690 at 14-35 (describing "pay programs" in context of *scheduled* program listings.). And the requirement that the package include a schedule is supported by dependent Claims 12 and 13 and the Summary of the Invention, which provide that "program reminder[s]" can be set for programs in a package.  ('690 at 2:7-2:27 and Claims 12-13.)  This functionality is possible only if the packages include program scheduling information.

Plaintiffs also dispute that the items in a package must be bundled for sale as a single unit.  This is, however, the common usage of "package."  (Ex. E at 998; Ex. H.)  And that is also how the patent specification uses the term.  ('690 at Abstract; 1:49-55.)

### C.   "determine whether the selected program is part of a package" [Claim 1]

| Amazon | Plaintiffs |
|---|---|
| the interactive program guide on the user equipment determines whether the selected program is part of a package | *The phrase does not require construction because its meaning is clear.*<br><br>*To the extent the Court believes that a construction would be helpful to the jury, however, the phrase should be construed as:*<br><br>the interactive program guide determines whether the selected program is part of a package. |

Claim 1 of the '690 Patent claims a "system" "*comprising* user equipment *on which an interactive guide is* implemented, wherein the interactive program guide is configured to"

perform three tasks.  The second of those tasks is to "determine whether the selected program is part of a package."  Amazon requests the Court to make clear that it is the IPG *on the user's equipment* that determines whether a program is part of a package.

> **D.**     **"The method defined in Claim 19, further comprising providing the user with an opportunity to impulse purchase the package through the interactive program guide." [Claim 27]**

| Amazon | Plaintiffs |
|---|---|
| The claim is indefinite under 35 U.S.C. § 112 ¶ 2; there is no antecedent basis for the interactive program guide limitation. | |

Claim 27 depends from Claim 19.  In contrast to Claim 1, Claim 19 does not describe *any* "interactive program guide."  Thus there is no antecedent basis for the phrase "the interactive program guide" in Claim 27.  Nor can an antecedent basis be implied because the method of Claim 19 is untethered from *any* particular apparatus for implementation.  *Cf. Energizer Holdings, Inc. v. Int'l Trade Comm'n*, 435 F.3d 1366, 1370-71 (Fed. Cir. 2006).

## III.     '643 Patent

The '643 Patent, filed much later than the other four patents, is directed to "video-on-demand or 'VOD' programs."  ('643 at 1:29-30).  VOD was more convenient for the user than "pay-per-view" or "request" channels because VOD programs could be viewed at any time, while pay-per-view and request channels offered a limited selection at "a few pre-determined broadcast times."  ('643 at 1:22-28.)  The '643 claims recite that at least one VOD program listing is displayed with an indicator alerting the user that a preview clip for that program is available.  After the user watches the preview clip, the system presents a screen that offers the user an opportunity to buy the program.

> **A.**     **"program guide display" [Claims 1, 5, 7, 11, 13, and 17]**

| Amazon | Plaintiffs |
|---|---|
| a display of an application, on a portion of a screen used by a current channel, of program information for one and only one category of video-on-demand programs | a display of an application that provides information to allow users to find programming |

In the "Summary of the Invention," the patentee expressly defines the "program guide display" as one that shows VOD program listings for only a single category:

> The program guide display *of the present invention* contains information for one or more video-on-demand (VOD) programs in a given category.  Information about video-on-demand programs in other categories is *not shown*.

('643 at 2:25-33 (emphasis added).)  The "program guide display" of "the present invention" must be construed consistently with this specification limitation, which Plaintiffs' construction ignores.  *See* supra n. 2.

The patent also makes clear that the "program guide display" must appear on a portion of the screen used by a current channel.  The "Summary of the Invention," provides that "the program guide display" either: (1) is displayed along with the program on "the current channel" by shrinking the display size of the program; or (2) is "superimposed on a portion [of the TV screen]" so a viewer can "continue to watch [the current show] while the program guide is displayed." ('643 at 2:35-44.)  This is illustrated in Figures. 6A, 6B, 7, and 8 of the Patent.

**B.**    **"video-on-demand program listing [in a program guide display]" [Claims 1, 7, and 13]**

| Amazon | Plaintiffs |
|---|---|
| A selectable entry of information for a video-on-demand program; information presented on a separate display screen after the entry is selected, about the video-on-demand program, is not a "program listing" | ***Video-on-demand program listing***: An entry that provides information about a particular video-on-demand program. |

The prosecution history makes clear that "program listings" are not broad enough to encompass *all* "information" about a VOD program.  The Patent Office originally rejected the applicant's claims based on a prior art patent to Florin (D.I. 68, Ex. 8.24), illustrated below:





Florin Figure 12 is a "list" screen with program listings, while Florin Figure 38 is a pay-per-view preview interface that displays after a user has selected a pay-per-view program in a "list" screen.  (D.I. 68, Ex. 8.24 at 15:12-24 and 22:52-69.)  Florin Figure 38 includes information related to the program, including the availability of a preview clip and the option to purchase.

The applicants distinguished their claims from Florin on the grounds that Figure 38 in Florin did not include a "program listing":

> However, applicant respectfully submits that as shown in FIG. 38 and as described in the accompanying text, the preview icon appears only after the pay-per-view program listing has been selected.  This point is plainly shown since the icon is displayed in a separate display screen from which the pay-per-view program listing was displayed.  Applicant's approaches are patentable over the LaJoie-Florin combination because *applicant has amended* [the claims] to recite that the indicator that a video clip preview is available for the VOD program is "displayed <u>with</u> the video-on-demand program listing."  Therefore, the LaJoie-Florin combination is different from applicant's approaches.  The LaJoie-Florin combination shows a preview icon that is <u>not displayed with</u> a program listing and is only displayed in a separate display screen from the program listing after a program listing is selected.

(D.I. 68, Ex. 8.23 at 57 (underlining in original, italics added).)  The applicants amended the claims to require that the indicator appear *with* the VOD program listing, and argued that, despite Florin FIG 38 showing a preview indicator 382, Florin did not include a preview indicator with a VOD 'program listing.'  (*Id.*)  Because Florin Figure 38 provides "information" about a VOD program, it would be a "program listing" under Plaintiffs' proposed construction.  Plaintiffs' construction is therefore inconsistent with the file history and must be rejected.  The applicant's

representation to the Patent Office that a VOD listing must be *selectable,* and therefore cannot be

the information screen that appears *after* the VOD is selected, is consistent with the specification.

('643 at 2:49-54, 4:3-10, 4:28-36.)

### C.  "viewer television equipment" [Claims 1, 7, 13]

| Amazon | Plaintiffs |
|---|---|
| viewer equipment for viewing television programs that includes a television and either a set-top box or circuitry similar to a set-top box | user-controlled equipment for displaying remotely provided audio-visual programming |

Plaintiffs' construction is ambiguous and improperly excises the word "television."  The

'643 Patent clarified what is meant by "viewer television equipment":

> Viewer television equipment 30 typically contains set-top boxes 34.  Viewer
> television equipment 30 may also be any suitable equipment into which circuitry
> similar to set-top box circuitry has been integrated, such as an advanced television
> receiver (such as HDTV), a personal computer television (PC/TV), or any suitable
> television equipment.

('643 at 6:37-42.)  This quotation encompasses both the preferred embodiment *and* all alternative

embodiments of the invention.  The proper construction, therefore, must reflect that the

equipment includes a set-top box or equipment having "circuitry similar to set-top box circuitry."

### D.  The Three "Means-Plus-Function" Limitations Recited in Claim 1 Do Not Have Corresponding Structure and Are Invalid [Terms 17 - 19]

The parties agree that terms 17 - 19 are in "means-plus-function" format and therefore

subject to 35 U.S.C. § 112 ¶ 6.  (D.I. 83 Ex. 1 at 6-8.)  A "means-plus-function" limitation can be

construed only to cover the structure in the patent specification that "corresponds" to the claimed

function, and that structure's legal "equivalents."  35 U.S.C. § 112, ¶6.

Means-plus-function limitations are interpreted in two steps.  First, the court identifies

and construes the claimed function. *Lockheed Martin v. Space Systems/Loral Inc.*, 324 F.3d

1308, 1319 (Fed. Cir. 2003).  Second, the court identifies the "corresponding" structures

disclosed in the specification and which "the specification or prosecution history clearly links or

associates that structure to the function . . . ."  *Mettler-Toledo, Inc. v. B-Tek Scales, LLC*, Nos.

2011-1173, -1200, 2012 WL 386355, at *3 (Fed. Cir. Feb. 8, 2012); *Medtronic, Inc. v. Advanced

Cardiovascular Sys., Inc.*, 248 F.3d 1303, 1311-12 (Fed. Cir. 2001).

Even if the patent discloses a structure that is *capable* of performing a claimed function,

it is not a "corresponding structure" unless the specification clearly links it to that function.

*Medtronic*, 248 F.3d at 1312.  And if there is no "corresponding structure," the claim is invalid

under 35 U.S.C. § 112, ¶ 2.  *Aristocrat Techs. Australia Pty Ltd. v. Int'l Game Tech.*, 521 F.3d

1328, 1331 (Fed. Cir. 2008); *Mettler-Toledo*, 2012 WL 386355, at *3.  That is because "section

112, paragraph 6 incorporates a deliberate quid pro quo: the patentee is allowed to claim a

limitation in broad functional language, 'provided that the specification indicates what structure

constitutes the means for performing the claimed function.'  The indicated structure must limit

the claim so as not to allow pure functional claiming."  *Dealertrack, Inc. v. Huber*, Nos. 2009-

1566, -1588, 2012 WL 164439, at *12 (Fed. Cir. Jan. 20, 2012) (citation omitted).

### 1.    Identification and Interpretation of the Claimed Functions

#### a.    Identifying the Functions

| Term | Amazon's Function | Plaintiffs' Function |
|---|---|---|
| means for indicating that a video clip preview is available for a video-on-demand program that is associated with a video-on-demand program listing wherein the indication is provided with the video-on-demand program listing | indicating that a video clip preview is available for a video-on-demand program that is associated with a video-on-demand program listing wherein the indication is provided with the video-on-demand program listing | indicating that a video clip preview is available for a video-on demand program that is associated with a video-on-demand program listing. |
| means for displaying the video clip preview on the viewer television equipment | displaying the video clip preview on the viewer television equipment | displaying the video clip preview on the viewer television equipment |
| means for displaying an ordering display screen after the video clip preview of the video-on-demand program is displayed, wherein the ordering display screen provides | displaying an ordering display screen after the video clip preview of the video-on-demand program is displayed, wherein the ordering display | displaying an ordering display screen. |

| the viewer with the opportunity to select an ordering option to order the video-on-demand program | screen provides the viewer with the opportunity to select an ordering option to order the video-on-demand program. | |

Litigants cannot "adopt[] a function different from that explicitly recited in the claim." *Micro Chem. v. Great Plains Chem. Co.*, 194 F.3d 1250, 1258 (Fed. Cir. 1999). The parties dispute the precise "functions" applicable to two of the limitations. (*See* D.I. 83 Ex. 1 at 6, 8.) First, for the "means for indicating . . ." limitation, Plaintiffs' proposal improperly truncates the function by omitting "wherein the indication is provided with the video-on-demand program listing." But this language clarifies how the "indicating" occurs and is a necessary part of the claimed function.

Second, Plaintiffs' construction for the "means for displaying an ordering display screen after the video clip preview" limitation ignores that it performs three functions: (1) "displaying an ordering display screen," (2) doing so "*after* the video clip preview" is displayed, and (3) ensuring that the "ordering display screen" "provides the viewer with the opportunity to select an ordering option to order the video-on-demand program . . . ." Plaintiffs' proposed construction acknowledges only (1) while ignoring (2) and (3).

### b.     Interpreting the Recited Functions

After the Court identifies the functions, it must construe them. The parties dispute the interpretation of two of the three identified functions.

The first disputed limitation is: "indicating that a video clip preview is available for a video-on-demand program that is associated with a video-on-demand program listing *wherein the indication is provided with* the video-on-demand program listing." The claim requires that the preview indicator and its *corresponding* VOD listing must appear together. The claim is not met, for example, if a preview indicator and its *corresponding* VOD listing appear sequentially,

or if a preview indicator for one VOD appears with a different VOD listing.  The reference to

"*the* [VOD] listing" in the claim makes clear that it is *the*

*same* listing referenced in the preceding line of the claim—

*i.e.*, the listing that is "associated" with a VOD program.

('643 at 11:66 – 12:1.)  Amazon's construction is also

consistent with the patent's statement that icon **79** in Figure

6A "indicat[es] that a video clip is available for *the listed*

video-on-demand program."  ('643 at 8:37-38.) (emphasis

added).



FIG. 6A

  The other disputed functional limitation is: "displaying an ordering display screen *after*

the video clip preview of the video-on-demand program is displayed, wherein the ordering

display screen provides the viewer with the opportunity to select an ordering option to order the

video-on-demand program." (emphasis added.)  Plaintiffs' proposed construction ignores that the

display screen must be presented "after" the video clip preview is displayed. (*See* '643 at 9:59-62

("After the video clip preview has been provided, the viewer may be presented with a display

screen inquiring whether the viewer wants to order that program (not shown).").)

  Moreover, the patent uses the phrase "display screen" to refer to the entire viewable area

of a display. ('643 at 3:1-13, 3:49-64, 8:5-6, Fig. 1A items 1 and 3, Fig. 6A item 72.)  The

claim's recitation of "displaying an ordering display screen after" the video clip means that a

*new* screen—not a screen identical to the one showing the preview—must be presented.  The

claim and the specification make clear the "main display screen" (*see* screen 72 in Fig. 6A) and

the "ordering display screen" are different screens.  ('643 at 8:5-15, 9:59-62, 11:60-62, 12:8-12.)

  Amazon's proposal should be adopted: the functional language means "following the

display of the video clip preview, an option to order the video-on-demand program is presented on a new display screen."

### 2. The '643 Patent Does Not Disclose "Corresponding Structure" for These Three Limitations

If the specification does not clearly link a claimed function to a disclosed structure, the claim is invalid under 35 U.S.C. § 112, ¶ 2. *Aristocrat*, 521 F.3d at 1331. The '643 specification does not clearly link structure for performing any of the three means-plus-function limitations. Plaintiffs claim that the "icon" is the corresponding structure for the "means for indicating . . ." limitation. But an "icon" is an image, not a "structure." More fundamentally, each limitation requires, at a minimum, a general purpose "processor." But the Federal Circuit mandates "that the structure disclosed in the specification be more than simply a general purpose computer or microprocessor." *Aristocrat*, 521 F.3d at 1333.

In an effort to save the claims, Plaintiffs contend that the structure allegedly corresponding to the "means for displaying" limitations is "a processor that executes any of the software." But this alleged structure is still insufficient. In *Aristocrat*, the means-plus-function limitation provided, *inter alia*, a "control means arranged to control images displayed on the display means . . . ." *Id.* at 1331. As in this case, the patentee argued that the structure disclosed in the specification was "'any standard microprocessor base [sic] gaming machine [with] appropriate programming' . . . ." *Id.* at 1332-33. The Federal Circuit rejected this argument, holding that "[t]he reference to 'appropriate programming' imposes no limitation whatever . . . ." *Id.* at 1334. Because the patent did not disclose an algorithm showing how to perform the function, the claim was indefinite. *Id.* at 1334-35, 1338.

Failure to disclose a functional algorithm is fatal to means-plus-function claims. *Id.*; *HTC Corp. v. IPCom GmbH & Co.*, No. 2011-1004, 2012 WL 254804, at *9 (Fed. Cir. Jan. 30,

2012); *Dealertrack*, 2012 WL 164439, at \*\*12-14. Although the "algorithm" need not be source code or a mathematical formula, it must do more than simply "parrot the recited function; it ha[s] to describe a means for achieving a particular outcome, not merely the outcome itself." *HTC*, 2012 WL 254804, at \*9 (a processor in a mobile device was insufficient structure); *Aristocrat*, 521 F.3d at 1334-35 (algorithm must show "how the function is performed," not merely the results of the function).

The "means for displaying an ordering screen" limitation includes a function with three components: (1) displaying the ordering screen; (2) displaying it after the video clip preview is displayed; and (3) ensuring that the ordering screen provides the viewer with the opportunity to select an ordering option to order the VOD program. Plaintiffs do not identify any algorithm to perform these functions. (D.I. 83 Ex. 1 at 6-9.) Instead, they merely cite portions of the specification describing the display ('643 at 3:40-41); a database for storing video-on-demand listings ('643 at 4:52-57); the video server used to supply video ('643 at 5:10-15); and the viewer's television equipment ('643 at 7:6-40). But these references simply reinforce that a viewer can order a VOD program; they do not describe the algorithm for performing those functions. ('643 at 10:8-34, 10:59 – 11:52.) The one portion of the specification that actually does describe the display of the ordering screen *after* the preview does not even hint at an algorithm. ('643 Patent, 9:59-62.)

Finally, even if the specification had disclosed an algorithm for the processor, the "corresponding" structure would still have to include the other equipment identified by Plaintiffs, including a set-top box or equipment having similar circuitry, and a television. (*See* discussion

28

at III.C *supra*, *see also* '643 at 1:44-57, 7:7-16, 7:30-33, 8:5-6, Ex. 2.)[8]  Those are the only

structures that the patent discloses as being capable of displaying previews.

## IV.     '078 Patent

The '078 Patent describes using a personal computer to assist in selecting television

programs to be recorded with a VCR.  ('078 at 1:17-22.)  The computer downloads television

schedules, and the user's computer sends infrared remote-control commands to her VCR to

record programs using the program information.

### A.      "viewing location" [Claims 1-7]

| IMDb | Plaintiffs |
|------|------------|
| "residence or other building where a television signal is received from a programming source" | "residence or other building at which a television signal can be received" |

Plaintiffs and IMDb dispute whether a "viewing location" is a residence or other building

where a television signal *can* be received (Plaintiffs' construction) or whether it must be a

residence or other building where the television signal actually *is* received from a programming

source (IMDb's construction).  Plaintiffs' construction ignores the explicit claim language and

improperly seeks to substitute a "*potential* viewing location" for a "viewing location."

The specification does not use the term "viewing location."  It is, however, used in claims

1 and 6.  Claim 1 describes: "a television distribution arrangement wherein . . . dispersed

*television viewing locations receive* television programming *from a source of such programming*

. . . ."  This usage makes clear that a "viewing location" receives the television signals, and that

the television signals come from a programming source.

Claim 1 provides that the invention is used to "receiv[e] information specific to the type

of programming *available* to a particular one of the viewing locations."  The alleged invention of

---

[8]  *See Mettler-Toledo*, 2012 WL 386355, at **2-3 (Fed. Cir. Feb. 8, 2012) (holding that the corresponding structure was the only type of "A/D converter" the specification clearly linked to the claimed function, not a generic A/D converter disclosed in Abstract and known in the art.)

the '078 Patent is useless if used at a location that does not actually receive television signals. Indeed, the patent repeatedly states that the purpose of the invention is to use schedule information to program a VCR by using a computer at the same location as the VCR.  ('078 at 1:54-64, 2:2-13; *see also* at 2:58:62 (describing embodiment where the PC is "remote" from the VCR, but within the same location transmitting radio signals to the VCR rather than infrared).)

### B. "modem" [Claims 1, 6, 8]

| IMDb | Plaintiffs |
|---|---|
| "hardware that translates audio signals transmitted over a telephone line into digital information for a computer and vice versa" | "a device that converts (modulates and demodulates) a data signal for receipt and transmission over a communication network such as a public switched telephone network, a wireless or cellular network, or a cable network" |

Because the '078 Patent claims priority to March 9, 1992, the correct meaning of "modem" is the one that then existed.  *See, e.g.*, *Mass. Inst. of Tech. v. Abacus Software,* 462 F.3d 1344, 1353 (Fed. Cir. 2006) (limiting the definition of "scanner" to what it meant in 1982); *see also Phillips,* 415 F.3d at 1312-13.  Multiple dictionaries published shortly after 1992 confirm that a modem is a device used to convert signals for transmission over *telephone* networks.  (Exs. B at 380; C at 184-85; I at 259; J at 731; K at 316-18.)

All references to a "modem" in the Patent are consistent with the plain meaning at the time of the invention—that it must use telephone lines.  ('078 at 3:46-58, FIG. 2 at 44).

### CONCLUSION

Amazon and IMDb therefore respectfully request that the Court adopt their proposed constructions.

Respectfully submitted,

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

/s/ *Michael J. Flynn*

Karen Jacobs Louden (#2881)
Michael Flynn (#5333)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
klouden@mnat.com
mflynn@mnat.com

*Attorneys for Defendants Amazon.com, Inc.*
*and IMDb.com, Inc.*

OF COUNSEL:

Scott E. Gant
D. Michael Underhill
Neal Hannan
BOIES, SCHILLER & FLEXNER LLP
5301 Wisconsin Avenue, NW
Washington, DC 20015
(202) 237-2727

Eric J. Maurer
MAURER PLLC
5335 Wisconsin Avenue, NW
Suite 440 PMB #: 4154
Washington, DC 20015
(202) 417-3804

March 19, 2012

31

## CERTIFICATE OF SERVICE

I hereby certify that on March 19, 2012, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send electronic notification of such filing to all registered participants.

Additionally, I hereby certify that true and correct copies of the foregoing were caused to be served on March 19, 2012, upon the following individuals in the manner indicated:

Frederick L. Cottrell, III                   *BY ELECTRONIC MAIL*
Anne Shea Gaza
Jason J. Rawnsley
Richards, Layton & Finger, PA
One Rodney Square
920 N. King Street
Wilmington, DE 19801

Daralyn J. Durie                             *BY ELECTRONIC MAIL*
Ragesh K. Tangri
Clement S. Roberts
Eugene Novikov
Jesse Geraci
Durie Tangri LLP
217 Leidesdorff Street
San Francisco, CA 94111-3007

*/s/ Michael J. Flynn*
Michael J. Flynn (#5333)