## IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| ROVI CORPORATION, ROVI GUIDES, INC. (f/k/a GEMSTAR-TV GUIDE INTERNATIONAL INC.), UNITED VIDEO PROPERTIES, INC., TV GUIDE ONLINE, LLC, and TV GUIDE ONLINE, INC. | |
| Plaintiffs, | C. A. No. 11-003-RGA |
| v. | **JURY TRIAL DEMANDED** |
| AMAZON.COM, INC. and IMDB.COM, INC., | |
| Defendants. | |

### PLAINTIFFS' REPLY CLAIM CONSTRUCTION BRIEF

Of Counsel:

Daralyn J. Durie
Ragesh K. Tangri
Clement S. Roberts
Jesse Geraci
Eugene Novikov
Durie Tangri LLP
217 Leidesdorff Street
San Francisco, CA  94111-3007
(415) 362-6666
ddurie@durietangri.com
rtangri@durietangri.com
croberts@durietangri.com
jgeraci@durietangri.com
enovikov@durietangri.com

Dated:  April 9, 2012

Frederick L. Cottrell, III (#2555)
Anne Shea Gaza (#4093)
Jason J. Rawnsley (#5379)
Richards, Layton & Finger, PA
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
(302) 651-7700
cottrell@rlf.com
gaza@rlf.com
rawnsley@rlf.com

*Attorneys for Plaintiffs Rovi Corp., Rovi Guides, Inc. (f/k/a Gemstar-TV Guide Int'l Inc.), United Video Props., Inc., TV Guide Online, LLC, and TV Guide Online, Inc.*

# <u>TABLE OF CONTENTS</u>

Page

TABLE OF AUTHORITIES ................................................................................................... iii

I.      LEGAL PRINCIPLES ................................................................................................ 1

II.     ARGUMENT.............................................................................................................. 1

A.    "electronic television program guide" ('268 and '128 patents)...................... 1

B.    "program listings" ('268 and '128 patents)..................................................... 2

C.    "program schedule information" ('268 and '128 patents) ............................... 3

D.    "video display generator" ('128 patent)........................................................... 4

E.    "displaying . . . with the electronic television program guide" ('268 patent)................. 5

F.    "standardized product".................................................................................... 6

G.    "time and date stamping an order placed by the user with the electronic
      television program guide" ('268 patent)........................................................... 6

H.    "multimedia informational system" ('128 patent) ........................................... 7

I.     "data feed" ('128 patent)................................................................................. 8

J.     "a receiver" ('128 patent)................................................................................ 10

K.    "interactive program guide" ('690 patent) ...................................................... 11

L.    "package" and "determine whether the selected program is part
      of a package" ('690 patent)............................................................................ 12

M.    "the method of Claim 19 further comprising providing the user
      with an opportunity to impulse purchase the package through the
      interactive program guide." ('690 patent)........................................................ 13

N.    "program guide display" ('643 patent) ............................................................ 13

O.    "video on demand program listing" ('643 patent) ........................................... 15

P.    "viewer television equipment" ('643 patent) ................................................................ 16

Q.    Means-Plus-Function Terms ('643 patent) .................................................................... 16

R.    "viewing location" ('078 patent) .................................................................................. 18

S.    "modem" ('078 patent) ................................................................................................. 20

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Abbott Labs. v. Lupin Ltd.*,
  753 F. Supp. 2d 382 (D. Del. 2010) ....................................................................... 9

*Absolute Software, Inc. v. Stealth Signal, Inc.*,
  659 F.3d 1121 (Fed. Cir. 2011) ..................................................................... 1, 14

*Applied Med. Res. Corp. v. U.S. Surgical Corp.*,
  448 F.3d 1324 (Fed. Cir. 2006) ............................................................................. 5

*Arlington Indus., Inc. v. Bridgeport Fittings, Inc.*,
  632 F.3d 1246 (Fed. Cir. 2011) ................................................................. 8, 12, 16

*Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc.*,
  289 F.3d 801 (Fed. Cir. 2002) ........................................................................... 7, 8

*Crown Packaging Tech., Inc. v. Ball Metal Beverage Container Corp.*,
  635 F.3d 1373 (Fed. Cir. 2011) ............................................................................. 9

*Elekta Instrument S.A. v. O.U.R. Scientific Int'l, Inc.*,
  214 F.3d 1302 (Fed. Cir. 2000) ............................................................................. 4

*Exxon Research & Eng'g Co. v. U.S.*,
  265 F.3d 1371 (Fed. Cir. 2001) ............................................................................. 6

*Flash Seats, LLC v. Paciolan, Inc.*,
  No. 07-575 (JJF), 2010 WL 184080 (D. Del. Jan. 19, 2010) ................................. 13

*In re Katz Interactive Call Processing Patent Litig.*,
  639 F.3d 1303 (Fed. Cir. 2011) ........................................................................... 18

*LG Elecs., Inc. v. Bizcom Elecs., Inc.*,
  453 F.3d 1364 (Fed. Cir. 2006)
  *rev'd on other grouds sub nom., Quanta Computer, Inc. v. LG Elecs., Inc.*,
  553 U.S. 617 (2008) ............................................................................................. 20

*Liebel-Flarsheim Co. v. Medrad, Inc.*,
  358 F.3d 898 (Fed. Cir. 2004) ............................................................................... 3

*Phillips v. AWH Corp.*,
  415 F.3d 1303 (Fed. Cir. 2005) ............................................................................. 5

*Rambus, Inc. v. Infineon Techs. AG,*
   318 F.3d 1081 (Fed. Cir. 2003) ........................................................................... 1, 2

*Revolution Eyewear, Inc. v. Aspex Eyewear, Inc.,*
   563 F.3d 1358 (Fed. Cir. 2009) .............................................................................. 9

*Stragent, LLC v. Amazon.com, Inc.,*
   No. 6:10cv225 (LED) (JDL), 2011 WL 2199498 (E.D. Tex. June 7, 2011) ...................... 10-11

*Teleflex, Inc. v. Ficosa N. Am. Corp.,*
   299 F.3d 1313 (Fed. Cir. 2002) .............................................................................. 4

*Typhoon Touch Techs., Inc. v. Dell, Inc.,*
   659 F.3d 1376 (Fed. Cir. 2011) ............................................................................. 18

*Vitronics Corp. v. Conceptronic, Inc.,*
   90 F.3d 1576 (Fed. Cir. 1996) ............................................................................... 5

## I.    LEGAL PRINCIPLES

Amazon's primary arguments are predicated on the proposition that statements about "the invention" or "the present invention" restrict the scope of otherwise broadly drafted claims. However, where the intrinsic evidence does not *uniformly* suggest an intent to limit the claim scope, it is improper to read references to "the invention" as so limiting. *Absolute Software, Inc. v. Stealth Signal, Inc.*, 659 F.3d 1121, 1136 (Fed. Cir. 2011) (such statements are not limiting "where the references to a certain limitation as being the 'invention' are not uniform, or where other portions of the intrinsic evidence do not support applying the limitation to the entire patent"). For example, in *Rambus Inc. v. Infineon Technologies AG*, 318 F.3d 1081, 1094 (Fed. Cir. 2003), the district court construed the term "bus" to refer to a set of lines carrying three specific types of information, because in "the Summary of the Invention, the patentee stated that *the 'present invention'* includes a bus for carrying substantially all address, data, and control information" and elsewhere "stated: *The present invention* is designed to provide a high speed, multiplexed bus . . . [that] carries substantially all address, data and control information." *Id.* (emphasis added) The Federal Circuit reversed; these statements did not justify a narrow construction of the otherwise broader term "bus" because "the remainder of the specification and prosecution history shows that Rambus did not clearly disclaim or disavow such claim scope in this case." *Id.* at 1094-95.

## II.    ARGUMENT

### A.    "electronic television program guide" ('268 and '128 patents)

Amazon agrees that the guide is an electronic application, but argues that it should be narrowly construed to require "*schedule* and *channel* information for a *television receiver*." Amazon's argument is based on a few references to the general subject matter of "this

invention." *See* D.I. 86 at 6-7. Read in the context of the specification as a whole, those passages would have been understood as part of the "background" section in which they appear, not as a "clear disclaimer" of claim scope. *Rambus,* 318 F.3d at 1094-95. For example, the specification elsewhere makes clear that a television receiver is simply *one of* the tools that can be used to receive the guide's information. *See* '128 at 9:54-57 (the system's components "can be mounted in a separate housing, ***or included as part of a television receiver***, ***VCR***, ***personal computer***, or multimedia player . . . .") (emphasis added); 11:64-67 (can be implemented in an "IBM personal computer"); '268 at 8:28-31 and 10:39-42 (same).

Similarly, the specification shows that a program guide is defined by its ability to help *guide* a user to the programming he wants to see, rather than by the particular *kind* of information provided to facilitate that task. *See* '268 at 4:63-67; 21:6-31; 29:66-30:13. For example, the Popular Science article referred to in the specification describes an electronic program guide that allows users to select programs by topic and title rather than by time and channel. *See* D.I. 87-1 at Ex. A (Michael A. Antonoff, *Stay Tuned for Smart TV*, Popular Science, Nov. 1, 1990 ("Popular Science")) at 65 (describing and showing an example of a guide allowing users "to select programs to view or tape by subject and title rather than by channel"). Thus, a person of ordinary skill in the relevant art at the time of the invention would have understood that a program guide did not have to use "***schedule*** and ***channel*** information for a ***television receiver***" to guide the user to desired programming.

### B.     "program listings" ('268 and '128 patents)

Amazon's proposal departs from the ordinary meaning of "program listings." In particular, Amazon adds a requirement that program listings contain "current and future air times." D.I. 86 at 8. Amazon argues that this limitation is required by the specification's statement that "this invention relates to an electronic program schedule system." *Id.*; '128 at

1:11-12; '268 at 1:12-13.  As discussed above, these sentences are part of a background description; they neither define what a "program listing" is nor clearly disclaim claim scope. Moreover, they say nothing about "current and future air times," and the specification elsewhere makes clear that "program listings" need not include this information.  For example, Fig. 22 of the '268 patent includes program listings (7:1-3), but not "current and future air times."  And the specification of the '643 patent is explicit that "program listings data for each program ***may*** include (***but is not limited to***) the title of the program, the channel for the program, a scheduled broadcast time (start-time) and an ending time (or duration)."  *See* '643 at 6:12-21.  Thus none of those items are *required* as Amazon claims.

Claim differentiation also weighs against Amazon's proposal.  Claim 1 of the '268 calls for "displaying program listings" while dependant Claim 16 further requires "displaying the program listings as part of a by-time screen."  The patent explains that a "'by time' screen" is one "listing the different programs scheduled to air at a particular time on the different channels."  '268 at 33:43-45.  Because a dependent claim adds a requirement that program listings include air times, there is a strong presumption against reading that limitation into the independent claim.  *Liebel-Flarsheim Co. v. Medrad, Inc*., 358 F.3d 898, 910 (Fed. Cir. 2004).

Amazon is also wrong in trying to restrict "program listings" to listings of *television* programs.  For example, both the '128 and the '268 patents are explicit that the term "program listings" includes movies.  *See* '268 at 18:32-35 (describing "certain program listings, such as movies."); '128 at 19:60-63 (same); Fig. 19.

### C.     "program schedule information" ('268 and '128 patents)

Although the ordinary meaning of "program schedule information" does not require any particular *kind* of scheduling information, Amazon asks the Court to narrow the term so as to require "current and future air times" for "programs on television channels."  D.I. 86 at 9.  The

issue here is largely the same as above.  There is nothing about the phrase "schedule information" that requires something so specific as "current and future air times," and Amazon's proposed construction would exclude last week's "TV Guide" magazine, which does not cease to contain "program schedule information" simply because its schedules are outdated.

### D.    "video display generator" ('128 patent)

This term should be construed in line with its ordinary meaning:   a component that generates a video display.  Amazon argues that this meaning should be discarded in favor of a much narrower one because a passage in the "background" of the '128 patent constitutes an "explicit definition" of the term.  *Id.* at 10.  But the passage to which Amazon refers is not a definition.  Instead, it describes the manner in which the video display generator functions in "one mode of operation of the television programming guide."  '128 at 6:15-21.  This is an example, not a definition of the term.  *Elekta Instrument S.A. v. O.U.R. Scientific Int'l, Inc.*, 214 F.3d 1302, 1307 (Fed. Cir. 2000) ("Absent an express intent to impart a novel meaning, claim terms take on their ordinary meaning."); *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1328 (Fed. Cir. 2002) ("We have 'cautioned against limiting the claimed invention to preferred embodiments or specific examples . . . .'") (citation omitted).

Amazon's proposed construction is also inconsistent with the specification, which notes that "[i]t is another object of the present invention to provide the user with the ability to select from among a plurality of display formats for the program schedule information."  '128 at 5:5-7.  One of those modes (the so-called "Menu mode") "shown in Fig. 6 is a full screen display," *not* a visual overlay.  *See id.* at 17:29-30 and Fig. 6.   The fact that it is an object of the invention to allow for *multiple* display formats, and that one of the examples is *not* a visual overlay, undermines Amazon's assertion that the claims should be read to require a visual overlay format.

**E.    "displaying . . . with the electronic television program guide" ('268 patent)**

Once again, Amazon is attempting to import a "visual overlay" requirement.  As discussed in connection with the previous term, however, the '268 and '128 patents describe a preferred embodiment with a mode that displays information in a full-screen format without a visual overlay.  *See* '268 at 16:3-4 and Fig. 6.  Thus, reading the term as Amazon suggests would read out a preferred embodiment.  "Such an interpretation is rarely, if ever, correct . . . ." *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1583 (Fed. Cir. 1996).

In addition, Claim 23 depends from Claim 1 and calls for "simultaneously displaying a single program listing in FLIP mode."  According to the specification, the FLIP mode is a mode in which "a graphic overlay containing programming information . . . is superimposed in overlaying relationship with a received program signal."  '268 at 12:37-44.  Where, as here, one of the *dependent* claims calls for displaying a program listing using an overlay, it is improper to read that limitation into the independent claim.  *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1315 (Fed. Cir. 2005) ("the presence of a dependent claim that adds a particular limitation gives rise to a presumption that the limitation in question is not present in the independent claim.").

Amazon's other argument, that the guide must perform the displaying, is also wrong.  Amazon argues that its interpretation is supported by "the dictionary definition of 'with' which means: .. by the use of; using." D.I. 86 at 11.  But the very dictionaries on which Amazon relies list "accompanied by; accompanying" and "accompanying" as the *first* meaning.  D.I. 87-2 at Exs. E, F.  Moreover, the claims call for "using the electronic program guide" where that is what they require – thus "with the electronic program guide" should be given a distinct (and broader) meaning.  *See Applied Med. Res. Corp. v. U.S. Surgical Corp.*, 448 F.3d 1324, 1333 n.3 (Fed. Cir. 2006) ("[T]he use of two terms in a claim requires that they connote different *meanings* . . . .").

F.      **"standardized product"**

Amazon acknowledges that the specification "describes . . . *how* to 'standardize' products and services" but argues that this term is nonetheless indefinite because the specification purportedly fails to "explain *what* a 'standardized' product is." D.I. 86 at 12-13. But insofar as the specification explains *how* to standardize a product (*i.e.*, by associating a type or category of product with multiple programs) it also explains *what* a standardized product is—namely a product type that has been standardized in this way.

Amazon also argues that Rovi's construction should be rejected because it "would include any *product* associated with programs." *Id.* at 13. Amazon is, however, misreading Rovi's proposal, which requires that a product *type* (not a specific product) be associated with multiple programs. When the patent talks about "standardized products" it talks about storing "information necessary to identify the ***type*** of product or service" so as to indicate whether that category of product is available in connection with a given listing. '268 at 36:19-38 (emphasis added). This is far from indefinite. *Exxon Research & Eng'g Co. v. United States*, 265 F.3d 1371, 1375 (Fed. Cir. 2001) ("If the meaning of the claim is discernible, even though the task may be formidable and the conclusion may be one over which reasonable persons will disagree, we have held the claim sufficiently clear to avoid invalidity on indefiniteness grounds.").

G.      **"time and date stamping an order placed by the user with the electronic television program guide" ('268 patent)**

Amazon's first argument is that the guide must perform the stamping because the claim "recites that the stamping is performed by the 'electronic television program guide.'" D.I. 86 at 13. Not so. As Rovi noted in its opening brief, both the claim structure and the rules of grammar show that "with the electronic television program guide" is a prepositional phrase that modifies  the nearest antecedent; namely "the order." D.I. 84 at 8. Amazon's contrary proposal

makes no more sense than asserting that the sentence "eating a pepperoni pizza ordered by a customer with the telephone" requires a carnivorous telephone.

Amazon's other argument, that "the preamble of Claim 1 . . . makes clear that *the* 'electronic television program guide' is implemented on a 'data processor controlled by the user'" is also wrong.  D.I. 86 at 13.  First, the preamble of Claim 1 is not limiting because the rest of the claim is structurally complete and stands on its own.  *See Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc.*, 289 F.3d 801, 808 (Fed. Cir. 2002).  Second, even if the preamble were limiting, it provides that the EPG is implemented "*using* a data processor controlled by the user." That is decidedly a different (and broader) concept than requiring the EPG to be "*executed on* the user controlled data processor."  Indeed, the specification is explicit that the invention can "reside as a distributed application in a broadband network architecture."  '268 at 8:30-31. While a distributed application would be implemented *using* the user-controlled data processor, individual functions might be executed in any number of locations.  Indeed, the fact that functions are executed in multiple places is what makes the application *distributed*.[1]  Thus, even if Amazon were correct that the preamble of Claim 1 should be read as a limitation, it would be wrong to require the function called out in Claim 51 to be performed on the user's equipment.

## H.      "multimedia informational system" ('128 patent)

A multimedia informational system is a system that provides information about multimedia. That is (and was at the time) the plain and ordinary reading of the terms "multimedia," "information," and "system."  There is no reason to think that a person of ordinary skill at the time of the invention would have been confused by any of those ordinary English-language words, and nothing in the patent justifies departing from that ordinary meaning.

---

[1] *See Distributed Application*, Wikipedia, http://en.wikipedia.org/wiki/Distributed_application (last visited Apr. 9, 2012).

The preamble of Claim 37 is not a limitation.  The preamble calls for "[a] multimedia informational system for displaying program schedule information and Internet data comprising . . . ."  The claim then goes on to enumerate *all* of the structures that make up the claimed system and *all* of the structures that are necessary to perform the functions recited in the claims.  The body of the claim is, therefore "a structurally complete invention" without  reference to the preamble.  *See Catalina Mktg. Int'l, Inc.* 289 F.3d at 808 ("a preamble limits the invention if it recites essential structure or steps, or if it is 'necessary to give life, meaning, and vitality' to the claim.  Conversely, a preamble is not limiting 'where a patentee defines a structurally complete invention in the claim body . . . .'" (internal citation omitted)).

Even if the preamble *were* limiting, Amazon's construction is incorrect.  Amazon argues that "multimedia informational system" does not have a plain meaning and was "defined" by a passage in the specification.  D.I. 86 at 15 (*citing* '268 at 41:16-24).  But the passage Amazon cites is no lexicographic definition; it merely describes an embodiment in which "information *may also be* combined" in order "to provide *a* multimedia informational and merchandising system." '128 at 41:20-24 (emphasis added).  Nothing about that statement *defines* a multimedia informational system as necessarily including the specific information mentioned in that passage.  *See Arlington Indus., Inc. v. Bridgeport Fittings, Inc*., 632 F.3d 1246, 1254 (Fed. Cir. 2011) ("'even where a patent describes only a single embodiment, claims will not be read restrictively unless the patentee has demonstrated a clear intention to limit the claim scope using words o[r] expressions of manifest exclusion or restriction'" (citations omitted)).

I.      **"data feed" ('128 patent)**

Amazon argues that Rovi *disclaimed* coverage of internet delivery when it amended the claims during prosecution.  Not so.  As the patentee told the examiner, it amended the claims so that they no longer *require* that Internet data is delivered to user equipment via the Internet."

This case is similar to *Abbott Labs. v. Lupin Ltd.*, 753 F. Supp. 2d 382, 398-99 (D. Del. 2010). In *Abbott* the defendant argued that two terms should be construed to include a negative limitation (*i.e.* "not containing an internal hydrophobic component") based on the file history. *Id.* at 394  The court disagreed because a "careful review of the file histories shows that the patentee consistently told the PTO only that his invention did not ***require*** a hydrophobic component; the patentee never stated that a hydrophobic component was ***excluded*** from the scope of the claims." *Id.* at 398-399.  The same is true here.  Indeed, Rovi took pains to note that neither its amendment nor the specification limited the ways in which data could be transmitted to the user:

> [V]arious portions of applicants' specification [] describe ways in which data may be received with user equipment . . . .  these are only examples … [the specification] indicates that "[t]hose of skill in the art will understand that numerous other transmission schemes can be used to transmit the data stream" to user equipment.

Feb 5. 2004 Response at 28.[2]

Rovi's amendment *removing*  the transmission format overcame the examiner's written description objection precisely because *unclaimed* subject matter does not need to be described in the specification.  *Revolution Eyewear, Inc. v. Aspex Eyewear, Inc.*, 563 F.3d 1358, 1367 (Fed. Cir. 2009) ("the written description requirement will be satisfied as to each claim as long as the description conveys that the inventor was in possession of the invention recited in that claim").  For example, in *Crown Packaging Technology  Inc. v. Ball Metal Beverage Container Corp.*, 635 F.3d 1373, 1382-83 (Fed. Cir. 2011) the district court invalidated a claim directed to the structure of a metal can on the ground that it "failed to include a negative limitation requiring that, during the process of seaming the can end to the can body, a chuck not drive in the can

---

[2] The Court should reject Amazon's attempt to read-in a requirement that the data be sent "by a television provider" because the claims state that the data is sent by a "remote facility."

end's reinforcing bead [.]" as described in the specification.  The Federal Circuit reversed because the asserted claims were directed to a structure, and the method disclosed by the specification was therefore irrelevant to whether *the subject matter of the claim* was adequately described.  *Id.* at 1383.

The same is true here.  Faced with a written description rejection, Rovi chose *not to claim* the method by which data is delivered to the user, but instead to direct its claims to the novelty of gathering internet data and program schedule information at a remote facility and incorporating that information into a combined data feed to be delivered to the user.  As the examiner recognized (by allowing the claims without further comment) that amendment was sufficient to overcome any written description objection because it *removed* any claim to a particular method of delivering data to the user.

### J.    "a receiver" ('128 patent)

Amazon argues that the specification *requires* the claimed "receiver" to receive television signals, but then cites as support a passage from the specification describing "a receiver (12) which *receives a transmitted data stream from a data provider*."  D.I. 86 at 16.  This passage supports Rovi's construction ("the portion of the user equipment responsible for accepting *data sent from a data provider*") not Amazon's.  Nor does the rest of the passage help Amazon.  It provides that the "signal 11 *can* originate, *for example*, as part of a standard broadcast, cable cast or satellite transmission, or *other form of data transmission*."  *Id.* at 16 (citing '128 at 9:58-65) (emphasis added).  This passage is exemplary (not exclusionary or definitional) and it contemplates other forms data transmission besides those mentioned.

Amazon's proposed construction also violates claim differentiation.  Claim 37 calls for a receiver while dependent Claim 41 further requires that the receiver "receive television program signals."  This case is, therefore similar to *Stragent, LLC v. Amazon.com, Inc.*, No. 6:10cv225

LED-JDL, 2011 WL 2199498 (E.D. Tex. June 7, 2011). In that case, the district court was asked to construe the term "network-based computer application." *Id*. Amazon proposed to construe the term as "a computer application capable of receiving or transmitting data via a network." *Id*. at *9. The court rejected that proposal as inconsistent with a dependent claim that required a network interface "adapted to transmit . . . data through . . . a network-based computer application." *Id*. As the court put it, "the doctrine of claim differentiation dictates a presumption that the 'network-based computer application' disclosed in independent Claim 49 does not require the capability to transmit data because the dependent claim adds such a limitation." *Id*. The same is true here.

### K.     "interactive program guide" ('690 patent)

Once again, Amazon is attempting to limit the concept of a program guide to something that displays schedule and channel information for a television receiver.  Amazon argues that Rovi's proposed construction "ignores the core function of all 'interactive program guide[s]' of the early and mid-1990s: to list and find television program times."  D.I. 86 at 17.  But Amazon is confusing the core *function* of a program guide (which is to provide information to help users find programming) with the *way* some (but not all) early-90s guides went about performing that function.  What makes a program guide a *guide* is that it provides information to help a user find programs.  It is no less of a "program guide" if it allows users to find the programs by topic and title rather than by schedule and channel, or if the user chooses to watch the program he finds through the guide on his computer or on his television.  Indeed, even the evidence Amazon submitted shows that there was no such distinction at the time.[3]  *See* D.I. 87-1 at Ex. A (Popular

---

[3] Rovi's position is consistent with the declaration of its expert in prior litigation.  D.I. 87-2 at Ex. G   ¶¶ 8-9.  In both places, Rovi has said that an "interactive program guide" is a program guide that is interactive.

Science) at 65 (showing guide allowing users "to select programs to view or tape by subject and title rather than by channel") .

Amazon's other argument is that the preamble requires the program guide to be executed on the user's equipment.  But the preamble of Claim 1 calls for a "system comprising user equipment on which an interactive program guide is implemented."  Nothing about this requires the program guide to be implemented *exclusively* on the user equipment.  Indeed, the claims call for steps (such as Claim 9's requirement to allow a user to "impulse purchase the package through the user guide") that *require* remote components for implementation.  Moreover some of the other Rovi patents in suit explicitly talk about the fact that guides can be implemented as "distributed applications in a broadband network."  *See* '128 at 9:54-57; '268 at 8:25-31.  This is significant because the parties agree that the term "program guide" should be read consistently *across* the patents in suit because a person of ordinary skill in the art would have understood like terms to mean the same thing in connection with each patent.

### L.    "package" and "determine whether the selected program is part of a package" ('690 patent)

Amazon argues that the term "package" refers to a set of "scheduled programs" because the *examples* given in the specification include scheduled programs.  D.I. 86 at 18-19.  There is, however, nothing about the ordinary meaning of "package" that limits it to scheduled programs or that excludes programs offered on an on-demand basis.  Thus, the examples given in the specification should not be read into the claims to restrict the ordinary meaning of the term.  *Arlington Indus., Inc.*, 632 F.3d at 1254 ("even where a patent describes only a single embodiment, claims will not be read restrictively unless the patentee has demonstrated a clear intention to limit the claim scope using words o[r] expressions of manifest exclusion or restriction." (citations omitted)).

Amazon's attempt to read in a "user equipment" requirement should be rejected for the same reasons discussed in the previous section. The preamble says that the *program guide* is configured to perform the "determining" step—not the user equipment.

**M.** **"the method of Claim 19 further comprising providing the user with an opportunity to impulse purchase the package through the interactive program guide." ('690 patent)**

Amazon argues that Claim 27 is indefinite because there is no antecedent basis for "the interactive program guide" in the claim from which it depends. D.I. 86 at 20. Invalidity does not turn on whether the claim says "*an* interactive program guide" or "*the* interactive program guide," but whether a person of ordinary skill in the art would understand what the claim is talking about. *See Flash Seats, LLC v. Paciolan, Inc*., No. 07-575 (JJF), 2010 WL 184080, at *13 (D. Del. Jan. 19, 2010) (finding that the "system" was not indefinite despite the lack of antecedent basis because a person of ordinary skill in the art would understand it to refer to "the entire set of computers ….[and] equipment" used in implementing the invention). The entire specification is directed to implementing a package purchase mechanism in the context of an interactive program guide. Every other claim talks about such a guide. It is hard to credit that a person of ordinary skill in the art, upon reading the specification and the claims, would be unable to discern the bounds of the claim as a result of the use of "the" rather than "an."

**N.** **"program guide display" ('643 patent)**

Amazon argues that the "program guide display" should be limited to "a display . . . on a portion of a screen used by a current channel, of program information for one and only one category of video-on-demand." D.I. 86 at 20. The ordinary meaning of "program guide display" does not support such a construction. Nor does the specification.

First, as Amazon acknowledges, "the patent uses the phrase 'display screen' to refer to the entire viewable area of a display." *Id.* at 26 (citing '643 at 3:1-13, 3:49-64, 8:5-6, Fig. 1A

items 1 and 3, Fig. 6A item 72).  The specification says that the system "can be directed to present program guide display 70 on main display screen 72," which Amazon admits refers to the entire viewable area of a display.  '643 at 8:5-6.  The patent then goes on to explain additional, optional modes of operation.  For example, the system "*may* re-proportion (*i.e.,* shrink) the amount of screen area used by current program such that main display screen 72 presents both program guide display 70 and current program 77 unobstructed" or "if desired" the "program guide display 70 *may* also be superimposed on top of a portion of current program." *Id.* at 8:5-15 (emphasis added).  Thus the specification is explicit that the program guide display can be displayed on the main display screen and *optionally* shrunk to fit with or be overlaid on current programming.  Amazon's construction is therefore *inconsistent* with the specification insofar as it tries to limit the guide to "a display . . . on a portion of a screen used by a current channel."

Second, Amazon's argument for the "one and only one" category limitation is based on single passage that says the "program guide display of the present invention contains information for one or more video-on-demand (VOD) programs in a given category.  Information about the video-on-demand programs in other categories is not shown."  D.I. 86 at 20-21 (citing '643 at 2:25-33.  This sentence explains how the "program guide display of the present invention" could be implemented.  It is not a definition of the *term* "program guide display."  To the contrary, the specification is clear that organization by category is an *optional* feature:  it notes that "*[i]f desired*, such video-on-demand programs *may be* organized according to certain categories 72 such as 'recent releases,' 'sitcoms,' 'action/adventure,' 'drama,' etc." '643 at 8:25-30 (emphasis added).  *See Absolute Software, Inc.*, 659 F.3d at 1136 (statements are not limiting "where the

references to a certain limitation as being the 'invention' are not uniform, or where other portions of the intrinsic evidence do not support applying the limitation to the entire patent").

### O.   "video on demand program listing" ('643 patent)

Amazon argues that, during prosecution, Rovi distinguished its invention by defining "program listing" to exclude "information presented on a separate display screen after the entry is selected."  D.I. 86 at 21.  In particular, Amazon points to the fact that Rovi told the examiner that Figure 38 from the Florin patent was not part of the "program listings."  *Id.* at 22.  But Amazon misses the point.  Figure 38 is not part of the "program listings" because it does not contain "information about a particular video-on-demand program."  Figure 38 only depicts "a preview icon 382, a credit icon 384, an info icon 386, and a ticket icon 388 . . . displayed, along with a preview trailer which is continuously looping"—there is no *information about the program* in that screen.  D.I. 68-7, Ex. 8.24 (Florin) at 22:59-67.

In Florin, the indicator is displayed with the preview clip, not a program listing.  Figure 38 shows "a preview icon 382 . . . displayed, along with *a preview trailer* which is continuously looping."  *Id.* at 22:59-67 (emphasis added).  This was precisely the explanation the patentee gave during prosecution:  "[I]n Florin, the preview icon appears *after* the pay-per-view program has been selected and the 'preview trailer' is displayed in response to selecting the pay-per-view program and not in response to selecting the preview icon."  D.I. 68, Ex. 7.10 at 33.  This unremarkable proposition (*i.e.*, that a preview clip is not a program listing) does not justify excluding any "information presented on a separate display screen after [an] entry is selected."

Amazon argues that Figure 38 contains information "including the availability of a preview clip and the option to purchase," but neither is information about the program.  *Id*. at 22.  First, the claims require that the preview-clip indicator must be shown *with* the program listing.  Thus a preview-clip indicator is not *information* provided by a program listing—but instead

something that (under the claims) must be provided *with* a program listing.  Similarly, Figure 38

does not contain any *information* about a purchase option, just an icon that will bring the user to

a *different* screen that contains purchase information.  And purchase information is not

information about the program.  Thus, as Rovi told the examiner, Figure 38 does not show an

"indicator that a video clip preview is available for the VOD program [that] is 'displayed *with*

the video-on-demand program listing.'"  Instead, the clip in Figure 38 is displayed alone and

*without any information about the video on demand program.*

> **P.      "viewer television equipment"  ('643 patent)**

Amazon argues that Rovi's proposed construction "improperly excises the word

'television.'"  Not so.  As explained in its opening brief, Rovi's construction proposes to

*construe* the term "television" in accord with its ordinary meaning at the time; "remotely

provided audio-visual programming."  D.I. 86 at 22.

Amazon's other argument is predicated on the proposition that the passage it points to

"encompasses both the preferred embodiment and all alternative embodiments of the invention."

D.I. 86 at 23.  Again, not so.  Nothing in the passage indicates that it was intended to be

comprehensive.  Indeed, both the first and the second sentence refer to the fact that viewer

television equipment "***typically*** contains set-top boxes" but "***may also***" be implemented in

various other configurations, including "***any*** suitable television equipment."  '643 at 6:37-43

(emphasis added).  Nothing about either sentence is a negative *limitation* on the scope of viewer

television equipment.  *See Arlington Indus., Inc.*, 632 F.3d at 1254.

> **Q.      Means-Plus-Function Terms ('643 patent)**

All of the restrictions Amazon seeks to import into the claimed functions are separate

limitations that act on the *result* of those functions. [4]  For example, one of the disputed

limitations calls for a "means for indicating that a video preview clip is available."  A subsequent

element requires that the indication created by this function "is provided with the video-on-

demand program listing."  The latter acts on the results of the former; they are not a single

function, which is why they are separated (in the claim) by the word "wherein."  Despite this,

Amazon asks the Court to conflate them by construing the "means for indicating" to require that

the "indication . . . must appear with the video-on-demand program listing for that program."

This is improper.  Nobody should have any problem understanding what it means for an

"indication [to be] provided with the video-on-demand program listing."  And there is no reason

to construe it – much less to rephrase it in a way that Amazon thinks is friendly to its cause and

then include it as part of the construction of a *different* function.

   Amazon also attempts to add in an entirely new limitation to the "means for displaying an

ordering screen": that the ordering screen be "presented on a new display screen."  The claim

already makes it clear: 1) that the ordering display screen is to be displayed "after the video clip

preview of the video-on-demand program is displayed;" and 2) that it "provides the viewer with

the opportunity to select an ordering option."  Amazon argues that Rovi "ignores that the display

screen must be presented 'after' the video clip preview is displayed."  D.I. 86 at 26.  Rovi

doesn't ignore that aspect of the claim—it just does not need to be construed.  Amazon is the

party trying to rewrite the claim such that "after" somehow means "that a *new* screen—not a

screen identical to the one showing the preview—must be presented."  *Id*.  Notably, Amazon

does not point to any disclaimer or lexicographic redefinition to construe "after" so narrowly.

---

[4] The same is true of the other means-plus-function limitation.  The result of the "means for
displaying an ordering display screen" is an ordering display screen.  Later limitations require
showing that screen after the preview, and providing an opportunity to select an ordering option.

Instead, Amazon argues that "the patent uses the phrase 'display screen' to refer to the entire viewable area of a display." *Id.* This is particularly ironic considering Amazon's position that a "program guide display" can only be "on a portion of a screen." *See id.*; Section 0.N, *supra*.

The '643 patent also discloses corresponding structures for the claimed functions. *See* D.I. 84 at 26-28. Amazon argues that "an 'icon' is an image, not a 'structure.'" D.I. 86 at 27. But that's like saying an algorithm is a set of instructions, not a structure. *See Typhoon Touch Techs., Inc. v. Dell, Inc.*, 659 F.3d 1376, 1386 (Fed. Cir. 2011) (algorithm provides sufficient structure). Amazon does not otherwise dispute that the icon is clearly linked as a means for indicating that a preview clip is available. And where the "functions can be achieved by any general purpose computer without special programming . . . it [is] not necessary to disclose more structure than the general purpose processor that performs those functions." *In re Katz Interactive Call Processing Patent Litig.*, 639 F.3d 1303, 1316 (Fed. Cir. 2011). In *Katz*, the Federal Circuit held that "the functions of 'processing,' 'receiving,' and 'storing' are coextensive with the structure disclosed, *i.e.*, a general purpose processor." *Id.*

The same is true here. "Displaying" an icon is a common function that can be achieved by any general purpose computer without special programming. Similarly, "displaying a video clip preview" and "displaying an ordering display screen" are also functions that can be achieved by a computer without special programming. And to the extent that additional detail is required, the '643 discloses a series of distinct steps to "display a video clip preview," and provides additional details about what an "ordering display screen" includes, such as ordering options. *See* D.I. 84 at 27-28. Thus, the '643 patent discloses sufficient corresponding structure.

### R.      "viewing location" ('078 patent)

Amazon argues that a viewing location must be a location at which a program *is* received (rather than *can be* received) because Claim 1 calls for a distribution arrangement in which

"dispersed television viewing locations receive television programming from a source of such programming." D.I. 86 at 29. But Amazon is misreading the claim. First, even on its own, this sentence does not imply what Amazon suggests; there is nothing about the ordinary language of the sentence to suggest that all of the viewing locations must receive programming *while making use of the invention*. To the contrary, what is claimed is "a method of receiving information specific to the type of programming ***available to*** a particular one of the viewing locations" and later when it calls for "receiving . . . information specific to the type of programming ***available to*** the particular viewing location." '078, Claim 1 (emphasis added). Thus, the claims are explicitly directed to providing the user with information about the programming that is *available* to a particular location—*i.e.*, the programming that *can be* received at that location.

Amazon next argues that "the alleged invention of the '078 patent is useless if used at a location that does not actually receive television signals." D.I. 86 at 29-30. Not so. For example, a person could use the claimed invention at work to receive information about "the type of programming ***available to*** the particular viewing location" even if that programming is not received at work, but is instead received later in the evening at the viewing location (*e.g.* home). The claims are expressly directed to providing information on the programming that is *available* at a location, and contain no limitations directed to the *receipt* of that programming.

Amazon also argues that the Court should adopt its construction because "the patent repeatedly states that the purpose of the invention is to use schedule information to program a VCR by using a computer at the same location as the VCR." *Id.* at 30. But the '078 patent discloses at least two distinct inventions. The first is the ability to have a computer download television schedule information from a service provider based upon the geographic location of the viewer. The second disclosed invention ( which is claimed in related patents not at issue

here) is the ability to interface a computer with a VCR so as to program the VCR.  For example, the patent that issued from the parent application to the '078 patent claimed "[a] method of *programming a remotely controlled video recorder* connected to a video source."  Roberts Decl., Ex. A (U.S. Pat. No. 5,692,214) at 8:49-51 (emphasis added).  That is not the embodiment to which the claims of *this* patent are directed.  Indeed, the claims of the '078 do not even *refer* to a VCR.  *See LG Elecs., Inc. v. Bizcom Elecs., Inc.*, 453 F.3d 1364, 1378 (Fed. Cir. 2006) (patentee did not disavow scope where the statements "relate to the invention not elected during prosecution"); *rev'd on other grounds sub nom. Quanta Computer, Inc. v. LG Elecs., Inc.*, 553 U.S. 617 (2008).

     **S.**     **"modem" ('078 patent)**

     Amazon argues that the term modem must be limited to devices that communicate over telephone lines because that was the only way modems were used in 1992.  D.I. 86 at 30.  This is factually wrong.  *See* Roberts Decl., Ex. B (Perry L. Norton, *Dow Jones' Cable Experiment*, InfoWorld, July 16, 1984) at 35.  Even if Amazon were factually correct, it does not follow that the term "modem" *is defined* by that characteristic.  Indeed, Rovi has provided several dictionaries from the time which explain that "modem" is a contraction of modulation and demodulation—not something specific to telephone lines.

/s/ Jason J. Rawnsley
Frederick L. Cottrell, III (#2555)
Anne Shea Gaza (#4093)
Jason J. Rawnsley (#5379)
RICHARDS, LAYTON & FINGER, PA
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
(302) 651-7700
cottrell@rlf.com
gaza@rlf.com
rawnsley@rlf.com

OF COUNSEL:

Daralyn J. Durie
Ragesh K. Tangri
Clement S. Roberts
Jesse Geraci
Eugene Novikov
DURIE TANGRI LLP
217 Leidesdorff Street
San Francisco, CA  94111-3007
(415) 362-6666
ddurie@durietangri.com
rtangri@durietangri.com
croberts@durietangri.com
jgeraci@durietangri.com
enovikov@ durietangri.com

*Attorneys for Plaintiffs Rovi Corp., Rovi Guides, Inc. (f/k/a Gemstar-TV Guide Int'l Inc.), United Video Props., Inc., TV Guide Online, LLC, and TV Guide Online, Inc.*

Dated:  April 9, 2012

## CERTIFICATE OF SERVICE

I hereby certify that on April 9, 2012, I caused to be served by **electronic mail** copies of the foregoing document on the following counsel and electronically filed the same with the Clerk of Court using CM/ECF, which will send notification of such filing to counsel of record:

Karen Jacobs Louden, Esquire
Michael J. Flynn, Esquire
Morris, Nichols, Arsht & Tunnell LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
klouden@mnat.com
mflynn@mnat.com

Eric J. Maurer, Esquire
Maurer PLLC
5335 Wisconsin Avenue, NW
Suite 440 PMB#: 4154
Washington, DC 20015
(202) 417-3804
emaurer@maurerpllc.com

Scott E. Gant, Esquire
D. Michael Underhill, Esquire
Neal Hannan, Esquire
Evan A. Parke, Esquire
Joshua Mayer, Esquire
Boies, Schiller & Flexner LLP
5301 Wisconsin Avenue, N.W.
Washington, D.C. 20015
sgant@bsfllp.com
munderhill@bsfllp.com
nhannan@bsfllp.com
eparke@bsfllp.com
jmayer@bsfllp.com

*/s/ Jason J. Rawnsley*_____
Jason J. Rawnsley (#5379)
rawnsley@rlf.com