IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ROVI CORPORATION, ROVI GUIDES, INC. (f/k/a GEMSTAR-TV GUIDE INTERNATIONAL INC.), UNITED VIDEO PROPERTIES, INC., TV GUIDE ONLINE, LLC, and TV GUIDE ONLINE, INC., | ) ) ) ) ) | |
| | ) | |
| Plaintiffs, | ) | C.A. No. 11-003 (RGA) |
| | ) | |
| v. | ) | |
| | ) | |
| AMAZON.COM, INC., and IMDB.COM, INC., | ) | |
| | ) | |
| Defendants. | ) | |

**RESPONSIVE CLAIM CONSTRUCTION BRIEF
OF DEFENDANTS AMAZON AND IMDB**

Karen Jacobs Louden (#2881)
Michael Flynn (#5333)
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
klouden@mnat.com
mflynn@mnat.com

OF COUNSEL:

Scott E. Gant
D. Michael Underhill
Neal Hannan
BOIES, SCHILLER & FLEXNER LLP
5301 Wisconsin Avenue, NW
Washington, DC 20015
(202) 237-2727

*Attorneys for Defendants Amazon.com, Inc.
and IMDb.com, Inc.*

Eric J. Maurer
MAURER PLLC
5335 Wisconsin Avenue, NW
Suite 440 PMB #: 4154
Washington, DC 20015
(202) 417-3804

April 9, 2012

# TABLE OF CONTENTS

**Page**

INTRODUCTION ......................................................................................................... 1

ARGUMENT ................................................................................................................. 1

I.     The "Program Guide," "Program Schedule Information," and "Program Listing" Limitations of the '268, '128, and '690 Patents ...................................... 1

     A.    "electronic television program guide" ['268 and '128] and "interactive program guide" ['690]........................................................... 2

          1.    The preamble of Claim 1 of the '268 requires the EPG to be "executed on a user-controlled data processor".............................. 4

          2.    Claim 1 explicitly recites that the IPG is implemented on "user equipment," but Claim 19 does not.................................................. 5

     B.    "program schedule information" ['128 and '268] ...................................... 5

     C.    "program listings" ['128 and '268]............................................................ 6

II.    Other '128 and '268 Terms.................................................................................... 7

     A.    "video display generator" ['128 Claims 37-39].......................................... 7

     B.    "displaying" and "displaying … with the electronic television program guide" ['268 Claims] ............................................................... 8

     C.    Product Ordering Terms ........................................................................... 10

          1.    "standardized product" ['268 Claim 34]....................................... 10

          2.    "time and date stamping an order placed by the user with the electronic television program guide" ['268 Claim 51] ................. 10

     D.    Terms Unique to the '128 Specification .................................................. 11

          1.    "Multimedia informational system" limits Claim 37.................... 11

          2.    "data feed" [Claim 37] ................................................................. 11

          3.    "a receiver" [Claim 37] ................................................................ 12

III.   '690 Patent .......................................................................................................... 12

     A.    "package" [Claims 1, 9, 10, 19, 27, and 28] ........................................... 12

B.    "determine whether the selected program is part of a package" [Claim 1] ........................................................................ 13

C.    Claim 27 is indefinite ............................................................ 13

IV.   '643 Patent .............................................................................. 14

A.    "program guide display" [Claims 1, 5, 7, 11, 13, and 17] ........ 14

B.    "video-on-demand program listing" [Claims 1, 7, and 13] ...... 15

C.    "viewer television equipment" [Claims 1, 7, 13]..................... 16

D.    The Three "Means-Plus-Function" Limitations [Terms 17 - 19] ............. 16

    1.    Identification of the Function for Term 17 [D.I. 83-1] ................ 16

    2.    Interpreting the functions for Terms 17 and 19 [D.I. 83-1] .......... 17

    3.    There is no disclosure of "corresponding structure".................... 18

V.   '078 Patent .............................................................................. 20

A.    "viewing location" [Claims 1-7]............................................. 20

B.    "modem" [Claims 1, 6, 8] ...................................................... 20

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abbott Labs. v. Lupin Ltd.*,
   753 F. Supp. 2d 382 (D. Del. 2010) ......................................................................... 12

*Applied Med. Res. Corp. v. U.S. Surgical Corp.*,
   448 F.3d 1324 (Fed. Cir. 2006) .................................................................................. 9

*Aristocrat Techs. Australia Pty Ltd. v. Int'l Game Tech.*,
   521 F.3d 1328 (Fed. Cir. 2008) ................................................................................. 19

*Arlington Industries*,
   632 F.3d 1246 (Fed. Cir. 2011) ................................................................................. 8

*Computer Docking Station Corp. v. Dell, Inc.*,
   519 F.3d 1366 (Fed.Cir.2008) ................................................................................... 15

*Ergo Licensing v. CareFusion 303*,
   2012 WL 987833 (Fed. Cir. Mar. 26, 2012) ............................................................. 19

*Griffin v. Bertina*,
   285 F.3d 1029 (Fed. Cir. 2002) ................................................................................. 17

*Haemonetics Corp. v. Baxter Healthcare Corp.*,
   607 F.3d 776 (Fed. Cir. 2010) ................................................................................... 5

*In the Matter of Certain Set-Top Boxes and Components Thereof*,
   ITC Inv. No. 337-TA-454, 2002 WL 31556392 (June 21, 2002) .............................. 2

*Lockheed Martin Corp. v. Space Systems/Loral, Inc.*,
   324 F.3d 1308 (Fed. Cir. 2003) ................................................................................. 17

*MBO Labs., Inc. v. Becton, Dickinson & Co.*,
   474 F.3d 1323 (Fed. Cir. 2007) ................................................................................. 15

*Microprocessor Enhancement Corp. v. Texas Instruments Inc.*,
   520 F.3d 1367 (Fed. Cir. 2008) ................................................................................. 5

*On Demand Machine Corp. v. Ingram Indus.*,
   442 F.3d 1331 (Fed. Cir. 2006) .............................................................................. 1, 11

*Research Plastics, Inc. v. Fed. Packaging Corp.*,
   421 F.3d 1290 (Fed. Cir. 2005) ................................................................................. 9

*Seachange Int'l, Inc. v. C-COR, Inc.*,
    413 F.3d 1361 (Fed. Cir. 2005) ................................................................................. 5

*Texas Instruments, Inc. v. United States Int'l Trade Comm'n*,
    988 F.2d 1165 (Fed. Cir. 1993) ............................................................................... 17

**Statutes**

35 U.S.C. § 112 ............................................................................................................. 10

**Other Authorities**

DICTIONARY OF VIDEO AND TELEVISION TECHNOLOGY
    (Keith Jack and Vladimir Tsatsulin eds., Newnes 2002) ......................................... 2

Dictionary.com, *Dictionary.com*
    http://dictionary.reference.com/ (last visited Apr. 9, 2012) ................................... 3, 9

Dictionary.com, *Dictionary.com Unabridged*,
    Random House, Inc. http://dictionary.reference.com/ (last visited March 19, 2012) .............. 12

THE AMERICAN HERITAGE COLLEGE DICTIONARY (4th ed. 2007). ........................................ 6, 7, 9

WEBSTER'S NEW WORLD DICTIONARY OF MEDIA AND COMMUNICATIONS
    (Richard Weiner ed., 2nd ed. 1996) .......................................................................... 2

## TABLE OF ABBREVIATIONS

| Abbreviation | Description |
|---|---|
| '078 | U.S. Pat. No. 5,988,078, submitted as Ex. 2 to the parties' 2/17/2012 Joint Claim Construction Chart (D.I. 68) |
| '128 | U.S. Pat. No. 6,769,128, submitted as Ex. 4 to the parties' 2/17/2012 Joint Claim Construction Chart (D.I. 68) |
| '268 | U.S. Pat. No. 6,275,268, submitted as Ex. 3 to the parties' 2/17/2012 Joint Claim Construction Chart (D.I. 68) |
| '643 | U.S. Pat. No. 7,493,643, submitted as Ex. 5 to the parties' 2/17/2012 Joint Claim Construction Chart (D.I. 68) |
| '690 | U.S. Pat. No. 7,603,690, submitted as Ex. 6 to the parties' 2/17/2012 Joint Claim Construction Chart (D.I. 68) |
| D.I. 68, Ex. __ | Exhibit submitted with the parties' 2/17/2012 Joint Claim Construction Chart (D.I. 68) |
| Ex. __ | Exhibits attached to either the March 19, 2012 Declaration of Michael Flynn (D.I. 87), or the Declaration of Michael Flynn filed at the same time as this brief. The exhibits to this filed with this brief begin at Ex. L, which is where the March 19 exhibits left off. |
| Term __ | The Supplemental Joint Claim Construction Chart submitted on 3/19/2012 (D.I. 83 Ex. 1) assigns numbers to each disputed limitation. This abbreviation refers to each numbered term. |

## INTRODUCTION

Plaintiffs' Patent "claims cannot be of broader scope than the invention that is set forth in the specification." *On Demand Machine Corp. v. Ingram Indus.*, 442 F.3d 1331, 1340 (Fed. Cir. 2006). That is why statements in the Patents about what the "inventions" relate to should be given effect. (D.I. 86 at 3 n.2, citing cases.) Plaintiffs largely ignore clear statements about the "invention"—as well as the Patents' embodiments, which are consistent with these descriptions—and instead apply "word-by-word definition[s], removed from the context of the invention . . . ." *Id.* at 1344. They construe "electronic television program guide" and "interactive program guide" by taking the dictionary definition of "guide" and combining the definition with the words "electronic," "television," and "programming." The resulting constructions, by Plaintiffs' own admission, "do[] not require any particular kinds of information." (D.I. 84 at 18.) Plaintiffs use the same approach for other limitations, such as "viewer television equipment," which results in a construction that is "not limited to specific types of hardware." (D.I. 84 at 23.) The proper construction of these and other limitations cannot be arrived at by applying general purpose dictionaries to the individual words. The limitations must be viewed as a whole, and in the context of how they are used in the Patents. Plaintiffs' proposed claim constructions "depart[] significantly from the patented invention" and should be rejected. *On Demand*, 442 F.3d at 1344.

## ARGUMENT

**I.    The "Program Guide," "Program Schedule Information," and "Program Listing" Limitations of the '268, '128, and '690 Patents**

At the time of the Patent applications—and today—these terms related to television channel schedules. (D.I. 84 at 18.) Indeed, in 2002 Plaintiffs[1] told the Federal Circuit that:

---

[1] Gemstar Development Corp. and Index Systems filed the brief, but the "real party in interest" was "Gemstar-TV-Guide International, Inc." which owned 100% of both parties. (Ex. L at ii.) Gemstar-TV Guide Int'l is now Plaintiff Rovi Guides, Inc. (D.I. 10 at ¶3.)

*Program guides* provide viewers with *schedule* information for *upcoming television shows*. Initially, these were available only in printed format . . . .

(Ex. L at 6.)  An "electronic television programming guide" is a type of "program guide" and, consistent with Plaintiffs' Federal Circuit brief, is defined in technical dictionaries as "[a] *schedule* of *forthcoming* programs, *shown on the TV* screen for the viewer." (Ex. B at 206; Ex. C at 106.) An IPG is a type of EPG that is interactive. (Ex. G ¶ 9; Ex. M at *147 n.31.)

That the Patents' EPGs and IPGs include features *in addition to* schedule information for television channels does not change their meaning. Indeed, printed "program guides" included information in addition to schedule information, such as photographs and articles. If those extra features were torn out of a *TV Guide*, it would still be a "program guide." In contrast, if the television "schedules" were torn out, what remains would cease to be a program guide.

### A.    "electronic television program guide" ['268 and '128] and "interactive program guide" ['690]

| "electronic television program guide" ['268 and '128] | |
|---|---|
| **Amazon and IMDb** | **Plaintiffs** |
| an application that provides program schedule and channel information for a television receiver<br><br>* In the '268 Claims, "the electronic television program guide" is "executed on a user-controlled data processor." | an electronic application that provides information to allow users to find television programming |
| "interactive program guide" ['690] | |
| **Amazon** | **Plaintiffs** |
| an application that produces interactive display screens with program schedules and channel information (among other things) for a television receiver<br><br>* The 'interactive program guide' in Claims 1, 9, 10, and 14 is executed on user equipment. | an interactive electronic application that provides information to allow users to find television programming |

The parties agree that the only difference between an "interactive program guide" and an "electronic television program guide" is that an IPG is "interactive." The parties disagree about what core functionality is included in both terms. Plaintiffs base their proposals on a general purpose dictionary definition of "guide." (D.I. 84 at 6.) Plaintiffs' approach is flawed. First, it

2

ignores *technical* dictionary definitions for EPG, which are far more relevant.[2] Second, it ignores

the Patents' descriptions of the "inventions." (*See* D.I. 86 at 3 n.2, citing cases.) As described in

Amazon's opening brief, (D.I. 86 at 6-7), the '268 and '128 describe their "inventions" as related

to "electronic program schedule systems" for "television receivers" that store *schedules* for

television channels. ('268 at 1:12-20, 5:27-41; '128 at 1:11-21, 6:1-15.)

Plaintiffs argue that EPGs do not necessarily include television channel schedules

because the Patents show "screens" with no schedule or channel information. This confuses

EPGs with the screens they can show. (D.I. 84 at 6 and 18.) The parties agree that EPGs are

"applications." (D.I. 83-1, Terms 16, 20.) Indeed, Claim 47 of the '128 recites a microcontroller

that is "*programmed* with at least a portion of an electronic program guide . . . ."[3] The

applications can cause various screens to be displayed—some with schedules, some without, and

some with no information at all ("only a program signal"). ('128 at 13:62-67, 14:35-41, Figs. 17-

18.) That a screen produced by an EPG may *display* something other than a schedule does mean

that EPGs do not provide television channel schedules.

Finally, Plaintiffs take issue with including "for a television receiver" in the

constructions. But the Patents describe the "inventions" as a scheduling system for a "television

receiver." ('268 at 1:12-20, 5:27-41, 12:35-37; '128 1:11-21, 6:1-15, 13:62-64.)  Plaintiffs argue

that certain embodiments do not include a "television receiver."  This is wrong and, even if true,

irrelevant.  It is irrelevant because the claims specifically recite an "electronic *television* program

guide."  In order to receive "television" signals, a receiver is needed.  (D.I. 68, Ex. 8.19 at 28;

Ex. 8.21 at 34.)  Plaintiffs confuse the issue by citing two excerpts in the specification—one

---

[2] Plaintiffs' proposal requires EPGs and IPGs to "provide[] information to allow users to find
television programming." "Television programming," however, by definition, involves
"scheduled" programs. (Ex. N.)

[3] Emphasis in the quoted material is added unless otherwise noted.

stating that the system components in Fig. 1 "can be mounted in a separate housing, or included as part of a television receiver, VCR, personal computer, or multimedia player," and one stating that the FIG 1 system components can be implemented in an "IBM personal computer equipped with a transmission link and a video graphics card such as those manufactured by Roctec." ('128 at 9:54-57, 11:64-67 )

But these quotes are not saying that "television receivers" are not needed; rather, they are referring to where the *components* in '128 FIG 1 can be housed or implemented. After all, the ultimate destination of the signals processed by the system of FIG.1 is FIG. 1's *Television Receiver* **27**. This is consistent with the '128 prosecution history, where Applicants stated that if a computer is used, "a television receiver would still be necessary in order to receive and tune to a desired television program signal," (D.I. 68, Ex. 8.19 at 28), and that "chang[ing] television channels . . . is inherently associated with displaying television programs . . . ." (D.I. 68, Ex. 8.21 at 34).[4]

> ### 1. The preamble of Claim 1 of the '268 requires the EPG to be "executed on a user-controlled data processor"

As Plaintiffs correctly note, Amazon seeks to have the Court construe the preamble of Claim 1. (D.I. 84 at 7.) Claim 1's preamble *introduces the disputed term*. It recites that "an electronic television program guide is implemented using a data processor controlled by the user . . . ." The body of the Claim refers back to this EPG ("*the*" EPG). Because the preamble "provides the *only* antecedent basis [for EPG], and thus the context essential to understanding the meaning," it "limits the scope of the claimed invention." *Seachange Int'l, Inc. v. C-COR, Inc.*,

---

[4] Even where an IBM computer is used, the Patent recommends a Roctec "Rocgen" card. According to the patent, that card can take television signals and output them to a "television receiver." ('128 at 11:35-45.) A manual for a Rocgen device illustrates that those devices receive computer-generated signals, process them, combine them with a "second of . . . two signals" (a standard video signal), and send a combined signal to a television receiver. (Ex. S at 4 and 7, Fig. 2.)

413 F.3d 1361, 1376 (Fed. Cir. 2005). The preamble of Claim 1 also is limiting because it recites

the "structure[] of a system in which the claimed method is practiced . . . ." *Microprocessor*

*Enhancement Corp. v. Texas Instruments Inc.*, 520 F.3d 1367, 1374 (Fed. Cir. 2008).

>      **2.      Claim 1 explicitly recites that the IPG is implemented on "user**
>              **equipment," but Claim 19 does not**

Plaintiffs do not dispute that Claim 1 requires the IPG to be executed on user equipment.

('690 at 9:7-8.)[5]  Instead, they argue that IPG in Claims 1, 9, 10, and 14 must be construed the

same as IPG in Claim 27. Amazon agrees, and construes IPG consistently. But because Claims 1,

9, 10, and 14 differ from Claim 27 by requiring that the IPG be implemented on user equipment,

the construction should clarify that these identical IPGs are *implemented* differently.

>      **B.      "program schedule information" ['128 and '268]**

| Amazon and IMDb | Plaintiffs |
|---|---|
| information that includes the current and future air times of programs on television channels | information about the scheduling of one or more programs |

"Program schedule" modifies "information." Both parties' constructions use the word

"information." The issue is that "program schedule" means *something*, and Plaintiffs do not say

what that something is. (D.I. 84 at 15.)

Putting aside the Patents, "schedule" ordinarily refers to the time when something is

expected to occur in the future. Indeed, Plaintiffs' dictionary defines "schedule" in this way:  "a

procedural *plan* that indicates *the time* and sequence of each operation." (D.I. 84 at 16.)

Plaintiffs' argument that a "'television schedule' in Monday's newspaper does not cease to be a

schedule at the stroke of midnight" is correct. That is because Monday's "television schedule"

was a "schedule" when it was written—it specified when, and on what channel, television

programs were *planned* to air. For instance, in the Fall *60 Minutes* is "scheduled" to air on

---

[5] Claim 1 recites a "system *comprising* user equipment on which an interactive program guide is
implemented . . . ." ('690 at 9:7-8.) Terms following the word "comprising" are limiting.
*Haemonetics Corp. v. Baxter Healthcare Corp.*, 607 F.3d 776, 781 (Fed. Cir. 2010).

Sundays at 7 pm Eastern after NFL games; but its start time is frequently delayed. After *60 Minutes* airs, its "scheduled" time was still 7 pm; the time it actually aired was later. The Patents are about program guides and, as Plaintiffs state, program guides help users find upcoming television programming.

The Patents describe "schedules" as forward looking:  the "invention" uses "television program schedule information for . . . programs *to appear* on . . . television channels." ('128 at 6:7-9; '268 at 5:32-34.) Plaintiffs[6] recognized this in a brief filed with the ITC on March 20, one day *after* Plaintiffs filed their opening brief in this case. (Ex. O at 24.) That case involves a related patent (U.S. Pat. No. 7,047,547, Ex. P) sharing a common specification and ancestor application (No. 08/247,101) with the '128 and '268. In the ITC, Plaintiffs proposed that "program schedule information" be construed to capture any "information relating to *a scheduled program*." (*Id.*)

Finally, "program schedules" in the context of the Patents refers to the times that programs appear on channels. That is how the Applicants describe what they regard as their invention. (D.I. 86 at 9.) Moreover, a "program" by definition relates to a "scheduled radio or television show." (Ex. Q at 1113.) And as Applicants explained in the prosecution history, television "channels" are "inherently associated" with the display of television programs. (D.I. 68, Ex. 8.21 at 34.)

### C.      "program listings" ['128 and '268]

| Amazon and IMDb | Plaintiffs |
|---|---|
| entries that provide information about television programs, including current and future air times | entries that provide information about particular programs. |

Plaintiffs argue that Amazon and IMDb's construction is inconsistent with the Patents and the "ordinary meaning" of the terms. But the Patents state that the "inventions" provide

---

[6] Plaintiffs Rovi Corp., Rovi Guides, Inc., and United Video Properties, Inc. are Complainants in ITC Investigation 337-TA-820.

television schedule information, and the examples of "program listings" in the Patents include television schedule information. (D.I. 86 at 8-9.)[7] And this use is consistent with the ordinary meaning of "program," which is defined as a "*scheduled* radio or *television* show." (Ex. Q at 1113.) Moreover, in their March 2012 ITC Brief, Plaintiffs agreed that the Patent specifications "use the terms 'program schedule information' and 'program listings information' interchangeably," supporting Amazon and IMDb's proposal that "program listings" include schedules (current and future air times). (Ex. O at 25 (referring to the '547 Patent (Ex. P) at 4:56-59 and 30:43-51, which corresponds to '128 at 6:6-9, 34:38-46; and '268 at 5:31-34, 31:38-46.)

## II.    Other '128 and '268 Terms

### A.    "video display generator" ['128 Claims 37-39]

| Amazon and IMDb | Plaintiffs |
|---|---|
| A component that combines two or more input signals into one output television signal for display, where the information from the input signals is overlayed in the one output television signal. | a component that generates a video display |

Plaintiffs' support for their construction is that it is "just what it sounds like." (D.I. 84 at 13.) They cite no technical dictionaries or excerpts from the Patent. But in a 2005 appeal—before they were attempting to capture Internet services—Plaintiffs' "plain meaning" definition was "a device that generates, causes, or produces a showing of something used in a *television image*." (Ex. R at 25.)[8] In a 2001 case, Gemstar submitted an expert declaration that included a markedly more complicated description of a VDG:

> "Video signal output" devices would include character generators, *video display generators*, bit map generators and the like that convert the microcontroller signal to a baseband video signal, *i.e.*, to an unmodulated video signal, which would be used in combination with an RF modulator to modulate the baseband signal onto a carrier wave when necessary to connect to a *television receiver* . . . .

---

[7] The Patent's reference to movies is consistent with Amazon and IMDb's proposal.  Television networks, such as HBO, routinely *program* (*i.e.*, schedule) movies to be shown on television channels.

[8] Gemstar Development Corp.'s brief identified its 100% owner, Gemstar-TV Guide Int'l., as the "real party in interest." (Ex. R at i). Gemstar-TV Guide Int'l is the former name of Plaintiff Rovi Guides, Inc. (D.I. 10 at ¶3.)

(Ex. G at ¶39.) These descriptions are similar to Amazon and IMDb's proposed construction, which specifies that the VDG outputs a television signal.

The '128 also makes clear that a VDG performs an overlay function. Plaintiffs argue that Amazon and IMDb cite a "preferred embodiment" that relates to "just 'one mode of operation' of the television program guide." (D.I. 84 at 14 ('128 at 6:15-21.))  But the passage, which appears in the "Background of the Invention," describes the VDG used to achieve *all* of the "objects of the invention." And its reference to "one mode of operation" is to the displaying of "the television programming guide," not to the overlay function. (*Id.*) Indeed, the Patent later describes other information—such as information about a VHS cassette for purchase or a news story—that can be displayed instead of the television programming guide. (*See, e.g.* FIGS. 43E (VHS); FIG. 56 (news story); FIG. 55 (a "channel manager").) But it's clear that the VDG overlays information on a television signal in every mode of operation. (*See*, *e.g.*, '268 at FIGS. 36A, 36B; FIG. 47 ("Video Overlay Device 25"); 11:46-63.)

Plaintiffs also cite *Arlington Industries*, 632 F.3d 1246, 1254 (Fed. Cir. 2011), for the proposition that construction of a term that renders language in another claim superfluous generally is disfavored. That doctrine has no applicability here (and creates only a rebuttable presumption in any event). Claim 37 recites a VDG, and Claim 41, which depends from Claim 37, recites that the VDG "display[s] *a television program* of the given one of the television program signals . . . ." Amazon's and IMDb's construction of *VDG* does not require the display of a television *program* signal, only that it *overlays* information onto a *television signal*.

**B.    "displaying" and "displaying … with the electronic television program guide" ['268 Claims]**

| "displaying" [Claims 1-5, 7, 9, 11, 36] | |
|---|---|
| **Amazon and IMDb** | **Plaintiffs** |
| *This term should be construed in the context in which it is used in the claims.* | presenting visual information |

| "displaying… with the electronic television program guide" [Claims, 1, 36] | |
|---|---|
| **Amazon and IMDb** | **Plaintiffs** |
| using the electronic television program guide to visually overlay on a screen . . . | [not construed] |

As described above, Plaintiffs agree that the claimed "electronic television program guide" is "an application." (D.I. 84 at 5.) Yet Plaintiffs argue that the claimed EPG is also "something that is itself *displayed* to the user." (D.I. 84 at 4.) This alternative definition of an EPG should not be accepted because "claim terms are presumed to be used consistently throughout the patent." *Research Plastics, Inc. v. Fed. Packaging Corp.*, 421 F.3d 1290, 1295 (Fed. Cir. 2005). Because an EPG is an "application," and not a display, the phrase "displaying program listings with the electronic television program guide" makes sense only if "with" means "using." This construction is consistent with the dictionary definition of "with," which means: "(of means or instrument) by the use of; using:" such as "*to line a coat with silk; to cut with a knife.*" (Ex. F; *see also* Ex. E at 1574.)

Plaintiffs argue that the word "with" cannot be interpreted to mean "using" because "using" appears in other portions of the Claims. (D.I. 84 at 4.) But *Applied Med. Res. Corp. v. U.S. Surgical Corp.* (cited by Plaintiffs) states that different words are interpreted differently "[*i*]n the absence of any evidence to the contrary." 448 F.3d 1324, 1333 n.3 (Fed. Cir. 2006). As described above, there is compelling evidence to the contrary here.

Other uses of the word "with" in the Patent make clear that "with" means "using" in the context of this limitation. Claim 1 recites a method "for allowing a user to order products *with* an electronic television program guide," and later recites almost the exact same language, except with the word "using" instead of "with":  "allowing a user to order the product … *using* the … electronic television program guide." Claim 51 again later uses the phrase "order . . . with the" EPG. In those examples, "with" and "using" mean the same thing. (*See also* Claims 35 and 37.)

9

### C.  Product Ordering Terms

#### 1.  "standardized product" ['268 Claim 34]

| Amazon and IMDb | Plaintiffs |
|---|---|
| indefinite under 35 U.S.C. § 112 ¶ 2. | a product type associated with various programs |

Plaintiffs' construction is inconsistent with the Claim language and the Patent, evidencing that the meaning of "standardized products" is not reasonably ascertainable. The Claim recites "standardized product," not "standardized product *type*," as Plaintiffs' construction suggests. And the mere fact that a "product type" is "associated with various programs" does not make the product "standardized."  The Patent states that when "*only* [particular product types] are available" for any programs in guide, "the database of program schedule information stored at each user location" "need only include a flag ['yes/no'] for each listing indicating whether [a particular product type is] available for it." ('268 at 36:19-38.) But that does not determine *what* a standardized product is, only *how* one could standardize a product *type*.

#### 2.  "time and date stamping an order placed by the user with the electronic television program guide" ['268 Claim 51]

| Amazon and IMDb | Plaintiffs |
|---|---|
| recording, with the electronic television program guide executed on the user-controlled data processor, the time and date of the order as reflected on the user's guide application | the order placed by the user with the electronic television program guide is time and date stamped. |

The specification does not, as Plaintiffs suggest, disclose a server that performs date stamping. (D.I. 84 at 9.) The text pointed to by Plaintiffs ('268 at 38:5-8) provides that in a "more sophisticated system" (different than the time-stamping system at 37:62-38:4), the user's computer "may extract from the VBI or in-band digital signal *product identification information and include the information with the user's request* to identify the product or service order." This embodiment does not even mention time stamping; and even in this system the information that is extracted from the VBI/digital signal is still *used by the user's computer to identify the order*.

10

**D.    Terms Unique to the '128 Specification**

**1.    "Multimedia informational system" limits Claim 37**

| Amazon and IMDb | Plaintiffs |
|---|---|
| *The preamble is limiting.*  An electronic television program guide system that includes at least program schedule information, television program signals, program ordering, and access to data feeds | *The preamble is not limiting, Moreover, the phrase does not require construction because its meaning is clear. To the extent the Court believes that a construction would be helpful to the jury, however, the phrase should be construed as:*  a system for providing multimedia information. |

Plaintiffs' entire argument against construing "multimedia informational system" in *asserted* Claim 37 relies on *unasserted* Claim 1.[9] The preambles are different. Claim 1 is a method claim and describes a method "*for use in* a multimedia informational system," while Claim 37 is a system claim where the "multimedia informational system" *is* the *type of* system claimed. As explained in Amazon and IMDb's opening brief, the Federal Circuit routinely finds preamble terms appearing before the word "system" to be limiting. (*See* D.I. 86 at 14 & n. 7.)

**2.    "data feed" [Claim 37]**

| Amazon and IMDb | Plaintiffs |
|---|---|
| an updateable transmission of data sent by a television programming provider over television signals (not over the Internet) | an updatable transmission of data from one place to the other |

"[T]he claims cannot be of broader scope than the invention that is set forth in the specification." *On Demand*, 442 F.3d at 1340. Here, the Patent Office correctly determined that the specification does not support "internet delivered data." (D.I. 68 Ex. 8.20 at 7-8 (The specification "*nowhere* . . . mentions or hints that the information is delivered to the users via [the] Internet.").) To obtain the Patent, Applicants amended the claims by removing the phrase, "Internet delivered data." (D.I. 68, Ex. 8.21 at 2-25.) Although the amended Claims included a requirement that a "remote facility" receives Internet data, the Claims recite that the remote facility delivers that data using a "data feed." The "data feed" was an alternative method of

---

[9] Plaintiffs served infringement contentions on July 29, 2011, and December 16, 2011.  They did not assert Claim 1.

delivery to Internet delivery, which is not described (or enabled) in the specification.[10]

### 3.   "a receiver" [Claim 37]

| Amazon and IMDb | Plaintiffs |
|---|---|
| a device which can receive television signals, including data transmitted over those signals. | The portion of the user equipment responsible for accepting data sent from a data provider |

Plaintiffs identify the "75.0 MHz receiver" of Fig. 1 as evidence that a receiver is "something other than a television receiver." (D.I. 84 at 15.) But Amazon and IMDb's construction does not require that the receiver be a "television receiver," only that it "can receive television signals." The "75.0 MHz receiver" receives television signals. The signal 11 going into that receiver "can originate, for example, as part of a standard broadcast, cablecast, or satellite transmission," which are all forms of television signal transmissions. ('128 at 9:62-65.) The data transmitted over signal input 11 "may be modulated and then transmitted on the *cable line*" including "for example" on a 75 MHz operating frequency. (*Id.* at 10:4-7.) The other described method of transmitting the data includes "embedding it in the vertical blanking interval of a program broadcast signal." (*Id.* at 10:8-10.) In FIG 1, the input signal 11 is split and sent to both the "Tuner" 28 (which tunes individual television channels) as well as to the "75.0 MHz Receiver" (which extracts the data containing schedule information). ('128 FIG. 1.)

## III.   '690 Patent

### A.   "package" [Claims 1, 9, 10, 19, 27, and 28]

| Amazon | Plaintiffs |
|---|---|
| a collection of scheduled programs bundled for sale as a single unit | a set of more than one program |

Plaintiffs do not dispute that their construction fails to incorporate the well-understood meaning of "package" as a collection of things offered as a single unit. Their dictionary definition supports this construction of the term. (D.I. 85, Ex. B; *see also* D.I. 87, Exs. E, H.)

---

[10] Plaintiffs' reliance on *Abbott Labs. v. Lupin Ltd.*, 753 F. Supp. 2d 382, 398-99 (D. Del. 2010), is misplaced. In *Abbott*, the PTO did not find that the feature in question was beyond the scope of the patent's disclosure.

Plaintiffs' argument that this construction of the term is "redundant" to other Claim language is surprising because Plaintiffs' proposal includes the word "program," which is already in the Claims. Even though "program" is not inherent in the ordinary meaning of "package," Plaintiffs include it in the definition because they recognize that "package" must be read in light of the specification. As explained in Amazon's opening brief, the specification makes clear that a package of programs consists of programs having assigned scheduled times. (D.I. 86 at 18-19.)

### B. "determine whether the selected program is part of a package" [Claim 1]

| Amazon | Plaintiffs |
|---|---|
| the interactive program guide on the user equipment determines whether the selected program is part of a package | *The phrase does not require construction because its meaning is clear. To the extent the Court believes that a construction would be helpful to the jury, however, the phrase should be construed as:* the interactive program guide determines whether the selected program is part of a package. |

Amazon and IMDb sought a construction of this limitation for Claim 1 separately from Claim 19 because Claim 1 requires the IPG to perform the "determin[ation]," while Claim 19 does not (Claim 19 makes no mention of an IPG). Plaintiffs recognize this distinction, as their construction states that the IPG makes the determination. But their construction does not go far enough. Claim 1 states that the IPG is "implemented" on "user equipment." ('690 at 9:7-9.)

### C. Claim 27 is indefinite

Plaintiffs concede there is "missing antecedent" for "the interactive program guide" limitation in Claim 27. (D.I. 84 at 21.) Nevertheless, they argue that Claim 27 has a "reasonably ascertainable meaning." (*Id.*) But they do not say what the meaning is. During the prosecution of the application of the '690, Applicants *removed* the recitation of "an [IPG] implemented on user television equipment" from what is now independent Claim 19. (Ex. T at 5-6.) Because that language is no longer a requirement of Claim 19, it is unclear what IPG Claim 27 is referencing and where it is implemented (Claim 27 depends from Claim 19). None of the cases Plaintiffs cite involved the deletion of language from the original claims that would have helped provide at

least some context to how the structure lacking antecedent basis fits in the Claim.

## IV.   '643 Patent

### A.   "program guide display" [Claims 1, 5, 7, 11, 13, and 17]

| Amazon | Plaintiffs |
|---|---|
| a display of an application, on a portion of a screen used by a current channel, of program information for one and only one category of video-on-demand programs | a display of an application that provides information to allow users to find programming |

Plaintiffs ignore the "Summary of the Invention," which states that the "present

invention['s]" program guide displays one and only one category of programs:

> The program guide display of the present invention contains information for one
> or more video-on-demand (VOD) programs in a given category. Information
> about video-on-demand programs in other categories is not shown.

('643 at 2:25-33.) The Summary of the Invention also explains that the program guide is

displayed either (1) by shrinking, but not obstructing, the display size of the current channel, or

(2) by superimposing the 'program guide display' on top of the current program. ('643 at 2:34-

44.) In both cases the guide is shown on a portion of the screen used by the current channel.

Plaintiffs' specification citations are consistent with Amazon's construction and the

'643's summary of the "present invention." Column 8, lines 5-15, discloses either shrinking the

screen area of the current program to fit the guide or superimposing the guide over the program.

(D.I. 84 at 24.) In both cases the guide is displayed on a portion of the current channel, as

required by Amazon's construction.

Plaintiffs also argue that Amazon is trying to read into the Claims the preferred

embodiment of limiting the guide to display a single category of programming. But Amazon

relies on the "Summary of Invention's" description of the "present invention," not a preferred

embodiment. Moreover, the excerpt Plaintiffs cite is consistent with Amazon's construction:

"Program guide display 70 preferably contains information about a particular video-on-demand

program. If desired, such video-on-demand programs may be organized according to certain

categories . . . ." ('643 at 8:25-28.) In that example, one program in a category is listed; the

viewer may scroll, one at a time, through all programs in a category. (*Id.* at 8:29-33; 8:63-9:11.)

### B.    "video-on-demand program listing" [Claims 1, 7, and 13]

| Amazon | Plaintiffs |
|---|---|
| A selectable entry of information for a video-on-demand program; information presented on a separate display screen after the entry is selected, about the video-on-demand program, is not a "program listing" | An entry that provides information about a particular video-on-demand program. |

Plaintiffs ignore the prosecution history statements cited in the joint claim construction

charts. (D.I. at 68-1 at 9; D.I. 83-1 at 5.) As explained in Amazon's opening brief, although the

Florin prior art included screens with "information about a particular video-on-demand program"

(Plaintiffs' construction), Applicants represented to the Patent Office that not all of the screens

have program listings. (D.I. 86 at 22.) Applicants agreed with the Patent Office that the screens

with selectable entries included program listings, but argued that, unlike their invention, the

program information on a display screen generated after selecting one of those entries contained

no listings. (*Id.*; D.I. 68, Ex. 8.23 at 57.) Plaintiffs' argument that Amazon's construction of

"video-on-demand program listing" is inconsistent with Amazon's proposal for "program

listing" in the '128 ignores that these are different terms in different Patents. Importantly,

Applicants limited this term's meaning by "clearly characterizing the[ir] invention in a way to try

to overcome rejections based on prior art." *Computer Docking Station Corp. v. Dell, Inc.*, 519

F.3d 1366, 1374 (Fed.Cir.2008).  *See MBO Labs., Inc. v. Becton, Dickinson & Co.*, 474 F.3d

1323, 1330 (Fed. Cir. 2007) ("prosecution arguments . . . indicate . . . what the invention is not.")

Finally, Plaintiffs misread the specification, arguing that it "expressly includes video-on-

demand program listings on additional screens with information beyond the first one." (D.I. 84 at

25.) Plaintiffs identify an excerpt from the Patent referring to "displaying additional screens with

detailed information about [a particular] program . . . ." ('643 at 4:43-47.) But this excerpt does

not call those entries "video-on-demand program listings." (*Id.*) Indeed, the specification describes the "*present invention*" as including a guide with a "display that allows a viewer to browse through and *select* a video-on-demand program from a list …." ('643 at 4:27-32; *see also* 7:50-63, 10:8-15, 10:52, and 11:36.)

### C.    "viewer television equipment" [Claims 1, 7, 13]

| Amazon | Plaintiffs |
|---|---|
| viewer equipment for viewing television programs that includes a television and either a set-top box or circuitry similar to a set-top box | user-controlled equipment for displaying remotely provided audio-visual programming |

Plaintiffs admit they seek to construe "viewer television equipment" so that it is "not limited to specific types of hardware." (D.I. 84 at 22.) This leads to an illogical construction. Plaintiffs' supposed "plain meaning" construction of "viewer *television* equipment" covers equipment that is *incapable* of receiving or displaying *television* programming.[11]  Computers could play audio/video files long before the 1997 filing date of the '690, yet they were not necessarily "television equipment." Contrary to Plaintiffs' characterization, Amazon's construction does not require the equipment to receive *only* television programming. Amazon's construction permits the "television equipment" to be capable of receiving different types of programming—*so long as television programming is one of them.*  Contrary to Plaintiffs' argument, Amazon does not contend that the viewer equipment is limited to a single type of hardware; rather it "may also be any suitable equipment into which circuitry similar to set-top box circuitry has been integrated . . . ." ('643 at 6:37-42.) Amazon's construction takes into account these alternative embodiments.

### D.    The Three "Means-Plus-Function" Limitations [Terms 17 - 19]
#### 1.    Identification of the Function for Term 17 [D.I. 83-1]

Plaintiffs disagree with Amazon's identification of only one of the three functional

---

[11] Plaintiffs' construction also is inconsistent with their own dictionary definitions, which require "transient images." (D.I. 84 at 22.)

limitations:  "means for indicating that a video clip preview is available for a video-on-demand

program that is associated with a video-on-demand program listing *wherein the indication is*

*provided with the video-on-demand program listing . . . .*"  (D.I. 83-1, Term 17.)  Plaintiffs argue

that the "wherein clause" (italicized above) must be ignored because it does not modify the

function, citing *Lockheed Martin Corp. v. Space Systems/Loral, Inc.*, 324 F.3d 1308, 1319 (Fed.

Cir. 2003). But *Lockheed* addresses "whereby" clauses, not "wherein" clauses. *Id.* "Wherein"

clauses are treated differently and are limiting if they "relate back to and clarify what is required

by" the claim language. *Griffin v. Bertina*, 285 F.3d 1029, 1033-34 (Fed. Cir. 2002). Here, the

wherein clause relates back to "means for indicating" and clarifies that the means is "provided

with the video-on-demand program listing" and not something else. The wherein clause does not

describe what inherently occurs when an indication is provided; rather it describes what is

required in *this* Claim. *Cf. Texas Instruments, Inc. v. United States Int'l Trade Comm'n*, 988 F.2d

1165, 1172 (Fed. Cir. 1993) ("The 'whereby/to preclude' clauses of [the] claims merely describe

the result of arranging the components of the claims in the manner recited in the claims . . . .")

### 2.    Interpreting the functions for Terms 17 and 19 [D.I. 83-1]

| **"means for indicating that a video clip preview is available for a video-on-demand program that is associated with a video-on-demand program listing wherein the indication is provided with the video-on-demand program listing" [Term 17]** | |
|---|---|
| **Amazon** | **Plaintiffs** |
| an indication that a video clip preview is available for a video-on-demand program must appear with the video-on-demand program listing for that program | None. |
| **"means for displaying an ordering display screen after the video clip preview of the video-on-demand program is displayed, wherein the ordering display screen provides the viewer with the opportunity to select an ordering option to order the video-on-demand program" [Term 19]** | |
| **Amazon** | **Plaintiffs** |
| following the display of the video clip preview, an option to order the video-on-demand program is presented on a new display screen | None. |

Plaintiffs criticize Amazon's constructions of the identified functions, but offer none of

their own. Plaintiffs do not dispute the substance of Amazon's construction of the "means for

indicating" limitation, (Term 17, D.I. 83-1)—*i.e.*, that the preview indicator and its corresponding VOD listing appear together. Instead, they quibble that the proposal does not "read as a function anymore." (D.I. 84 at 26.) Amazon is not concerned with the form of the construction, so long as the substance is reflected in it. The following alternative wording also captures the concept that the preview indicator and its corresponding VOD listing appear together:  "indicating that a video clip preview is available for a program listing's video-on-demand program, wherein the indication appears with the program listing for that program."

Plaintiffs argue that "displaying an ordering display screen after the video clip preview . . . is displayed . . ." (Term 19, D.I. 83-1) cannot "be brought into sharper focus" by construing it. (D.I. 84 at 28.) But the Claims recite a "main display screen" and an "ordering display screen." ('643 at 11:60-62, 12:8-12.) The specification discloses that the "main display screen" displays the guide and the listings, while the "ordering display screen" is a different screen that appears after the preview. ('643 at 8:5-15, 9:59-62.) The Claim recites that the "ordering display screen" displays "after" the video clip preview is played, and not on the "main screen" with the listings and preview. ('643 at 11:60-62, 12:8-12) Amazon's proposal brings "into sharper focus" that if the "ordering display screen" is presented *before* or *during* the playing of a preview clip, it necessarily does not appear "after" the preview clip, as required by the Claims.

### 3.     There is no disclosure of "corresponding structure"

The parties agree a general processor alone cannot be the corresponding structure to the "means for displaying" limitations (Terms 18-19, D.I. 83-1), and that the structure must also include—at a minimum—any algorithms in the Patent needed for the processor to perform the claimed functions. Tellingly, Plaintiffs' proposal cites to over 180 lines in the patent without identifying any algorithms. (Terms 18-19, D.I. 83-1.) The *sole* support in the specification for the "means for displaying an ordering display screen after the video clip preview . . . is displayed . .

." function does not even describe an ordering screen, let alone an algorithm:

> After the video clip preview has been provided, the viewer may be presented with a display screen inquiring whether the viewer wants to order that program (not shown). The viewer may accept or decline this offer by pressing any appropriate key on remote 50 (FIG. 5) or by using an on screen button (*not shown*).

('643 at 9:59-64.) Plaintiffs ignore this text and instead cite column 10:19-50, (D.I. 84 at 28), which describes what appears *after* a viewer elects to order a program from a "detailed information screen (*not shown*)." ('643 at 10:15-19.) This "detailed information" ordering screen is *different* from the ordering screen that appears after the preview—it is the screen that allows a user to browse for "more information about a particular program . . . ." (*Compare id. with* 9:9:59-62.) Plaintiffs' citation to col. 10: 23-50 also is irrelevant because the excerpt does not describe the "ordering screen"—it describes the screens shown *after* a video is selected in an ordering screen. (*Compare* '643 10:17-22 *with* 10:23-50.) The ordering screen is "not shown." ('643 at 10:15-19.)

Even if Plaintiffs' citations did relate to the claimed function, they do not disclose the algorithm for performing it, but rather "restate the functions associated with the means-plus-function limitation . . . ." Ex. U, *Noah Systems v. Intuit Inc.*, No. 2011-1390, Slip. Op. at 24 (Fed. Cir. Apr. 9, 2012). The citations relate to the "results" of the algorithm—*i.e.*, the displayed user interface—not the "step-by-step procedure" for how the processor should be programmed to accomplish these results. *Ergo Licensing v. CareFusion 303*, 2012 WL 987833, at *4 (Fed. Cir. Mar. 26, 2012); *Aristocrat Techs. Australia Pty Ltd. v. Int'l Game Tech.*, 521 F.3d 1328, 1334-35 (Fed. Cir. 2008).

Finally, Plaintiffs fail to explain how a properly programmed processor can perform the claimed "displaying" functions without other structures in the Patent, including a set-top box or equipment having similar circuitry, and a television. ('643 at 1:44-57, 6:37-42, 7:7-16, 7:30-33,

8:5-6, Ex. 2.)  Indeed, the specification never even links a processor to the displaying functions.

## V.   '078 Patent

### A.   "viewing location" [Claims 1-7]

| IMDb | Plaintiffs |
|---|---|
| residence or other building where a television signal is received from a programming source | residence or other building at which a television signal can be received |

Plaintiffs incorrectly assert that IMDb's proposal, which requires the signal "be received"

in the building, would exclude a preferred embodiment. They point to FIG 7, where the viewer's

computer is a "large distance" from his or her VCR, in order to purportedly demonstrate that the

viewer computer need not be in a building that "receive[s]" the signal. (D.I. 84 at 29; '078 at

2:58-62, 6:13-23)  But the "large distance" is "another room of the house." ('078 at 6:15-16.)

Nothing in the Patent suggested that people would use the invention to program their VCRs, for

example, from work. More importantly, IMDb's construction is taken from the explicit language

of Claim 1, which requires the "television viewing locations" to "*receive* television programming

*from a source of such programming*." ('078 at 6:38-40.)

### B.   "modem" [Claims 1, 6, 8]

| IMDb | Plaintiffs |
|---|---|
| hardware that translates audio signals transmitted over a telephone line into digital information for a computer and vice versa | a device that converts (modulates and demodulates) a data signal for receipt and transmission over a communication network such as a public switched telephone network, a wireless or cellular network, or a cable network |

The parties submitted competing dictionary definitions. The '078 uses "modem"

consistent with IMDb's dictionaries to describe a device used to translate signals "over phone

lines . . . ." ('078 at 3:56-58.) Plaintiffs point to the Patent's disclosure of communicating over

cablecast or broadcast. But these modes of communication, along with mailing out diskettes, are

identified in the Patent as *alternatives* to the use of a modem, not a modem itself. (*Id.* at 3:62-

67.)

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Michael J. Flynn*

Karen Jacobs Louden (#2881)
Michael Flynn (#5333)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
klouden@mnat.com
mflynn@mnat.com

*Attorneys for Defendants Amazon.com, Inc.
and IMDb.com, Inc.*

OF COUNSEL:

Scott E. Gant
D. Michael Underhill
Neal Hannan
BOIES, SCHILLER & FLEXNER LLP
5301 Wisconsin Avenue, NW
Washington, DC 20015
(202) 237-2727

Eric J. Maurer
MAURER PLLC
5335 Wisconsin Avenue, NW
Suite 440 PMB #: 4154
Washington, DC 20015
(202) 417-3804

April 9, 2012

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 9, 2012, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send electronic notification of such filing to all registered participants.

Additionally, I hereby certify that true and correct copies of the foregoing were caused to be served on April 9, 2012, upon the following individuals in the manner indicated:

Frederick L. Cottrell, III        BY ELECTRONIC MAIL
Anne Shea Gaza
Jason J. Rawnsley
Richards, Layton & Finger, PA
One Rodney Square
920 N. King Street
Wilmington, DE 19801

Daralyn J. Durie        BY ELECTRONIC MAIL
Ragesh K. Tangri
Clement S. Roberts
Eugene Novikov
Jesse Geraci
Durie Tangri LLP
217 Leidesdorff Street
San Francisco, CA 94111-3007

*/s/ Michael J. Flynn*
Michael J. Flynn (#5333)