IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| UNITED VIDEO PROPERTIES, INC.,<br>TV GUIDE ONLINE, LLC, and<br>TV GUIDE ONLINE, INC.,<br><br>        Plaintiffs,<br><br>    v.<br><br>AMAZON.COM, INC., and IMDB.COM,<br>INC.,<br><br>        Defendants. | :<br>:<br>:<br>:<br>:<br>:<br>:     Civil Action No. 11-003-RGA<br>:<br>:<br>:<br>:<br>: |

## MEMORANDUM OPINION

Frederick L. Cottrell, III, Anne Shea Gaza, RICHARDS, LAYTON & FINGER, P.A.,
Wilmington, DE; Daralyn J. Durie (argued), Ragesh K. Tangri, Clement S. Roberts (argued),
Eugene Novikov (argued), DURIE TANGRI LLP, San Francisco, CA.

    Attorneys for Plaintiffs United Video Properties, Inc., TV Guide Online, LLC, and TV
    Guide Online, Inc.

Karen Jacobs Louden (argued), MORRIS, NICHOLS, ARSHT & TUNNELL, LLP, Wilmington,
DE; D. Michael Underhill (argued), BOIES, SCHILLER & FLEXNER LLP; Eric J. Maurer
(argued), MAURER, PLLC, Washington, DC.

    Attorneys for Defendants Amazon.com, Inc. And IMDb.com, Inc.

 June __, 2012

ANDREWS, U.S. DISTRICT JUDGE:

Plaintiffs United Video Properties, Inc., TV Guide Online, LLC, and TV Guide Online, Inc. (collectively "Plaintiffs") filed this patent infringement action against Defendants Amazon.com, Inc. and IMDb.com, Inc. (collectively "Defendants" or "Amazon"). (D.I. 1). Plaintiffs allege that Amazon and IMDb infringe U.S. Patent Nos. 5,988,078 ("the '078 Patent"); 6,275,268 ("the '268 Patent"); 6,769,128 ("the '128 Patent"); 7,493,643 ("the '643 Patent"); and 7,603,690 ("the '690 Patent"). (D.I. 1). Presently before the Court is the matter of claim construction. Briefing on claim construction was completed on April 9, 2012, and the Court held a *Markman* hearing on April 27, 2012.

## I.    CLAIM CONSTRUCTION

Claim construction is a question of law. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 977-78 (Fed. Cir. 1995), *aff'd,* 517 U.S. 370, 388-90 (1996). When construing patent claims, a court considers the literal language of the claim, the patent specification and the prosecution history. *Id.* at 979. Of these sources, the specification is "always highly relevant to the claim construction analysis. Usually it is dispositive; it is the single best guide to the meaning of a disputed term." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312-17 (Fed. Cir. 2005) (citing *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)). However, "[e]ven when the specification describes only a single embodiment, the claims of the patent will not be read restrictively unless the patentee has demonstrated a clear intention to limit the claim scope using 'words or expressions of manifest exclusion or restriction.'" *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 906 (Fed. Cir. 2004) (quoting *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1327 (Fed. Cir. 2002)).

2

A court may consider extrinsic evidence, including expert and inventor testimony, dictionaries and learned treatises, in order to assist it in understanding the underlying technology, the meaning of terms to one skilled in the art and how the invention works. *Phillips*, 415 F.3d at 1318-19; *see also Markman*, 52 F.3d at 979-80. However, extrinsic evidence is considered less reliable and less useful in claim construction than the patent and its prosecution history. *Phillips*, 415 F.3d at 1318-19 (discussing "flaws" inherent in extrinsic evidence and noting that extrinsic evidence "is unlikely to result in a reliable interpretation of a patent claim scope unless considered in the context of intrinsic evidence").

In addition to these fundamental claim construction principles, a court should also interpret the language in a claim by applying the ordinary and accustomed meaning of the words in the claim. *Envirotech Corp. v. Al George, Inc.*, 730 F.2d 753, 759 (Fed. Cir. 1984). If the patent inventor clearly supplies a different meaning, however, then the claim should be interpreted according to the meaning supplied by the inventor. *Markman*, 52 F.3d at 980. If possible, claims should be construed to uphold validity. *In re Yamamoto*, 740 F.2d 1569, 1571 (Fed. Cir. 1984).

### A.    Claim Terms with Agreed-Upon Claim Constructions

The parties agreed upon the constructions of various terms, and the Court accepts them as detailed below for purposes of this litigation.

| Claim Term or Phrase: | "a prerecorded video" ['268 Patent, Claims 2-4] |
|---|---|
| **Agreed-Upon Construction:** | a video contained on a tangible medium |
| **Claim Term or Phrase:** | "interactive" ['128 Patent, Claims 37, 47] |
| **Agreed-Upon Construction:** | capable of responding to user input |

3

| Claim Term or Phrase: | "microcontroller" ['128 Patent, Claims 37-39, 47] |
|---|---|
| Agreed-Upon Construction: | a hardware processor, that is part of the user equipment, which is programmed to perform specific tasks |

### B.   Claims in Dispute

#### 1.   The '078 Patent

The '078 Patent describes the use of a personal computer "to assist in the selection of television programs to be recorded at future times and to control a video tape recorder to implement the selected recordings." '078 Patent at [57].

#### a.   "viewing location" [Claims 1-7]

| Plaintiffs' Proposed Construction: | residence or other building at which a television signal can be received |
|---|---|
| IMDb's Proposed Construction: | residence or other building where a television signal is received from a programming source |
| Court's Construction: | residence or other building where a television signal is received from a programming source |

The only dispute between the parties is whether a "viewing location" is a place where a television signal *can be* received or *is* received. The Court construes the term "viewing location" as a "residence or other building where a television signal is received from a program source." Claim 1 describes "a television distribution arrangement wherein a plurality of geographically dispersed television viewing locations receive television programming from a source of such programming." '078 Patent col. 6 ll.37-40. This usage makes clear that a "viewing location" receives television signals, which come from a programming source.

Plaintiffs assert that IMDb's construction would exclude a preferred embodiment because the specification discloses an embodiment where "the personal computer and video recorder are

4

located remotely from one another and the output signals from the personal computer are

transmitted by radio to an infrared transmitter for control of the video recorder." '078 Patent col.

2 ll.58-62. Thus, Plaintiffs assert that the computer does not need to be in the same building as

the VCR that receives the television signal because the specification states that the VCR can be

located "a large distance" from the computer that receives the schedule information. *Id.* at col. 6

ll. 13-15. The specification, however, does not suggest that the computer could be in a different

building from the VCR but instead gives the example of the VCR being "in another room of the

house."

**b.** **"modem"** [Claims 1, 6, and 8]

| **Plaintiffs' Proposed Construction:** | a device that converts (modulates and demodulates) a data signal for receipt and transmission over a communication network such as a public switched telephone network, a wireless or cellular network, or a cable network |
|---|---|
| **IMDb's Proposed Construction:** | hardware that translates audio signals transmitted over a telephone line into digital information for a computer and vice versa |
| **Court's Construction:** | hardware that translates audio signals transmitted over a telephone line into digital information for a computer and vice versa |

The Court construes the term "modem" as "hardware that translates audio signals

transmitted over a telephone line into digital information for a computer and vice versa." This

definition is consistent with Figure 1 and the specification. Figure 1 of the '078 Patent shows a

modem communicating over telephone lines. The specification states that "[t]he operator of the

personal computer system may communicate with the schedule source over phone lines using

modems at each end." '078 Patent col. 3 ll.56-58.

In addition, because the '078 Patent claims priority to March 9, 1992 (D.I. 86 at 30), the correct meaning of "modem" is the one that existed at that time. *See, e.g.*, *M.I.T. v. Abacus Software*, 462 F.3d 1344, 1353 (Fed. Cir. 2006) (limiting the definition of "scanner" to what it meant in 1982); *see also Phillips*, 415 F.3d at 1312-13. Multiple dictionaries published shortly after 1992 confirm that a modem is a device used to convert signals for transmission over telephone lines. *See, e.g.*, *Webster's New World Dictionary of Media and Communications* 380 (1996) (defining modem as "a device that converts a digital signal to an analog signal and vice versa, often used to communicate signals from a telephone line to a computer"); Keith Jack & Vladimir Tsatsulin, *Dictionary of Video and Television Technology* 184 (2002) (defining modem as "a device that transforms a typical two-level computer signal into a form suitable for transmission over a telephone line"); Harry Newton, *Newton's Telecom Dictionary* 731 (9th ed. 1995) (defining modem as "[e]quipment which converts digital signals to analog signals and vice-versa. Modems are used to send data signals (digital) over the telephone network, which is usually analog."); Philip E. Margolis, *Random House Personal Computer Dictionary* 316 (2d ed. 1996) (defining modem as "a device that enables a computer to transmit data over telephone lines").

### 2.   The '268 and '128 Patents

The '268 Patent is directed to "[a]n electronic program schedule system with product ordering capability." '268 Patent at [57]. Similarly, the '128 Patent is directed to "[a]n electronic program schedule system with access to both stored television program schedule information and data feeds containing status information for live programs such as sporting events." '128 Patent at [57].

6

        **a.**      **"displaying"** ['268 Patent, Claims 1-5, 7, 9, 11, 36] **and "displaying . . . with the electronic television program guide"** ['268 Patent, Claims 1, 36]

| **Plaintiffs' Proposed Construction:** | presenting visual information |
|---|---|
| **Amazon's and IMDb's Proposed Construction:** | using the electronic television program guide to visually overlay on a screen |
| **Court's Construction:** | using the electronic television program guide to visually overlay on a screen |

"Displaying" must be interpreted in the context of the claim, not in isolation. *On Demand Machine Corp. v. Ingram Indus.*, 442 F.3d 1331, 1344 (Fed. Cir. 2006). The Court construes the term "displaying . . . with the electronic television program guide" as "using the electronic television program guide to visually overlay on a screen." "Displaying . . . with the electronic television program guide" requires that the electronic television program guide be used to perform the displaying, which is consistent with the dictionary definition of "with." In addition, in every instance in which the patent describes an electronic television program guide's information "display," the information is in an overlaying relationship with a television program appearing on a television. *See e.g.*, '268 Patent col. 5 ll.41-47; *id.* at col. 5 ll.47-53; *id.* at col. 10 ll.22-28.

    Plaintiffs argue that the word "with" cannot be interpreted to mean "using" because "using" appears in other portions of the claims. However, other uses of the word "with" in the Patent make clear that "with" means "using" in the context of this limitation. For example, Claim 1 recites a method "for allowing a user to order products *with* an electronic television program guide," and later recites almost the exact same language, except with the word "using" instead of "with": "allowing a user to order the product . . . *using* the . . . electronic television

7

guide."

b.      **"program listings"** ['268 and '128 Patents]

| Plaintiffs' Proposed Construction: | entries that provide information about particular programs |
|---|---|
| Amazon's and IMDb's Proposed Construction: | entries that provide information about television programs, including current and future air times |
| Court's Construction: | entries that provide information about particular television programs |

The Court construes the term "program listings" as "entries that provide information about particular television programs." Many of the claims of the '268 and '128 Patents call for "program listings." For example, Claim 1 of the '268 Patent calls for "displaying program listings" whereas Claim 2 of the '128 Patent calls for "program schedule information compris[ing] program listings." The specification of both patents indicates that program listings are both part of the electronic program guide and provide data about particular programs. *See, e.g.*, '128 Patent col. 4 ll.59-60 ("program listings included in the electronic program guide"); '268 Patent col. 4 ll.25-27 (same); '128 Patent col. 38 ll.15-20 ("program listings data for each of the programs"); '268 Patent col. 35 ll.16-19 (same).

Amazon's proposed construction would require that the program listings include "current and future air times." However, there is nothing about the ordinary language of the term "program listings" that requires them to contain any particular types of information about the listed programs. In addition, the specification makes clear that "program listings" need not include "current and future air times." For example, Figure 22 of the '268 Patent includes program listings but not "current and future air times." '268 Patent Fig. 22; *id.* at col 7. ll.1-3.

8

c.   **"electronic television program guide"** ['268 and '128 Patents]

| | |
|---|---|
| **Plaintiffs' Proposed Construction:** | an electronic application that provides information to allow users to find television programming |
| **Amazon's and IMDb's Proposed Construction:** | an application that provides program schedule and channel information for a television receiver<br><br>\*When used in the '268 Patent claims, also "the electronic television program guide" is "executed on a user-controlled data processor." |
| **Court's Construction:** | an electronic application that provides television program schedule and channel information |

The Court construes the term "electronic television program guide" as "an electronic application that provides television program schedule and channel information." The "Background of the Invention" states that "this invention relates to an electronic program schedule system, which provides a user with schedule information for broadcast or cablecast programs viewed by the user on a television receiver." '268 Patent col. 1 ll.13-16. The next sentence explains "[m]ore particularly, it relates to an electronic program guide . . .." Thus, an "electronic program guide" is a type of electronic program schedule system described in the previous sentence – *i.e.*, at a minimum, it must include schedule information for programs viewed on a television receiver.

This construction is also consistent with the patents' description of prior art "electronic program guides." The prior art electronic program guides all included schedule information for television "channels." '268 Patent col. 1 ll.22–33; '128 Patent col. 1 ll.23-34. The patents claimed to introduce an improved electronic program guide that, like the prior art, still included schedule information for television channels:

[The] objects of the invention are achieved by an electronic
program schedule system which includes a receiver for receiving
broadcast, satellite or cablecast television programs for a plurality
of television channels and a tuner for tuning a television receiver to
a selected one of the plurality of the television channels. A data
processor receives and stores in a memory television program
schedule information for a plurality of television programs to
appear on a plurality of television channels. A television receiver
is used to display the television programs and television program
schedule and other information.

'268 Patent col. 5 ll.27-41; '128 Patent col. 6 ll.1-15. All examples of the electronic program

guides in the patents include schedule information for television channels.

> d.      **"standardized product"** ['268 Patent, Claim 34]

| **Plaintiffs' Proposed Construction[1]:** | a category of product (such as a DVD or VHS tape) that is the same for each of multiple programs |
|---|---|
| **Amazon's and IMDb's Position:** | a program-associated product whose availability is determinable solely from information identifying the product |
| **Court's Construction:** | a category of product (such as a VHS tape or transcript) that is the same for each of multiple programs |

The Court construes the term "standardized product" as "a category of product (such as a

VHS tape or transcript) that is the same for each of multiple programs." Claim 34 depends from

Claim 1 and requires "allowing the user to order a standardized product from the electronic

television program guide." The specification describes a mechanism by which the demands on

system memory can be reduced by standardizing the types of products that are available. '268

---

[1]       Initially, Plaintiffs proposed to construe the term "standardized product" as "the
order placed by the user with the electronic television guide is time and date stamped" and
Amazon asserted that the term was indefinite. During oral argument, the Court noted that it was
unlikely to find that the term is indefinite but also that it was unsatisfied with Plaintiffs' proposed
construction. The parties submitted these revised constructions on May 7, 2012. (D.I. 119 &
120).

Patent col. 36 ll.28-35.  Accordingly, a system has "standardized products" where it lists generic

product types (such as videocassettes) that are associated with, and can be purchased for,

multiple video programs.

> e.    **"time and date stamping an order placed by the user with the electronic television program guide" ['268 Patent, Claim 51]**

| | |
|---|---|
| **Plaintiffs' Proposed Construction:** | the order placed by the user with the electronic television program guide is time and date stamped |
| **Amazon's and IMDb's Proposed Construction:** | recording, with the electronic television program guide executed on the user-controlled data processor, the time and date of the order as reflected on the user's guide application |
| **Court's Construction:** | the order placed by the user with the electronic television program guide is time and date stamped |

Claim 51 calls for the method of Claim 1 "further comprising time and date stamping an

order placed by the user with the electronic television program guide."  The Court construes the

term "time and date stamping an order placed by the user with the electronic television program

guide" as "the order placed by the user with the electronic television program guide is time and

date stamped."  The phrase "time and date stamping" describes an action performed on "an order

placed by the user with the electronic program guide."  The prepositional phrase "with the

electronic television program guide" properly should be read as modifying the nearest antecedent

(the noun "order").  For example, in *HTC Corp. v. IPCom GmbH & Co., KG*, 667 F.3d 1270,

1274 (Fed. Cir. 2012), the Federal Circuit construed the phrase "[a] mobile station for use with a

network including a first base station and a second base station that achieves a handover . . . ."

The court found that the district court had erred in finding that the phrase beginning with

"including" modified the "mobile station" rather than the "network" because "[m]odifiers should

11

be placed next to the words they modify . . .. A reader, therefore, may assume that the phrase

beginning with 'including' and the clause beginning with 'that achieves' modify 'network.'" *Id.*

at 1274-75.

|  | **f.** | **"multimedia informational system"** ['128 Patent, Claim 37] |

| **Plaintiffs' Proposed Construction:** | *The preamble is not limiting.  Moreover, the phrase does not require construction because it is clear.*<br><br>*To the extent the Court believes that a construction would be helpful to the jury, however, the phrase should be construed as:*<br><br>a system for providing multimedia information |
|---|---|
| **Amazon's and IMDb's Proposed Construction:** | *The preamble is limiting.*<br><br>an electronic television program guide system that includes at least program schedule information, television program signals, program ordering, and access to data feeds |
| **Court's Construction:** | a system for providing multimedia information |

The Court construes the term "multimedia informational system"as "a system for

providing multimedia information." This construction is consistent with the term's plain

meaning. In addition, the preamble of Claim 37 is not limiting, as Amazon argues. The

preamble calls for "[a] multimedia informational system for displaying program schedule

information and Internet data comprising . . .." The claim then goes on to enumerate all of the

structures that make up the claimed system and all of the structures that are necessary to perform

the functions recited in the claims. The body of the claim is, therefore, "a structurally complete

invention" without reference to the preamble. *Catalina Mktg. Int'l, Inc. v. Coolsavings.com,*

*Inc.*, 289 F.3d 801, 808 (Fed. Cir. 2002) ("a preamble limits the invention if it recites essential

structure or steps, or if it is 'necessary to give life, meaning and vitality' to the claim.

Conversely, a preamble is not limiting 'where a patentee defines a structurally complete

invention in the claim body and uses the preamble only to state a purpose or intended use for the

invention.'").

g.    **"data feed"** ['128 Patent, Claim 37]

| **Plaintiffs' Proposed Construction:** | an updatable transmission of data from one place to the other |
|---|---|
| **Amazon's and IMDb's Proposed Construction:** | an updatable transmission of data sent by a television programming provider over television signals (not over the internet) |
| **Court's Construction:** | an updatable transmission of data sent by a television programming provider over television signals |

The Court construes the term "data feed" as "an updatable transmission of data sent by a

television programming provider over television signals." The prosecution history makes clear

that this term does not include internet-delivered data. During the application process, the

applicants sought claims directed in part to receiving "internet-delivered" data. The Patent

Office rejected those claims because the "internet-delivered data" limitation "is not part of the

applicants' original disclosure":

> The applicants . . . don't prove that the "Internet delivered data" is
> actually delivered to users via Internet as now claimed by the
> applicants. In fact, in page 63, lines 15-24 of the specification,
> applicants clearly state that the data feed is a dedicated channel at
> the cable head-ends and DBS providers, which is not considered an
> Internet service for providing additional information to the user
> ends. . . . [N]owhere in the specification mentions or hints that the
> information is delivered to users via Internet.

(D.I. 68 Ex. 8.20 at 7-8).

In response to the Patent Office's rejection, the applicants amended all claims to: 1)

13

remove any claim to "Internet delivered data," and 2) add limitations reciting that Internet data is

received by a remote facility and then it populates a "data feed." Although the remote facility

can receive Internet data, the applicants disclaimed delivery of the data over the Internet as being

outside the scope of their invention. Therefore, the claimed "data feed" is not transmitted over

the internet.

        **h.**     **"video display generator"** ['128 Patent, Claims 37-39, 48-51, and 53]

| | |
|---|---|
| **Plaintiffs' Proposed Construction:** | a component that generates a video display |
| **Amazon's and IMDb's Proposed Construction:** | a component that combines two or more input signals into one output television signal for display, where the information from the input signals is overlayed in the one output television signal |
| **Court's Construction:** | a component that generates a video display |

The Court construes the term "video display generator" as "a component that generates a

video display." Amazon asserts that the term "video display generator" outputs "television

signals." However, Claim 37 contains no such limitation whereas Claim 41 calls for the "video

display generator to display a television program of [one] of the television program signals." It is

improper to import a requirement that the "video display generator" output television signals

because doing so would ignore the fact that some, but not all, of the claims call for the generator

to perform that function. *See Arlington Indus., Inc. v. Bridgeport Fittings, Inc.*, 632 F.3d 1246,

1254 (Fed. Cir. 2011).

        **i.**     **"a receiver"** ['128 Patent, Claim 37]

| | |
|---|---|
| **Plaintiffs' Proposed Construction:** | the portion of the user equipment responsible for accepting data sent from a data provider |

14

| Amazon's and IMDb's Proposed Construction: | a device which can receive television signals, including data transmitted over those signals |
|---|---|
| Court's Construction: | a device which can receive television signals, including data transmitted over those signals |

The Court construes the term "receiver" as "a device which can receive television signals including data transmitted over those signals." The '128 specification describes the receiver as being capable of receiving television signals. *See, e.g.*, col. 1 ll.11-14; col. 6 ll.1-4; FIG. 1, col. 9 ll.58-65. Both the 75.0 MHz receiver and the TV Receiver of FIG. 1 receive a television signal as an input. Although there are "numerous ways in which data feeds may be provided" to users, each of those ways is over a television provider's signal. *See, e.g.*, col. 46 ll.5-24. The receiver, at a minimum, must receive television signals.

        **j.**      **"program schedule information"** ['268 and '128 Patents]

| Plaintiffs' Proposed Construction: | information about the scheduling of one or more programs |
|---|---|
| Amazon's and IMDb's Proposed Construction: | information that includes the current and future air times of programs on television channels |
| Court's Construction: | information about the scheduling of television programs |

The Court construes the term "program schedule information" as "information about the scheduling of television programs." The patent describes the "invention" as using "television program schedule information for a plurality of television programs to appear on the plurality of television channels." '128 Patent col. 6 ll.7-9; '268 Patent col. 5 ll.32-34; *see also* '128 Patent col. 29 ll.31-36 ("displaying schedule information for all available channels").

### 3.    The '643 Patent

The '643 Patent is directed to interactive television program guides, and more

specifically, to "television program guides that allow viewers to browse video-on-demand programs." '643 Patent col. 1 ll.12-14.

a.   **"viewer television equipment"** [Claims 1, 7, and 13]

| | |
|---|---|
| **Plaintiffs' Proposed Construction:** | user-controlled equipment capable of displaying remotely provided audio-visual programming |
| **Amazon's Proposed Construction:** | viewer equipment for viewing television programs that includes a television and either a set-top box or circuitry similar to a set-top box |
| **Court's Construction:** | viewer equipment capable of displaying remotely provided television programming by means of either a set-top box or circuitry similar to a set-top box |

The Court construes the term "viewer television equipment" as "viewer equipment capable of displaying remotely provided television programming by means of either a set-top box or circuitry similar to a set-top box." This construction is consistent with the ordinary meaning of television. *See, e.g.*, *Webster's Ninth New Collegiate Dictionary* 1213 (9th ed. 1991) ("an electronic system of transmitting transient images . . . together with sound over a wire or through space by apparatus that converts light and sound into electrical waves and reconverts them into visible light rays and audible sound." This construction is also consistent with the specification of the '643 Patent, which sets forth:

> Viewer television equipment 30 typically contains set-top boxes 34. Viewer television equipment 30 may also be any suitable equipment into which circuitry similar to set-top box circuitry has been integrated, such as an advanced television receiver (such as HDTV), a personal computer television (PC/TV), or any suitable television equipment.

'643 Patent col. 6 ll.37-42. This quotation encompasses all alternative embodiments of the invention.

16

### b. **"program guide display"** [Claims 1, 5, 7, 11, 13, and 17]

| | |
|---|---|
| **Plaintiffs' Proposed Construction:** | a display of an application that provides information to allow users to find programming |
| **Amazon's Proposed Construction:** | a display of an application, on a portion of a screen used by a current channel, of program information for one and only one category of video-on-demand programs |
| **Court's Construction:** | a display of an application that provides program information for one category of video-on-demand programs at a time |

The Court construes the term "program guide display" as "a display of an application that provides program information for one category of video-on-demand programs at a time." In the "Summary of the Invention," the patentee defines the "program guide display" as one that shows video-on-demand program listings for only a single category:

> The program guide display of the present invention contains information for one or more video-on-demand (VOD) programs in a given category. Information about video-on-demand programs in other categories is not shown.

'643 Patent col. 2 ll.25-28. The specification further provides that "[p]rogram guide display 70 preferably contains information about a particular video-on-demand program. If desired, such video-on-demand programs may be organized according to certain categories." '643 Patent col. 8 ll.25-28. In this example, one program in a category is listed; the viewer may scroll, one at a time, through all programs in a category. *Id.* at col. 8 ll.29-33; *id.* at col 8 l.63 to col. 9 l.11.

### c. **"video-on-demand program listing"**

| | |
|---|---|
| **Plaintiffs' Proposed Construction:** | an entry that provides information about a particular video-on-demand program |

| **Amazon's Proposed Construction:** | ***video-on-demand program listing [in a program guide display]:*** A selectable entry of information for a video-on-demand program; information presented on a separate display screen after the entry is selected, about the video-on-demand program, is not a "program listing" |
|---|---|
| **Court's Construction:** | an entry that provides information about a particular video-on-demand program |

The Court construes the term "video-on-demand program listing" as "an entry that provides information about a particular video-on-demand program."

Amazon asserts that Plaintiffs' proposed construction is inconsistent with the file history because the applicant distinguished his invention during prosecution by defining "program listing" to exclude "information presented on a separate display screen after the entry is selected." In particular, Amazon points to the fact that the applicant told the examiner that Figure 38 from the Florin patent (U.S. Patent No. 5,583,560) was not a part of the "program listings." (D.I. 86 at 22). Figure 38, however, is not part of the "program listings" because it does not contain "information about a particular video-on-demand program." Rather, Figure 38 depicts only "a preview icon 382, a credit icon 384, an info icon 386, and a ticket icon 388 ... displayed, along with a preview trailer, which is continuously looping." U.S. Patent No. 5,583,660 col. 22 ll.21-24. There is no information about the program in that screen.

Amazon argues that Figure 38 contains information "including the availability of a preview clip and the option to purchase" (D.I. 86 at 22), but neither is information about the program. First, the claims require that preview-clip indicator must be shown with the program listing. Thus, a preview-clip indicator is not information provided by a program listing, but instead something that the claims require must be provided with a program listing. Similarly,

18

Figure 38 does not contain any information about a purchase option, just an icon that will bring the user to a different screen that contains purchase information. Thus, as the applicant told the examiner, Figure 38 does not show an "indicator that a video clip preview is available for the VOD program [that] is 'displayed *with* the video-on-demand program listing.'" (D.I. 68-6 at 178). Instead, the clip in Figure 38 is displayed alone and without any information about the video-on-demand program.

### d.    The "Means-Plus-Function" Terms

The parties agree that the following three terms are in a "means-plus-function" format and therefore subject to 35 U.S.C. § 112 ¶ 6. Means-plus-function limitations are interpreted in two steps. First, the Court identifies and construes the claimed function. *Lockheed Martin v. Space Systems/Loral Inc.*, 324 F.3d 1308, 1319 (Fed. Cir. 2003). Second, the Court identifies the "corresponding" structures disclosed in the specification and which "the specification or prosecution history clearly links or associates that structure to the function . . .." *Mettler-Toledo, Inc. v. B-Tek Scales, LLC*, 671 F.3d 1291, 1296 (Fed. Cir. 2012); *Medtronic, Inc. v. Advanced Cardiovascular Sys., Inc.*, 248 F.3d 1303, 1311-12 (Fed. Cir. 2001).

Even if the patent discloses a structure that is capable of performing a claimed function, it is not a "corresponding structure" unless the specification clearly links it to that function. *Medtronic*, 248 F.3d at 1312. And if there is no "corresponding structure," the claim is invalid for indefiniteness under 35 U.S.C. § 112 ¶ 2. *Aristocrat Techs. Australia Pty Ltd. v. Int'l Game Tech.*, 521 F.3d 1328, 1331 (Fed. Cir. 2008); *Mettler-Toledo*, 671 F.3d at 1296.

> i.    "means for indicating that a video clip preview is available for a video-on-demand program that is associated with a video-on-demand program listing

19

**wherein the indication is provided with the video-on-demand program listing"**
[Claim 1]

| | |
|---|---|
| **Plaintiffs' Proposed Construction:** | <u>Function (ID)</u>: Indicating that a video clip preview is available for a video-on demand program that is associated with a video-on-demand program listing.<br><br><u>Function (Construction)</u>:<br><br>*The phrase does not require construction because its meaning is clear.*<br><br><u>Structure</u>:  An icon or its equivalents as described in, for example, col. 8, lines 32-39, col. 9, lines 48-51, and/or Figures 6A, 6B and related text from the specification. |
| **Amazon's Proposed Construction:** | <u>Function (ID)</u>:  indicating that a video clip preview is available for a video-on-demand program that is associated with a video-on-demand program listing wherein the indication is provided with the video-on-demand program listing<br><br><u>Function (Construction)</u>: an indication that a video clip preview is available for a video-on-demand program must appear with the video-on-demand program listing for that program<br><br>["program listing" defined above]<br><br>["video-on-demand program listing" defined above]<br><br><u>Structure</u>:<br><br>Includes an icon on a display and a set-top box with a processor; but the patent does not disclose the computer algorithm needed to instruct the processor to perform the claimed function.<br><br>•       Claim is indefinite because there is no structure clearly linked to the claimed function and the |

20

|  | patent does not disclose an algorithm for performing claimed function. |
|---|---|
| **Court's Construction:** | Function (ID): Indicating that a video clip preview is available for a video-on demand program that is associated with a video-on-demand program listing. <br><br> Function (Construction): <br><br> *The phrase does not require construction because its meaning is clear.* <br><br> Structure: An icon or its equivalents. |

Because the parties agree that this term is a means-plus-function term, the Court will

construe it accordingly, with the function being "indicating that a video clip preview is available

for video-on-demand program that is associated with a video-on-demand program listing," and

the associated structure being "an icon or its equivalents."

Amazon's proposed construction improperly appends the subsequent "wherein" clause to

the function. However, the "wherein" clause does not modify the function. Instead, it states a

separate limitation that acts on the result: the indication. *See Lockheed Martin Corp. v. Space

Systems/Loral, Inc.*, 324 F.3d 1308, 1319 (Fed. Cir. 2003) ("The function is properly identified as

the language after the 'means for' clause and before the 'whereby' clause, because a whereby

clause that merely states the result of the limitations in the claims adds nothing to the substance

of the claim.").

Amazon also argues that the '643 specification does not clearly link structure for

performing any of the three means-plus-function limitations because an "icon" is an image, not a

structure. Amazon does not otherwise dispute that the icon is clearly linked as a means for

indicating that a preview clip is available. And where the "functions can be achieved by any

21

general purpose computer without special programming . . . it [is] not necessary to disclose more

structure than the general purpose processor that performs those functions." *In re Katz*

*Interactive Call Processing Patent Litig.*, 639 F.3d 1303, 1316 (Fed. Cir. 2011). In *Katz*, the

Federal Circuit held that "the functions of 'processing,' 'receiving,' and 'storing' are coextensive

with the structure disclosed, *i.e.*, a general purpose processor." *Id.* Similarly , "displaying" an

icon is a common function that can be achieved by any general purpose computer without special

programming. Thus, the '643 Patent discloses sufficient corresponding structure.

ii.    **"means for displaying the video clip preview on
the viewer television equipment"** [Claim 1]

| **Plaintiffs' Proposed Construction:** | <u>Function (ID and Construction)</u>:  displaying the video clip preview on the viewer television equipment <br><br> <u>Structure</u>: a processor that executes any of the software to display the video clip preview on the viewer television equipment as described in, for example, col. 3, lines 29-34, col. 5, lines 10-25, col. 7, lines 6-40, col. 9, line 48 – col. 10, line 7, col. 10, line 59 – col. 11, line 52; and/or Figures 2, 3, 6B and/or 9 and related text from the specification, or any equivalents thereof. |
|---|---|
| **Amazon's Proposed Construction:** | <u>Function (ID And Construction)</u>: displaying the video clip preview on the viewer television equipment <br><br> ("viewer television equipment" construed above") <br><br> <u>Structure</u>: <br><br> None. <br><br> •    Claim is indefinite because there is no structure clearly linked to the claimed function. |

| Court's Construction: | Function (ID and Construction): displaying the video clip preview on the viewer television equipment |
| --- | --- |
| | Structure: a processor that executes any of the software to display the video clip preview on the viewer television equipment |

The parties agree that this term is a means-plus-function term and also agree that the function is and should be construed as "displaying the video clip preview on the viewer television equipment." The parties, however, disagree as to the structure. For the reasons already discussed, the Court finds that the '643 Patent discloses sufficient corresponding structure.

iii. **"means for displaying an ordering display screen after the video clip preview of the video-on-demand program is displayed, wherein the ordering display screen provides the viewer with the opportunity to select an ordering option to order the video-on-demand program"**

| Plaintiffs' Proposed Construction: | Function (ID): displaying an ordering display screen. |
| --- | --- |
| | Function (Construction): *The phrase does not require construction because its meaning is clear.* |
| | *To the extent the Court believes that a construction would be helpful to the jury, however, the court should construe the phrase **an ordering display screen** to mean:* |
| | a screen requiring viewer input to order a video-on-demand program |
| | Structure: a processor that executes any of the software to display an ordering display screen as described in, for example, col. 3, lines 40-41, col. 4, lines 52-57, col. 5, lines 10-25, col. 7, lines 6-40, col. 10, lines 8-50, col. 10, line 59 – col. 11, line 52; and/or Figures 2, 3, 8 and/or 9 and related text from the specification, or any equivalents |

| | |
|---|---|
| | thereof. |
| **Amazon's Proposed Construction:** | Function (ID): <br><br> displaying an ordering display screen after the video clip preview of the video-on-demand program is displayed, wherein the ordering display screen provides the viewer with the opportunity to select an ordering option to order the video-on-demand program. <br><br> Function (Construction): following the display of the video clip preview, an option to order the video-on-demand program is presented on a new display screen <br><br> Structure: <br><br> None. |
| **Court's Construction:** | Function (ID):  displaying an ordering display screen. <br><br> Function (Construction):  *The phrase does not require construction because its meaning is clear.* <br><br> Structure:  a processor that executes any of the software to display an ordering display screen |

Because the parties agree that this term is a means-plus-function term, the Court will construe it accordingly, with the function being "displaying an ordering display screen" and the associated structure being "a processor that executes any of the software to display an ordering display screen." As with the first means-plus-function term, Amazon improperly appends the subsequent "wherein" clause to the function. For the reasons already discussed, the "wherein" clause does not modify the function.

For the reasons already discussed, the Court finds that the '643 Patent discloses sufficient corresponding structure.

4.      **The '690 Patent**

The '690 Patent describes a system that "allows a user to select a pay program for purchase from a program guide." '690 Patent at [57].

a.      **"interactive program guide"** [Claims 1, 9, 10, 14]

| **Plaintiffs' Proposed Construction:** | an interactive electronic application that provides information to allow users to find television programming |
|---|---|
| **Amazon's Proposed Construction:** | an application that produces interactive display screens with program schedules and channel information (among other things) for a television receiver

The 'interactive program guide' in Claims 1, 9, 10, and 14 is executed on user equipment. |
| **Court's Construction:** | an application that produces interactive display screens that include television program schedules and channel information |

The Court construes the term "interactive program guide" as "an application that produces interactive display screens that include television program schedules and channel information." This construction is consistent with the specification of the '690 Patent. For example, the "Background of the Invention" describes an "interactive program guide" as including data that allows the display of broadcast times for televisions. '690 Patent col. 1 ll.19-35. The "Summary of the Invention" provides that the invention's "guide" uses schedule information. *Id.* at col. 2 ll.7-27. The patent also uses this information to perform various functions: *e.g.*, to notify the viewer "[j]ust before the scheduled broadcast time of each program in the package" and to monitor whether the user has watched the purchased package. *Id.* at col. 2

25

ll.7-33.

Amazon's proposed construction would read a "television receiver" into the '690 claims. The Court rejects this limitation. The claims of the '690 Patent do not contain the terms "television receiver," "television," or "receiver." The claims, thus, refute that there is any such limitation. In addition, the concept of the an "interactive program guide" does not require that the programs be received by any particular piece of equipment.

The Court also rejects Amazon's attempt to read in a "user-equipment" limitation for some, but not all, instances where the term "interactive program guide" is used. The preamble of Claim 1 calls for a "system comprising user equipment on which an interactive program guide is implemented." Nothing about this requires the program guide to be implemented *exclusively* on the user equipment. Indeed, the claims call for steps that *require* remote components for implementation. For example, Claim 9 requires that users be allowed to "impulse purchase the package through the user guide."

      **b.**     **"package"** [Claims 1, 9, 10, 19, 27, and 28]

| | |
|---|---|
| **Plaintiffs' Proposed Construction:** | a set of more than one program |
| **Amazon's Proposed Construction:** | a collection of scheduled programs bundled for sale as a single unit |
| **Court's Construction:** | a set of two or more programs available for sale as a single unit |

The Court construes the term "package" as "a set of two or more programs available for sale as a single unit." Amazon's proposed construction would require that the programs

26

comprising a "package" be scheduled.  However, nothing about the ordinary meaning of the word "package" inherently requires the programs that comprise it to be scheduled programs (rather than say, programs available on demand).  There is also nothing in the claims that would otherwise require the programs to be scheduled.

Plaintiffs dispute that the items in a package must be bundled for sale as a single unit. However, the Court's construction is consistent with the common usage of "package" and also with how the patent specification uses the term.  *See* '690 Patent at [57]; *id.* at col. 1 ll.49-55 ("[U]sers often use program guides to purchase pay programs individually without realizing that the purchased programs are part of an available package.")

      c.     **"determine whether the selected program is part of a package"** [Claim 1]

| Plaintiffs' Proposed Construction: | *The phrase does not require construction because its meaning is clear.* |
|---|---|
| | *To the extent the Court believes that a construction would be helpful to the jury, however, the phrase should be construed as:* |
| | the interactive program guide determines whether the selected program is part of a package |
| **Amazon's Proposed Construction:** | the interactive program guide on the user equipment determines whether the selected program is part of a package |
| **Court's Construction:** | The phrase does not require construction because its meaning is clear. |

The term "determine whether the selected program is part of a package" does not require

construction because there is nothing about the phrase "determine whether the selected program is part of a package" that is unclear. Amazon's proposed construction attempts to add a requirement that the determination is performed on the user equipment. Claim 1 does not state that the interactive program guide is *on* the equipment; rather, the claim states that the interactive program guide is *implemented* on the user equipment.

> d.   **The method defined in claim 19, further comprising providing the user with an opportunity to impulse purchase the package through the interactive program guide.** [Claim 27]

| Plaintiffs' Position: | |
|---|---|
| Amazon's Position: | The claim is indefinite under 35 U.S.C. § 112 ¶ 2; there is no antecedent basis to the interactive program guide limitation. |
| Court's Construction: | The claim is not indefinite. |

Amazon argues that Claim 27 is indefinite because there is no antecedent basis for the term "the interactive program guide." The Federal Circuit has made clear that the standard of indefiniteness is high. *See Praxair v. ATMI, Inc.*, 543 F.3d 1306, 1319 (Fed. Cir. 2008) (citing *Exxon Research & Eng'g Co. v. United States*, 265 F.3d 1371, 1375 (Fed. Cir. 2001)). "Because a claim is presumed valid, a claim is indefinite only if the 'claim is insolubly ambiguous, and no narrowing construction can properly be adopted.'" *Honeywell Int'l. Inc. v. Int'l Trade Comm'n.*, 341 F.3d 1332, 1338-39 (citing *Exxon*, 265 F.3d at 1375).

Amazon is correct that the term "interactive program guide" does not explicitly appear in parent Claim 19, but Claim 27 is not thereby rendered indefinite because it still has a "reasonably

ascertainable meaning." *See Energizer Holdings, Inc. v. Int'l Trade Comm'n*, 435 F.3d 1366, 1370-71 (Fed. Cir. 2006) (holding that dependent claim containing "said zinc anode" not indefinite despite the fact that "zinc anode" did not appear in the parent claim because the claim scope was "reasonably ascertainable by those skilled in the art"). The meaning of Claim 27 is clear notwithstanding the missing antecedent. The claims and specification are all directed to systems and methods involving interactive program guides. A person of ordinary skill in the art would not be confused by the fact that Claim 19 refers to "the" interactive program guide rather than to "an" interactive program guide.

The claim terms will be construed as set forth above.